IN THE CIRCUIT COURT, FIRST
JUDICIAL CIRCUIT, IN AND FOR
OKALOOSA COUNTY, FLORIDA

CASE NO.: _____

SBN V FNBC LLC, a Delaware limited
liability company,

      Plaintiff,

vs.

ROBERT L. JONES, III, as Personal
Representative of the ESTATE OF ROBERT
GREGORY EVERS, 2017CP001238, TAMI
SUE EVERS A/K/A TAMI F. EVERS, an
individual, LORI K. EVERS A/K/A LORI K.
WEEMS, an individual, SNAP ADVANCES
LLC, a Utah limited liability company, d/b/a
ICB ADVANCE, UNKNOWN TENANT #1
IN POSSESSION OF 1054 MELTON
ROAD, and UNKNOWN TENANT #2 IN
POSSESSION OF 1054 MELTON ROAD,

      Defendants.

_____/

## **VERIFIED COMPLAINT**

Plaintiff, SBN V FNBC LLC, a Delaware limited liability company ("SBN" or

"Plaintiff"), brings this Verified Complaint against Defendants, ROBERT L. JONES, III, as

Personal Representative of the ESTATE OF ROBERT GREGORY EVERS, 2017CP001238

("R. Jones PR"), TAMI SUE EVERS A/K/A TAMI F. EVERS, an individual ("Tami Evers"),

LORI K. EVERS A/K/A LORI K. WEEMS, an individual ("Lori Evers"), SNAP ADVANCES

LLC, a Utah limited liability company, d/b/a ICB Advance ("ICB"), UNKNOWN TENANT #1

IN POSSESSION OF 1054 MELTON ROAD ("Unknown Tenant #1) and UNKNOWN

TENANT #2 IN POSSESSION OF 1054 MELTON ROAD ("Unknown Tenant #2) (collectively, the "Defendants") and alleges:

1.  Plaintiff SBN is a Delaware limited liability company authorized to transact business in the State of Florida, whose principal place of business is in New Castle, Delaware.

2.  Defendant R. Jones PR is an individual who is a resident of Escambia County, Florida and has been appointed as the Personal Representative of the probate estate of Robert Gregory Evers, deceased ("Robert Evers"). Robert Evers was a borrower and mortgagor pursuant to the terms of the Loan Documents, as defined below.

3.  Defendant Tami Evers is an individual residing in Montgomery County, Alabama and a borrower and mortgagor pursuant to the terms of the Loan Documents, as defined below.

4.  Defendant Lori Evers is an individual residing in Miami-Dade County, Florida and may have or claim to have an interest in the property that is the subject of this action.

5.  Defendant ICB is a foreign limited liability company doing business in Okaloosa County, Florida, which may have or claim to have an interest in the property that is the subject of this action.

6.  Defendant Unknown Tenant #1 may have or claim to have an interest in the property that is the subject of this action.

7.  Defendant Unknown Tenant #2 may have or claim to have an interest in the property that is the subject of this action.

8.  Plaintiff SBN has suffered damages in excess of $15,000.00, exclusive of interest, costs, and attorneys' fees.

9.     This Court has jurisdiction over Defendants, and venue is proper in Okaloosa County because the real and personal property that is the subject of this action is located in Okaloosa County, Florida.

## General Allegations

A.    **Loan 500001**

10.     On or about June 2, 2004, Robert Evers and Tami Evers (together referred to as, the "Borrowers") executed and delivered a Promissory Note to First National Bank of Crestview ("First National") in the original principal amount of $85,000.00, as subsequently endorsed to SBN by that certain Allonge dated effective October 18, 2017 (the "500001 Note"). True and correct copies of the documents comprising the 500001 Note are attached hereto as Composite Exhibit "A."

11.     To secure the indebtedness currently evidenced by the 500001 Note, the Borrowers executed that certain Mortgage dated June 2, 2004, as mortgagors, in favor of First National, as mortgagee, recorded in O.R. Book 2537, Pages 37 et seq., of the public records of Okaloosa County, Florida (the "500001 Mortgage") securing the real property more specifically described therein (the "500001 Real Property"). As additional security, the 500001 Mortgage also constitutes a security agreement (the "500001 Security Agreement") wherein First National was granted a security interest in that certain personal property owned by the Borrowers and more particularly described in the 500001 Security Agreement, the 0002 Security Agreement (defined below) and the Financing Statements (defined below) (the "Personal Property"). In addition, the 500001 Mortgage contains a cross-collateralization provision, which provides that the 500001 Mortgage also secures Loan 0002. A true and correct copy of the 500001 Mortgage is attached hereto as Exhibit "B."

**B.**     **Loan 0002**

12.     On or about December 11, 2001, the Borrowers executed and delivered a Promissory Note to First National in the original principal amount of $507,624.97, as modified by those certain Change in Terms Agreements dated December 11, 2001 and March 31, 2017, as subsequently endorsed to SBN by that certain Allonge dated effective October 18, 2017 (collectively, the "0002 Note").   True and correct copies of the documents comprising the 0002 Note are attached hereto as Composite Exhibit "C."

13.     To secure the indebtedness currently evidenced by the 0002 Note, the Borrowers executed that certain Mortgage dated April 2, 1999, as mortgagors, in favor of Covington County Bank, as mortgagee, recorded as O.R. Book 2211, Pages 384 et seq., of the public records of Okaloosa County, Florida and additionally recorded as O.R. Book 1829, Pages 453 et seq., of the public records of Santa Rosa County, Florida, as assigned to First National by that certain Assignment of Mortgage dated October 31, 2001 recorded as O.R. Book 2330, Pages 970 et seq., of the public records of Okaloosa County, Florida and additionally recorded in O.R. Book 1953, Pages 1805 et seq., of the public records of Santa Rosa County, Florida, as modified by that certain Modification of Mortgage dated December 11, 2001, recorded in O.R. Book 2333, Pages 2840 et seq., of the public records of Okaloosa County, Florida, and additionally recorded in O.R. Book 1973, Pages 1319 et seq., of the public records of Santa Rosa County, Florida, as subsequently modified by that certain Partial Release of Mortgage recorded on February 26, 2014, in O.R. Book 3137, Page 1667 of the public records of Okaloosa County, Florida (collectively, the "0002 Mortgage"), by virtue of which Lender was granted a security interest in certain real property located in both Okaloosa County, Florida and Santa Rosa County, Florida as more particularly described therein (collectively, the "0002 Real Property"). As additional

security, the 0002 Mortgage also constitutes a security agreement (the "0002 Security Agreement") wherein First National was granted a security interest in the Personal Property. True and correct copies of the documents comprising the 0002 Mortgage are attached hereto as Composite Exhibit "D."

**C.      Loan 0006**

14.      On or about March 7, 2014, Robert Evers executed and delivered a Promissory Note to First National in the original principal amount of $251,634.96, which included a Cross-Collateralized and Cross-Defaulted Agreement executed by Robert Evers, whereby the parties agreed to cross collateralize and cross default, *inter alia*, Loan 500001, Loan 0002 and Loan 80001 (referenced below) such that a default under one loan constitutes a default under the others referenced therein, and also such that the collateral securing Loan 500001, Loan 0002 and Loan 80001 also secure the indebtedness under each of the loans referenced therein, as subsequently modified by those certain Change in Terms Agreements dated April 29, 2015, January 9, 2017 and April 26, 2017, as subsequently endorsed to SBN by that certain Allonge dated effective October 18, 2017 (collectively, the "0006 Note").  True and correct copies of the documents comprising the 0006 Note are attached hereto as Composite Exhibit "E."

15.      To perfect the security interest in the Personal Property, First National filed (i) that certain UCC-1 Financing Statement with the Florida Secured Transaction Registry on June 17, 2004, bearing File Number 200407193780, as subsequently continued by that certain UCC-3 Financing Statement filed on June 4, 2009, bearing File Number 20090063912X, as subsequently continued again by that certain UCC-3 Financing Statement filed on June 5, 2014, bearing File Number 201401551864, as subsequently assigned to SBN by that certain UCC-3 Financing Statement filed on December 15, 2017, bearing File Number 201703538410, and (ii)

that certain UCC-1 Financing Statement with the Florida Secured Transaction Registry on October 6, 2005, bearing File Number 200500861534, as subsequently continued by that certain UCC-3 Financing Statement filed on September 27, 2010, bearing File Number 201003268992, as subsequently continued again by that certain UCC-3 Financing Statement filed on September 25, 2015, bearing File Number 201505123834, as subsequently assigned to SBN by that certain UCC-3 Financing Statement filed on December 15, 2017, bearing File Number 201703538402 (collectively, the "Financing Statements"). True and correct copies of the documents comprising the Financing Statements are attached hereto as Composite Exhibit "F."

**D.     Loan 80001**

16.     On or about April 29, 2015, Robert Evers executed and delivered a Promissory Note to First National in the original principal amount of $320,000.00, which included a Cross-Collateralized and Cross-Defaulted Agreement executed by Robert Evers, whereby the parties agreed to cross collateralize and cross default, *inter alia*, Loan 500001, Loan 0002 and Loan 0006 such that a default under one loan constitutes a default under the others referenced therein, and also such that the collateral securing Loan 500001, Loan 0002 and Loan 0006 also secure the indebtedness under each of the loans referenced therein, as subsequently modified by those certain Change in Terms Agreements dated January 9, 2017 and April 26, 2017, as subsequently endorsed to SBN by that certain Allonge dated effective October 18, 2017 (collectively, the "80001 Note"). True and correct copies of the documents comprising the 80001 Note are attached hereto as Composite Exhibit "G."

17.     The amounts due under the 80001 Note are secured by 845.71 Shares of Covington Gin Company, Inc. Stock Number 1700 (the "Covington Stock"), issued to Robert Evers dated May 1, 2014. SBN is in possession of the Covington Stock.

E.     **Cross-Collateralization Agreement and Related Mortgages**

18.     On March 3, 1994, the Borrowers executed and delivered to Covington County Bank a Cross-Collateralization Agreement, which was recorded in O.R. Book 1834, Pages 1097 et seq., as assigned to First National by that certain Assignment of Mortgage dated October 31, 2001 recorded as O.R. Book 2330, pages 970 et seq., all of the public records of Okaloosa County, Florida, whereby the parties agreed to cross collateralize and cross default several loans made by Covington County Bank to the Borrowers on or about that same date (the "Cross Collateral Agreement"). A true and correct copy of the Cross Collateral Agreement is attached hereto as Exhibit "H." More specifically, the Cross Collateral Agreement provided that the mortgages listed below would act as additional security for any current loans and future loans made between the parties and that any future default under any of the indebtedness between the parties would constitute a default of all of the mortgages referenced below (collectively, the "Collateral Mortgages"):

a.     That certain Mortgage dated March 30, 1994, executed by the Borrowers, in favor of Covington County Bank, as mortgagee, recorded as O.R. Book 1824, Pages 1955 et seq., of the public records of Okaloosa County, Florida, as assigned to First National by that certain Assignment of Mortgage dated October 31, 2001 recorded as O.R. Book 2330, Pages 970 et seq., of the public records of Okaloosa County, Florida and additionally recorded in O.R. Book 1953, Pages 1805 et seq., of the public records of Santa Rosa County, Florida ("Collateral Mortgage #1");

b.     That certain Mortgage dated March 30, 1994, executed by the Borrowers, in favor of Covington County Bank, as mortgagee, recorded as O.R. Book 1824, Pages 1970 et seq., of the public records of Okaloosa County, Florida, as assigned to First

National by that certain Assignment of Mortgage dated October 31, 2001 recorded as O.R. Book 2330, Pages 970 et seq., of the public records of Okaloosa County, Florida and additionally recorded in O.R. Book 1953, Pages 1805 et seq., of the public records of Santa Rosa County, Florida ("Collateral Mortgage #2");

c.          That certain Mortgage dated March 30, 1994, executed by Robert Evers, in favor of Covington County Bank, as mortgagee, recorded as O.R. Book 1824, Pages 1700 et seq., of the public records of Okaloosa County, Florida, as assigned to First National by that certain Assignment of Mortgage dated October 31, 2001 recorded as O.R. Book 2330, Pages 970 et seq., of the public records of Okaloosa County, Florida and additionally recorded in O.R. Book 1953, Pages 1805 et seq., of the public records of Santa Rosa County, Florida ("Collateral Mortgage #3");

d.          That certain Mortgage dated March 30, 1994, executed by the Borrowers, in favor of Covington County Bank, as mortgagee, recorded as O.R. Book 1621, Pages 1916 et seq., of the public records of Okaloosa County, Florida, as assigned to First National by that certain Assignment of Mortgage dated October 31, 2001 recorded as O.R. Book 2330, Pages 970 et seq., of the public records of Okaloosa County, Florida and additionally recorded in O.R. Book 1953, Pages 1805 et seq., of the public records of Santa Rosa County, Florida ("Collateral Mortgage #4"); and

all of which are attached hereto as Composite Exhibit "I."

19.    Loan 500001, Loan 0002, Loan 0006 and Loan 80001 are each secured by the 500001 Real Property, the 0002 Real Property, the Personal Property, the Covington Stock and the Collateral Mortgages by virtue of the Cross-Collateralized and Cross-Defaulted Agreements

contained in the 0006 Note and the 80001 Note, the cross collateralization provisions contained in the 500001 Mortgage and the Cross Collateral Agreement.

20.     The 500001 Note, 500001 Mortgage, 500001 Security Agreement, 0002 Note, 0002 Mortgage, 0002 Security Agreement, 0006 Note, Financing Statements, 80001 Note, Cross Collateral Agreement, Collateral Mortgages and all documents related thereto shall be collectively referred to as the "Loan Documents."

21.     SBN is the owner and holder of the Loan Documents by virtue of that certain Assignment of Mortgages, Deeds of Trust and Other Loan Documents (the "SBN Assignment") dated effective October 18, 2017 from the Federal Deposit Insurance Corporation, as Receiver for First NBC Bank, New Orleans, Louisiana in favor of SBN V FNBC LLC and recorded in O.R. Book 3330 Pages 73 et seq., of the public records of Okaloosa County, Florida and also recorded in O.R. Book 3687 Pages 238 et seq., of the public records of Santa Rosa County, Florida.  A true and correct copy of the SBN Assignment is attached hereto as Exhibit "J."

22.     SBN is the owner and holder of the original 500001 Note, 0002 Note, 0006 Note, and 80001 Note secured by the Loan Documents and is authorized to bring this action under Section 673.3011, Florida Statutes.

23.     All conditions precedent to the brining of this action have been performed, have occurred, or have been waived.

## COUNT I
### (Breach of the 500001 Note)

SBN re-alleges the allegations in paragraphs 1 through 23 above as if fully stated herein.

24.     This is an action for breach of a promissory note against R. Jones PR and Tami Evers seeking damages in excess of $15,000.00, exclusive of interest, costs, and attorneys' fees.

25.     Robert Evers and Tami Evers defaulted under the terms of the 500001 Note by, among other things, failing to make the June 2, 2017 payment, or any payment thereafter.

26.     As a result of the default set forth in the preceding paragraph, SBN declared the entire indebtedness evidenced by the 500001 Note due and payable.  A true and correct copy of SBN's notice of default letter sent to R. Jones PR and Tami Evers is attached hereto as Composite Exhibit "K."

27.     As of the date of this Complaint, SBN is owed $25,725.55 in principal on the 500001 Note, plus accrued interest, late charges and costs of collection.

28.     SBN has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for its services in connection with the enforcement of the 500001 Note, and such amounts are, under the terms of the Loan Documents, payable by R. Jones PR and Tami Evers.

**WHEREFORE**, SBN demands judgment against R. Jones PR and Tami Evers for damages, including pre-judgment interest, attorneys' fees, and the costs of this action, together with such other and further relief as the Court deems just and proper.

## COUNT II
### (Breach of the 0002 Note)

SBN re-alleges the allegations in paragraphs 1 through 23 above as if fully stated herein.

29.     This is an action for breach of a promissory note against R. Jones PR seeking damages in excess of $15,000.00, exclusive of interest, costs, and attorneys' fees.

30.     Robert Evers defaulted under the terms of the 0002 Note by, among other things, failing to make the May 11, 2017 payment, or any payment thereafter.

31.     As a result of the default set forth in the preceding paragraph, SBN declared the entire indebtedness evidenced by the 0002 Note due and payable.  A true and correct copy of

SBN's notice of default letter sent to R. Jones PR and Tami Evers is attached hereto as Composite Exhibit "K."

32.     As of the date of this Complaint, SBN is owed $167,451.86 in principal on the 0002 Note, plus accrued interest, late charges and costs of collection.

33.     SBN has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for its services in connection with the enforcement of the 0002 Note, and such amounts are, under the terms of the Loan Documents, payable by R. Jones PR.

**WHEREFORE**, SBN demands judgment against R. Jones PR for damages, including pre-judgment interest, attorneys' fees, and the costs of this action, together with such other and further relief as the Court deems just and proper.

## COUNT III
### (Breach of the 0006 Note)

SBN re-alleges the allegations in paragraphs 1 through 23 above as if fully stated herein.

34.     This is an action for breach of a promissory note against R. Jones PR seeking damages in excess of $15,000.00, exclusive of interest, costs, and attorneys' fees.

35.     Robert Evers defaulted under the terms of the 0006 Note by, among other things, failing to make the May 26, 2017 payment, or any payment thereafter.

36.     As a result of the default set forth in the preceding paragraph, SBN declared the entire indebtedness evidenced by the 0006 Note due and payable.  A true and correct copy of SBN's notice of default letter sent to R. Jones PR is attached hereto as Composite Exhibit "K."

37.     As of the date of this Complaint, SBN is owed $236,244.00 in principal on the 0006 Note, plus accrued interest, late charges and costs of collection.

38.    SBN has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for its services in connection with the enforcement of the 0006 Note, and such amounts are, under the terms of the Loan Documents, payable by R. Jones PR.

**WHEREFORE**, SBN demands judgment against R. Jones PR for damages, including pre-judgment interest, attorneys' fees, and the costs of this action, together with such other and further relief as the Court deems just and proper.

<u>**COUNT IV**</u>
<u>**(Breach of the 80001 Note)**</u>

SBN re-alleges the allegations in paragraphs 1 through 23 above as if fully stated herein.

39.    This is an action for breach of a promissory note against R. Jones PR seeking damages in excess of $15,000.00, exclusive of interest, costs, and attorneys' fees.

40.    Robert Evers defaulted under the terms of the 80001 Note by, among other things, failing to make the May 26, 2017 payment, or any payment thereafter.

41.    As a result of the default set forth in the preceding paragraph, SBN declared the entire indebtedness evidenced by the 80001 Note due and payable.  A true and correct copy of SBN's notice of default letter sent to R. Jones PR is attached hereto as Composite Exhibit "K."

42.    As of the date of this Complaint, SBN is owed $299,700.00 in principal on the 80001 Note, plus accrued interest, late charges and costs of collection.

43.    SBN has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for its services in connection with the enforcement of the 80001 Note, and such amounts are, under the terms of the Loan Documents, payable by R. Jones PR.

**WHEREFORE**, SBN demands judgment against R. Jones PR for damages, including pre-judgment interest, attorneys' fees, and the costs of this action, together with such other and further relief as the Court deems just and proper.

## COUNT V
### (Foreclosure of the 500001 Mortgage)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

44.     This is an action to foreclose a mortgage encumbering the 500001 Real Property more particularly described in the 500001 Mortgage.

45.     Robert Evers and Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 above and, as a result, Robert Evers and Tami Evers are also in default under the terms of the 500001 Mortgage.

46.     In addition, Robert Evers defaulted under the 0002 Note, the 0006 Note and the 80001 Note, as more particularly described in paragraphs 30, 35, and 40, respectively and, as a result, Robert Evers is also in default under the terms of the 500001 Mortgage pursuant to the Cross-Collateralized and Cross-Defaulted Agreements contained in the 0006 Note and the 80001 Note and the cross collateralization provision contained within the 500001 Mortgage.

47.     SBN is owed the sum of $25,725.55 that is due in principal under the 500001 Mortgage, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

48.     SBN is owed the sum of $167,451.86 that is due in principal under the 500001 Mortgage by virtue of the default under the terms of the 0002 Note, together with accrued

interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

49.    SBN is owed the sum of $236,244.00 that is due in principal under the 500001 Mortgage by virtue of the default under the terms of the 0006 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

50.    SBN is owed the sum of $299,700.00 that is due in principal under the 500001 Mortgage by virtue of the default under the terms of the 80001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

51.    Defendant R. Jones PR is the present owner and title holder of the 500001 Real Property and is in possession of the same.  The right, title, or interest of R. Jones PR in the 500001 Real Property is inferior, subordinate, and subject to the lien of the 500001 Mortgage.

52.    Defendant Tami Evers may have or claim to have some right, title, or interest in the 500001 Real Property by virtue of the 500001 Mortgage. However, any actual or potential interest of Tami Evers in the 500001 Real Property is subject, subordinate, and inferior to the interest of SBN, and SBN has and maintains a superior interest to Tami Evers in the 500001 Real Property.

53.    Defendant Lori Evers may be the present owner and title holder of the 500001 Real Property or may have some claim or demand to the 500001 Real Property by virtue of

possession, whether by tenancy from the record title holder, mere possession only or otherwise; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of the 500001 Mortgage.

54.     Defendant Unknown Tenant #1 may have some claim or demand to the 500001 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of the 500001 Mortgage.

55.     Defendant Unknown Tenant #2 may have some claim or demand to the 500001 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of the 500001 Mortgage.

56.     As a result of the defaults alleged herein, SBN has retained the undersigned law firm to bring this action and is obligated to pay such firm a reasonable fee for their services. Under the terms of the 500001 Note, the 0002 Note, the 0006 Note and the 80001 Note (collectively, the "SBN Notes") and the 500001 Mortgage, R. Jones PR and Tami Evers are obligated to pay all costs, fees, and expenses, including attorneys' fees incurred in the enforcement of SBN's lien and security interest.

**WHEREFORE**, SBN prays:

(A)     That the Court adjudge that SBN has a lien upon the 50001 Real Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)     That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such

sums are not paid within the time set by the Court, that the 500001 Real Property be sold to satisfy SBN's claims;

(C)     That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, the 500001 Mortgage;

(D)     That the Court adjudge all claims, rights, title, interest, or equities of the Defendants and any and all persons claiming by, through, under, or against them since the filing of SBN's Notice of Lis Pendens to be inferior to the lien held by SBN under the 500001 Mortgage, and the aforesaid interests be foreclosed;

(E)     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)     That SBN have such other and further relief as is just and proper.

### COUNT VI
### (Foreclosure of the 0002 Mortgage)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

57.     This is an action to foreclose a mortgage encumbering the 0002 Real Property more particularly described in the 0002 Mortgage.

58.     Robert Evers defaulted under the 0002 Note, as more particularly described in paragraph 30 above and, as a result, Robert Evers and Tami Evers are also in default under the terms of the 0002 Mortgage.

59.     In addition, Robert Evers defaulted under the 500001 Note, the 0006 Note and the 80001 Note, as more particularly described in paragraphs 25, 35, and 40, respectively and, as a result, Robert Evers is also in default under the terms of the 0002 Mortgage pursuant to the

Cross-Collateralized and Cross-Defaulted Agreements contained in the 0006 Note and the 80001 Note and the cross collateralization provision contained within the 500001 Mortgage.

60.    Furthermore, Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 above and, as a result, Tami Evers is also in default under the terms of the 0002 Mortgage pursuant to the cross collateralization provision contained within the 500001 Mortgage.

61.    SBN is owed the sum of $167,451.86 that is due in principal under the 0002 Mortgage, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

62.    SBN is owed the sum of $25,725.55 that is due in principal under the 0002 Mortgage by virtue of the default under the terms of the 50001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

63.    SBN is owed the sum of $236,244.00 that is due in principal under the 0002 Mortgage by virtue of the default under the terms of the 0006 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

64.    SBN is owed the sum of $299,700.00 that is due in principal under the 0002 Mortgage by virtue of the default under the terms of the 80001 Note, together with accrued

interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

65.     Defendant R. Jones PR is the present owner and title holder of the 0002 Real Property and is in possession of the same.  The right, title, or interest of R. Jones PR in the 0002 Real Property is inferior, subordinate, and subject to the lien of the 0002 Mortgage.

66.     Defendant Tami Evers may have or claim to have some right, title, or interest in the 0002 Real Property either by virtue of being the present owner and title holder of the 0002 Real Property or by virtue of the 0002 Mortgage. However, any actual or potential interest of Tami Evers in the 0002 Real Property is subject, subordinate, and inferior to the interest of SBN, and SBN has and maintains a superior interest to Tami Evers in the 0002 Real Property.

67.     Defendant Lori Evers may be the present owner and title holder of the 0002 Real Property or may have some claim or demand to the 0002 Real Property by virtue of possession, whether by tenancy from the record title holder, mere possession only or otherwise; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of the 0002 Mortgage.

68.     Defendant Unknown Tenant #1 may have some claim or demand to the 0002 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of the 0002 Mortgage.

69.     Defendant Unknown Tenant #2 may have some claim or demand to the 0002 Real Property by virtue of possession, whether by tenancy from the record title holder or mere

possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of the 0002 Mortgage.

70.     As a result of the defaults alleged herein, SBN has retained the undersigned law firm to bring this action and is obligated to pay such firm a reasonable fee for their services. Under the terms of the SBN Notes and the 0002 Mortgage, R. Jones PR and Tami Evers are obligated to pay all costs, fees, and expenses, including attorneys' fees incurred in the enforcement of SBN's lien and security interest.

**WHEREFORE**, SBN prays:

(A)     That the Court adjudge that SBN has a lien upon the 0002 Real Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)     That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the 0002 Real Property be sold to satisfy SBN's claims;

(C)     That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, the 0002 Mortgage;

(D)     That the Court adjudge all claims, rights, title, interest, or equities of the Defendants and any and all persons claiming by, through, under, or against them since the filing of SBN's Notice of Lis Pendens to be inferior to the lien held by SBN under the 0002 Mortgage, and the aforesaid interests be foreclosed;

(E)     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)     That SBN have such other and further relief as is just and proper.

## COUNT VII
### (Foreclosure of Collateral Mortgage #1)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

71.     This is an action to foreclose a mortgage encumbering certain real property located in Okaloosa County, Florida and Santa Rosa County, Florida and more particularly described in Collateral Mortgage #1 (the "Collateral Mortgage #1 Real Property").

72.     Robert Evers defaulted under the SBN Notes, as more particularly described in paragraphs 25, 30, 35, and 40 and, as a result, Robert Evers is also in default under the terms of Collateral Mortgage #1 pursuant to the Cross Collateral Agreement.

73.     Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 and, as a result, Tami Evers is also in default under the terms of Collateral Mortgage #1 pursuant to the Cross Collateral Agreement.

74.     SBN is owed the sum of $25,725.55 that is due in principal under Collateral Mortgage #1 by virtue of the default under the terms of the 500001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

75.     SBN is owed the sum of $167,451.86 that is due in principal under Collateral Mortgage #1 by virtue of the default under the terms of the 0002 Note, together with accrued

interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

76.     SBN is owed the sum of $236,244.00 that is due in principal under Collateral Mortgage #1 by virtue of the default under the terms of the 0006 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

77.     SBN is owed the sum of $299,700.00 that is due in principal under Collateral Mortgage #1 by virtue of the default under the terms of the 80001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

78.     Defendant R. Jones PR is the present owner and title holder of the Collateral Mortgage #1 Real Property and is in possession of the same.  The right, title, or interest of R. Jones PR in the Collateral Mortgage #1 Real Property is inferior, subordinate, and subject to the lien of Collateral Mortgage #1.

79.     Defendant Tami Evers may have or claim to have some right, title, or interest in the Collateral Mortgage #1 Real Property either by virtue of being the present owner and title holder of the Collateral Mortgage #1 Real Property or by virtue of Collateral Mortgage #1. However, any actual or potential interest of Tami Evers in the Collateral Mortgage #1 Real Property is subject, subordinate, and inferior to the interest of SBN, and SBN has and maintains a superior interest to Tami Evers in the Collateral Mortgage #1 Real Property.

80.     Defendant Lori Evers may be the present owner and title holder of the Collateral Mortgage #1 Real Property or may have some claim or demand to the Collateral Mortgage #1 Real Property by virtue of possession, whether by tenancy from the record title holder, mere possession only or otherwise; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #1.

81.     Defendant Unknown Tenant #1 may have some claim or demand to the Collateral Mortgage #1 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #1.

82.     Defendant Unknown Tenant #2 may have some claim or demand to the Collateral Mortgage #1 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #1.

83.     As a result of the defaults alleged herein, SBN has retained the undersigned law firm to bring this action and is obligated to pay such firm a reasonable fee for their services. Under the terms of the SBN Notes and Collateral Mortgage #1, R. Jones PR and Tami Evers are obligated to pay all costs, fees, and expenses, including attorneys' fees incurred in the enforcement of SBN's lien and security interest.

**WHEREFORE**, SBN prays:

(A)     That the Court adjudge that SBN has a lien upon the Collateral Mortgage #1 Real Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)     That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the Collateral Mortgage #1 Real Property be sold to satisfy SBN's claims;

(C)     That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, Collateral Mortgage #1;

(D)     That the Court adjudge all claims, rights, title, interest, or equities of the Defendants and any and all persons claiming by, through, under, or against them since the filing of SBN's Notice of Lis Pendens to be inferior to the lien held by SBN under the Collateral Mortgage #1, and the aforesaid interests be foreclosed;

(E)     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)     That SBN have such other and further relief as is just and proper.

## COUNT VIII
### (Foreclosure of Collateral Mortgage #2)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

84.     This is an action to foreclose a mortgage encumbering certain real property located in Okaloosa County, Florida and Santa Rosa County, Florida and more particularly described in Collateral Mortgage #2 (the "Collateral Mortgage #2 Real Property").

85.     Robert Evers defaulted under the SBN Notes, as more particularly described in paragraphs 25, 30, 35, and 40 and, as a result, Robert Evers is also in default under the terms of Collateral Mortgage #2 pursuant to the Cross Collateral Agreement.

86.     Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 and, as a result, Tami Evers is also in default under the terms of Collateral Mortgage #2 pursuant to the Cross Collateral Agreement.

87.     SBN is owed the sum of $25,725.55 that is due in principal under Collateral Mortgage #2 by virtue of the default under the terms of the 500001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

88.     SBN is owed the sum of $167,451.86 that is due in principal under Collateral Mortgage #2 by virtue of the default under the terms of the 0002 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

89.     SBN is owed the sum of $236,244.00 that is due in principal under Collateral Mortgage #2 by virtue of the default under the terms of the 0006 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

90.     SBN is owed the sum of $299,700.00 that is due in principal under Collateral Mortgage #2 by virtue of the default under the terms of the 80001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

91.    Defendant R. Jones PR is the present owner and title holder of the Collateral Mortgage #2 Real Property and is in possession of the same.  The right, title, or interest of R. Jones PR in the Collateral Mortgage #2 Real Property is inferior, subordinate, and subject to the lien of Collateral Mortgage #2.

92.    Defendant Tami Evers may have or claim to have some right, title, or interest in the Collateral Mortgage #2 Real Property either by virtue of being the present owner and title holder of the Collateral Mortgage #2 Real Property or by virtue of Collateral Mortgage #2. However, any actual or potential interest of Tami Evers in the Collateral Mortgage #2 Real Property is subject, subordinate, and inferior to the interest of SBN, and SBN has and maintains a superior interest to Tami Evers in the Collateral Mortgage #2 Real Property.

93.    Defendant Lori Evers may be the present owner and title holder of the Collateral Mortgage #2 Real Property or may have some claim or demand to the Collateral Mortgage #2 Real Property by virtue of possession, whether by tenancy from the record title holder, mere possession only or otherwise; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #2.

94.    Defendant Unknown Tenant #1 may have some claim or demand to the Collateral Mortgage #2 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #2.

95.    Defendant Unknown Tenant #2 may have some claim or demand to the Collateral Mortgage #2 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #2.

96.     As a result of the defaults alleged herein, SBN has retained the undersigned law firm to bring this action and is obligated to pay such firm a reasonable fee for their services. Under the terms of the SBN Notes and Collateral Mortgage #2, R. Jones PR and Tami Evers are obligated to pay all costs, fees, and expenses, including attorneys' fees incurred in the enforcement of SBN's lien and security interest.

**WHEREFORE**, SBN prays:

(A)     That the Court adjudge that SBN has a lien upon the Collateral Mortgage #2 Real Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)     That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the Collateral Mortgage #2 Real Property be sold to satisfy SBN's claims;

(C)     That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, Collateral Mortgage #2;

(D)     That the Court adjudge all claims, rights, title, interest, or equities of the Defendants and any and all persons claiming by, through, under, or against them since the filing of SBN's Notice of Lis Pendens to be inferior to the lien held by SBN under the Collateral Mortgage #2, and the aforesaid interests be foreclosed;

(E)     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)     That SBN have such other and further relief as is just and proper.

## COUNT IX
### (Foreclosure of Collateral Mortgage #3)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

97.     This is an action to foreclose a mortgage encumbering certain real property located in Okaloosa County, Florida and more particularly described in Collateral Mortgage #3 (the "Collateral Mortgage #3 Real Property").

98.     Robert Evers defaulted under the SBN Notes, as more particularly described in paragraphs 25, 30, 35, and 40 and, as a result, Robert Evers is also in default under the terms of Collateral Mortgage #3 pursuant to the Cross Collateral Agreement.

99.     Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 and, as a result, Tami Evers is also in default under the terms of Collateral Mortgage #3 pursuant to the Cross Collateral Agreement.

100.     SBN is owed the sum of $25,725.55 that is due in principal under Collateral Mortgage #3 by virtue of the default under the terms of the 500001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

101.     SBN is owed the sum of $167,451.86 that is due in principal under Collateral Mortgage #3 by virtue of the default under the terms of the 0002 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

102.   SBN is owed the sum of $236,244.00 that is due in principal under Collateral Mortgage #3 by virtue of the default under the terms of the 0006 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

103.   SBN is owed the sum of $299,700.00 that is due in principal under Collateral Mortgage #3 by virtue of the default under the terms of the 80001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

104.   Defendant R. Jones PR is the present owner and title holder of the Collateral Mortgage #3 Real Property and is in possession of the same.  The right, title, or interest of R. Jones PR in the Collateral Mortgage #3 Real Property is inferior, subordinate, and subject to the lien of Collateral Mortgage #3.

105.   Defendant Tami Evers may have or claim to have some right, title, or interest in the Collateral Mortgage #3 Real Property either by virtue of being the present owner and title holder of the Collateral Mortgage #3 Real Property or by virtue of Collateral Mortgage #3. However, any actual or potential interest of Tami Evers in the Collateral Mortgage #3 Real Property is subject, subordinate, and inferior to the interest of SBN, and SBN has and maintains a superior interest to Tami Evers in the Collateral Mortgage #3 Real Property.

106.   Defendant Lori Evers may be the present owner and title holder of the Collateral Mortgage #3 Real Property or may have some claim or demand to the Collateral Mortgage #3 Real Property by virtue of possession, whether by tenancy from the record title holder, mere

possession only or otherwise; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #3.

107.    Defendant Unknown Tenant #1 may have some claim or demand to the Collateral Mortgage #3 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #3.

108.    Defendant Unknown Tenant #2 may have some claim or demand to the Collateral Mortgage #3 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #3.

109.    As a result of the defaults alleged herein, SBN has retained the undersigned law firm to bring this action and is obligated to pay such firm a reasonable fee for their services. Under the terms of the SBN Notes and Collateral Mortgage #3, R. Jones PR is obligated to pay all costs, fees, and expenses, including attorneys' fees incurred in the enforcement of SBN's lien and security interest.

**WHEREFORE**, SBN prays:

(A)    That the Court adjudge that SBN has a lien upon the Collateral Mortgage #3 Real Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)    That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the Collateral Mortgage #3 Real Property be sold to satisfy SBN's claims;

(C)     That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, Collateral Mortgage #3;

(D)     That the Court adjudge all claims, rights, title, interest, or equities of the Defendants and any and all persons claiming by, through, under, or against them since the filing of SBN's Notice of Lis Pendens to be inferior to the lien held by SBN under the Collateral Mortgage #3, and the aforesaid interests be foreclosed;

(E)     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)     That SBN have such other and further relief as is just and proper.

## COUNT X
### (Foreclosure of Collateral Mortgage #4)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

110.    This is an action to foreclose a mortgage encumbering certain real property located in Okaloosa County, Florida and more particularly described in Collateral Mortgage #4 (the "Collateral Mortgage #4 Real Property").

111.    Robert Evers defaulted under the SBN Notes, as more particularly described in paragraphs 25, 30, 35, and 40 and, as a result, Robert Evers is also in default under the terms of Collateral Mortgage #4 pursuant to the Cross Collateral Agreement.

112.    Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 and, as a result, Tami Evers is also in default under the terms of Collateral Mortgage #4 pursuant to the Cross Collateral Agreement.

113.   SBN is owed the sum of $25,725.55 that is due in principal under Collateral Mortgage #4 by virtue of the default under the terms of the 500001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

114.   SBN is owed the sum of $167,451.86 that is due in principal under Collateral Mortgage #4 by virtue of the default under the terms of the 0002 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

115.   SBN is owed the sum of $236,244.00 that is due in principal under Collateral Mortgage #4 by virtue of the default under the terms of the 0006 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

116.   SBN is owed the sum of $299,700.00 that is due in principal under Collateral Mortgage #4 by virtue of the default under the terms of the 80001 Note, together with accrued interest, late charges, title search expenses for ascertaining necessary parties to this action, and other similar expenses incurred by SBN to preserve and protect the priority of its mortgage lien and security interest, including property taxes and insurance.

117.   Defendant R. Jones PR is the present owner and title holder of the Collateral Mortgage #4 Real Property and is in possession of the same.  The right, title, or interest of R.

Jones PR in the Collateral Mortgage #4 Real Property is inferior, subordinate, and subject to the lien of Collateral Mortgage #4.

118.    Defendant Tami Evers may have or claim to have some right, title, or interest in the Collateral Mortgage #4 Real Property either by virtue of being the present owner and title holder of the Collateral Mortgage #4 Real Property or by virtue of Collateral Mortgage #4. However, any actual or potential interest of Tami Evers in the Collateral Mortgage #4 Real Property is subject, subordinate, and inferior to the interest of SBN, and SBN has and maintains a superior interest to Tami Evers in the Collateral Mortgage #4 Real Property.

119.    Defendant Lori Evers may be the present owner and title holder of the Collateral Mortgage #4 Real Property or may have some claim or demand to the Collateral Mortgage #4 Real Property by virtue of possession, whether by tenancy from the record title holder, mere possession only or otherwise; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #4.

120.    Defendant Unknown Tenant #1 may have some claim or demand to the Collateral Mortgage #4 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #4.

121.    Defendant Unknown Tenant #2 may have some claim or demand to the Collateral Mortgage #4 Real Property by virtue of possession, whether by tenancy from the record title holder or mere possession only; however, whatever interest said defendant(s) may claim is inferior, subordinate, and subject to the lien of Collateral Mortgage #4.

122.    As a result of the defaults alleged herein, SBN has retained the undersigned law firm to bring this action and is obligated to pay such firm a reasonable fee for their services.

Under the terms of the SBN Notes and Collateral Mortgage #4, R. Jones PR and Tami Evers are obligated to pay all costs, fees, and expenses, including attorneys' fees incurred in the enforcement of SBN's lien and security interest.

**WHEREFORE**, SBN prays:

(A)     That the Court adjudge that SBN has a lien upon the Collateral Mortgage #4 Real Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)     That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the Collateral Mortgage #4 Real Property be sold to satisfy SBN's claims;

(C)     That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, Collateral Mortgage #4;

(D)     That the Court adjudge all claims, rights, title, interest, or equities of the Defendants and any and all persons claiming by, through, under, or against them since the filing of SBN's Notice of Lis Pendens to be inferior to the lien held by SBN under the Collateral Mortgage #4, and the aforesaid interests be foreclosed;

(E)     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)     That SBN have such other and further relief as is just and proper.

## COUNT XI
### (Foreclosure of the 500001 Security Agreement)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

123.   This is an action to foreclose SBN's security interest in the Personal Property, which was granted by virtue of the 500001 Security Agreement contained in the 500001 Mortgage.   The Personal Property is located in Okaloosa County, Florida and Santa Rosa County, Florida, the value of which is in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.   The Personal Property is more particularly described in Exhibit "L" attached hereto.

124.   Robert Evers defaulted under the SBN Notes, as more particularly described in paragraphs 25, 30, 35, and 40 and, as a result, Robert Evers is also in default under the terms of the 500001 Security Agreement contained in the 500001 Mortgage pursuant to the Cross-Collateralized and Cross-Defaulted Agreements contained in the 0006 Note and the 80001 Note and the cross collateralization provision contained within the 500001 Mortgage.

125.   Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 and, as a result, Tami Evers is also in default under the terms of the 500001 Security Agreement contained in the 500001 Mortgage.

126.   Consequently, as of the date of this Complaint, SBN is owed:

a.     $25,725.55 in principal on the 500001 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property;

b.     $167,451.86 in principal on the 0002 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property;

      c.      $236,244.00 in principal on the 0006 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property; and

      d.      $299,700.00 in principal on the 800001 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property.

127.    Defendant R. Jones PR is the present owner and holder of the Personal Property and is in possession of same.  The rights, title or interests of R. Jones PR are inferior, subordinate and subject to SBN's security interest in the Personal Property.

128.    Defendant Tami Evers is the present owner and holder of the Personal Property and is in possession of same.  The rights, title or interests of Tami Evers are inferior, subordinate and subject to SBN's security interest in the Personal Property.

129.    Defendant Lori Evers may be the present owner and title holder of the Personal Property and may be in possession of same.  The rights, title or interests of Lori Evers are inferior, subordinate and subject to SBN's security interest in the Personal Property.

130.    ICB may have or claim to have an interest in the Personal Property by virtue of that certain UCC-1 Financing Statement filed with the Florida Secured Transaction Registry on November 25, 2016, bearing File Number 201609508716.  However, the rights, title or interests of ICB are inferior, subordinate and subject to SBN's security interest in the Personal Property.

131.    SBN is entitled to foreclose the Personal Property pursuant to the terms of the Loan Documents and, more specifically, the 500001 Security Agreement contained in the 500001 Mortgage and the Financing Statements.

132.    SBN has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for its services in connection with the

enforcement of the Loan Documents, and such amounts are, under the terms of the Loan Documents, payable by R. Jones PR and Tami Evers.

**WHEREFORE**, SBN prays:

(A)    That the Court adjudge that SBN has a lien upon the Personal Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)    That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the Personal Property be sold to satisfy SBN's claims;

(C)    That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, the 500001 Security Agreement contained in the 500001 Mortgage and Financing Statements;

(D)    That the Court adjudge all claims, rights, title, interest or equities of the Defendants and any and all persons claiming by, through, under or against the Defendants to be inferior to the security interests held by SBN on the Personal Property, and that such interests be foreclosed;

(E)    That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)    That SBN have such other and further relief as is just and proper.

## COUNT XII
### (Foreclosure of the 0002 Security Agreement)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

133.   This is an action to foreclose SBN's security interest in the Personal Property, which was granted by virtue of the 0002 Security Agreement contained in the 0002 Mortgage. The Personal Property is located in Okaloosa County, Florida and Santa Rosa County, Florida, the value of which is in excess of $15,000.00, exclusive of interest, costs and attorneys' fees. The Personal Property is more particularly described in Exhibit "L" attached hereto.

134.   Robert Evers defaulted under the SBN Notes, as more particularly described in paragraphs 25, 30, 35, and 40 and, as a result, Robert Evers is also in default under the terms of the 0002 Security Agreement contained in the 0002 Mortgage pursuant to the Cross-Collateralized and Cross-Defaulted Agreements contained in the 0006 Note and the 80001 Note and the cross collateralization provision contained within the 500001 Mortgage.

135.   Tami Evers defaulted under the 500001 Note, as more particularly described in paragraph 25 and, as a result, Tami Evers is also in default under the terms of the 0002 Security Agreement contained in the 0002 Mortgage pursuant to the cross collateralization provision contained within the 500001 Mortgage.

136.   Consequently, as of the date of this Complaint, SBN is owed:

a.   $25,725.55 in principal on the 500001 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property;

b.   $167,451.86 in principal on the 0002 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property;

    c.    $236,244.00 in principal on the 0006 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property; and

    d.    $299,700.00 in principal on the 800001 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Personal Property.

137.    Defendant R. Jones PR is the present owner and holder of the Personal Property and is in possession of same. The rights, title or interests of R. Jones PR are inferior, subordinate and subject to SBN's security interest in the Personal Property.

138.    Defendant Tami Evers is the present owner and holder of the Personal Property and is in possession of same. The rights, title or interests of Tami Evers are inferior, subordinate and subject to SBN's security interest in the Personal Property.

139.    Defendant Lori Evers may be the present owner and title holder of the Personal Property and may be in possession of same. The rights, title or interests of Lori Evers are inferior, subordinate and subject to SBN's security interest in the Personal Property.

140.    ICB may have or claim to have an interest in the Personal Property by virtue of that certain UCC-1 Financing Statement filed with the Florida Secured Transaction Registry on November 25, 2016, bearing File Number 201609508716. However, the rights, title or interests of ICB are inferior, subordinate and subject to SBN's security interest in the Personal Property.

141.    SBN is entitled to foreclose the Personal Property pursuant to the terms of the Loan Documents and, more specifically, the 0002 Security Agreement contained in the 0002 Mortgage and the Financing Statements.

142.    SBN has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for its services in connection with the

enforcement of the Loan Documents, and such amounts are, under the terms of the Loan Documents, payable by R. Jones PR and Tami Evers.

**WHEREFORE**, SBN prays:

(A)     That the Court adjudge that SBN has a lien upon the Personal Property for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)     That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the Personal Property be sold to satisfy SBN's claims;

(C)     That the Court grant SBN a judgment foreclosing its security interests arising under the Loan Documents, and more specifically, the 0002 Security Agreement contained in the 0002 Mortgage and Financing Statements;

(D)     That the Court adjudge all claims, rights, title, interest or equities of the Defendants and any and all persons claiming by, through, under or against the Defendants to be inferior to the security interests held by SBN on the Personal Property, and that such interests be foreclosed;

(E)     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession, a deficiency judgment and the appointment of a receiver; and

(F)     That SBN have such other and further relief as is just and proper.

## COUNT XIII
### (Foreclosure of Covington Stock)

SBN re-alleges the allegations in paragraphs 1 through 23, 25-27, 30-32, 35-37 and 40-42 above as if fully stated herein.

143.    This is an action to foreclose an interest in stock more specifically described in the 80001 Note.  A copy of the Covington Stock certificate is attached hereto as Exhibit "M."

144.    Robert Evers defaulted under the SBN Notes, as more particularly described in paragraphs 25, 30, 35, and 40, which indebtedness is secured by the Covington Stock pursuant to the Cross-Collateralized and Cross-Defaulted Agreement contained in the 80001 Note.

145.    Consequently, as of the date of this Complaint, SBN is owed:

a.      $25,725.55 in principal on the 500001 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Covington Stock;

b.      $167,451.86 in principal on the 0002 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Covington Stock;

c.      $236,244.00 in principal on the 0006 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Covington Stock; and

d.      $299,700.00 in principal on the 800001 Note, together with accrued interest, fees and costs of collection, which amounts are secured by the Covington Stock.

146.    Defendant R. Jones PR, and all persons claiming by, through, or under R. Jones PR, and all parties claiming any interest in the stock certificates that are the subject of the Covington Stock, are subordinate and inferior to the interests of SBN.

147.    SBN is entitled to foreclose the Covington Stock pursuant to the terms of the Loan Documents and SBN is perfected by virtue of having possession of the Covington Stock.

148.   SBN has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for its services in connection with the enforcement of the Loan Documents, and such amounts are, under the terms of the Loan Documents, payable by R. Jones PR.

**WHEREFORE**, SBN prays:

(A)   That the Court adjudge that SBN has a lien upon the Covington Stock for the total amounts due under the SBN Notes, which is superior to all claims, rights, title, interest or equities of the Defendants;

(B)   That the Court determine the sums due to SBN under the SBN Notes for principal, interest, late charges, reasonable attorney's fees, costs and expenses, and that if such sums are not paid within the time set by the Court, that the Covington Stock be sold to satisfy SBN's claims;

(C)   That the Court grant SBN a judgment foreclosing its security interests in the Covington Stock;

(D)   That the Court adjudge all claims, rights, title, interest or equities of the Defendants and any and all persons claiming by, through, under or against the Defendants to be inferior to the security interests held by SBN in the Covington Stock, and that such interests be foreclosed;

(E)   That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, a deficiency judgment; and

(F)   That SBN have such other and further relief as is just and proper.

Dated this 6th day of February, 2018.

BURR & FORMAN LLP

By: /s/ Armando Nozzolillo
**J. ELLSWORTH SUMMERS, JR.**
Florida Bar No.: 0015769
**ARMANDO NOZZOLILLO**
Florida Bar No.: 106544
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
**Attorneys for Plaintiff**

Primary and Secondary E-Mail Addresses:
ESummers@burr.com
ANozzolillo@burr.com
SGuest@burr.com

## VERIFICATION OF COMPLAINT

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint, and the facts alleged therein are true and correct to the best of my knowledge and belief.

PLAINTIFF SBN V FNBC LLC, A DELAWARE LIMITED LIABILITY COMPANY

By: _____

Printed Name: Brian Ekback

Title: Senior Asset Manager for Summit Investment Management LLC, as contractual asset manager and custodian of records for SBN V FNBC LLC.

STATE OF _COLORADO_

COUNTY OF _DENVER_

BEFORE ME, the undersigned authority, personally appeared Brian Ekback, who being first duly sworn, deposes and says that he is the Senior Asset Manager for Summit Investment Management LLC, as the contractual asset manager and custodian of records for **SBN V FNBC LLC**, that he has read the foregoing Verified Complaint, and that the facts alleged therein are true and correct to the best of his knowledge and belief. He is _✗_ personally known to me OR _____ produced the following as identification _____.

SWORN TO AND SUBSCRIBED, before me, this _6th_ day of _February_, 2018.

_____
Notary Public
Name: _Melissa J. Hunting_
My Commission Expires: _19994023997_
My Commission Number is: _8/26/2019_

| MELISSA J. HUNTING |
| NOTARY PUBLIC |
| STATE OF COLORADO |
| NOTARY ID 19994023997 |
| MY COMMISSION EXPIRES AUGUST 26, 2019 |

## CERTIFICATION OF POSSESSION OF ORIGINAL
## NOTE PURSUANT TO FLA. STAT. § 702.015

The undersigned hereby certifies:

1.     That Plaintiff is in possession of the original 500001 Note, 0002 Note, 0006 Note and 80001 Note upon which this action is brought.

2.     The original 500001 Note, 0002 Note, 0006 Note and 80001 Note are located at the offices of Burr & Forman LLP, at 50 North Laura Street, Suite 3000, Jacksonville, Florida 32202.

3.     The name and title of the person giving the certification is: Armando Nozzolillo, Esq., counsel for the Plaintiff, **SBN V FNBC LLC**, a Delaware limited liability company.

4.     The name of the person who personally verified such possession is: Armando Nozzolillo.

5.     The time and date on which possession was verified was: <u>1:55 p.m. on February 2, 2018</u>.

6.     Correct copies of 500001 Note, 0002 Note, 0006 Note and 80001 Note and related Allonges are attached to this certification.

7.     I give this statement based on my personal knowledge.

Under penalties of perjury, I declare that I have read the foregoing Certification of Possession of Original Note Pursuant to Fla. Stat. § 702.015 and that the facts stated in it are true.

Executed on __February 6, 2018__.

By: _____

BURR & FORMAN LLP
ATTORNEYS FOR PLAINTIFF

STATE OF FLORIDA
COUNTY OF DUVAL

Sworn to and subscribed before me this _Uth_ day of _February_ 2018, by _____

_Armando Nozzolillo_, who is personally known to me.

_____
Notary Public, State of Florida
Name: _____
My Commission Expires: _____
My Commission Number is: _____

SARAH GUEST
Commission # FF 232881
Expires May 19, 2019
Bonded Thru Troy Fain Insurance 800-385-7019

## Composite Exhibit "A"

**The 500001 Note**

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $85,000.00 | 06-02-2004 | 06-02-2010 | 08760-0001 | 1 / 1EC | 60004760 | CAB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower:  ROBERT G EVERS
TAMI F EVERS
PO BOX 9
BAKER, FL 32531

Lender:  FIRST NATIONAL BANK OF CRESTVIEW
Main Office
P.O. Box 1119
002 N. Wilson St
Crestview, FL 32536

---

**Principal Amount: $85,000.00**     **Initial Rate: 6.500%**     **Date of Note: June 2, 2004**

**PROMISE TO PAY.** ROBERT G EVERS and TAMI F EVERS ("Borrower") jointly and severally promise to pay to FIRST NATIONAL BANK OF CRESTVIEW ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eighty-five Thousand & 00/100 Dollars ($85,000.00), together with interest on the unpaid principal balance from June 2, 2004, until paid in full. The interest rate will not increase above 11.600%.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 14 payments of $9,094.51 each payment and an irregular last payment estimated at $9,094.50. Borrower's first payment is due June 2, 2005, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on June 2, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the New York Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.500 percentage points over the Index, resulting in an initial rate of 6.500% per annum. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the effective rate of interest on this Note be less than 6.500% per annum or more than (except for any higher default rate shown below) the lesser of 11.600% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $15.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NATIONAL BANK OF CRESTVIEW, Main Office, P.O. Box 1119, 002 N. Wilson St, Crestview, FL 32536.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 18.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State

<div align="center">

**PROMISSORY NOTE**
**(Continued)**

</div>

Loan No: 38750-0001                                                                                                                   Page 2

of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $31.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Borrower acknowledges this Note is secured by A FIRST REAL ESTATE MORTGAGE OF EVEN DATES HEREIN RECORDED IN THE PUBLIC RECORDS WHERE THE REAL ESTATE IS LOCATED.

**PRIVACY DISCLOSURE POLICY.** First National Bank of Crestview respects the privacy of its customer's personal financial information. Please be assured that:
-- We will not disclose your non-public personal information other than to non-affiliated third parties as permitted by law (for example, to reputable credit reporting bureaus).
-- We only ask for information we truly need to complete a transaction or maintain a business relationship with you.
-- We use this information to protect and administer your records, accounts, and funds.

**TYPES OF INFORMATION THAT WE COLLECT**
First National Bank of Crestview collects non-public personal information about you from the following sources:
-- Information we receive from you on applications or other forms, such as: your name, address, social security number, assets and income.
-- Information about your transaction with us or others, such as: your account balance, payment history, parties to transactions and credit card usage.
-- Information we receive from a Customer Reporting Agency, such as: your credit-worthiness and credit history.

**CONFIDENTIALITY AND SECURITY**
We restrict access to non-public personal information about you to those employees who need to know that information to provide products and services to you. We maintain physical, electronic, and procedural safeguards to guard your non-public personal information from improper disclosure.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: FIRST NATIONAL BANK OF CRESTVIEW, Main Office, P.O. Box 1119, 302 N. Wilson St, Crestview, FL 32536

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

_X__Robert G Evers_____                      _X__Tami F Evers_____
ROBERT G EVERS                                                              TAMI F EVERS


LENDER:

FIRST NATIONAL BANK OF CRESTVIEW

X _____
   Authorized Signer

---

<div align="center">

**Florida Documentary Stamp Tax**

</div>

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Mortgage securing this Note.

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of
SBN V FNBC LLC
Without Recourse

that certain Promissory Note dated June 2, 2004 in the original principal amount of
$85,000.00, executed by Robert G. Evers and Tami F. Evers made to First National Bank
of Crestview as the same may have been renewed, assigned, amended, supplemented,
restated or modified.

Effective as of October 18, 2017.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for FIRST NBC BANK, New Orleans, Louisiana

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

## Exhibit "B"

**The 500001 Mortgage**

FILE # 2127211 RCD: 06/03/2004 @ 01:08 PM, BK: 2537 PG: 37   RECORDING:
$37.50   RECORDING ARTICLE V: $32.00   MTG DOCSTGAMPS: $297.50 INTANGIBLE TAX
$170.00  DEPUTY CLERK PDUNN NEWMAN C. BRACKIN, OKALOOSA COUNTY FL

OTAC 04-7468                                                2537-37

69.50
297.50
170.00

RECORDATION REQUESTED BY:
FIRST NATIONAL BANK OF CRESTVIEW
Main Office
P.O. Box 1119
302 N. Wilson St
Crestview, FL 32536

WHEN RECORDED MAIL TO:
FIRST NATIONAL BANK OF CRESTVIEW
Main Office
P.O. Box 1119
302 N. Wilson St
Crestview, FL 32536

This Mortgage prepared by:

Name: Stephanie Fischer, Loan Administrator
Company: FIRST NATIONAL BANK OF CRESTVIEW
Address: P.O. Box 1119, Crestview, FL 32536

## MORTGAGE

THIS MORTGAGE dated June 2, 2004, is made and executed between ROBERT G EVERS, and wife, TAMI F EVERS, whose address is PO BOX 9, BAKER, FL 32531; HUSBAND AND WIFE (referred to below as "Grantor") and FIRST NATIONAL BANK OF CRESTVIEW, whose address is P.O. Box 1119, 302 N. Wilson St, Crestview, FL 32536 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in OKALOOSA County, State of Florida:

See EXHIBIT "A" ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as XXX MELTON ROAD AND GRIFFITH MILL ROAD, BAKER, FL 32531. The Real Property tax identification number is 013N25000000040000.

CROSS-COLLATERALIZATION. In addition to the Note, this Mortgage secures the following described additional indebtedness: Loan #37766-0002.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $85,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

BK: 2537   PG: 38

## MORTGAGE
(Continued)

Loan No: 38750-0001                              Page 2

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon

BK:  2537   PG:  39

**MORTGAGE**
**(Continued)**

Loan No: 38750–0001                                                                 Page 3

payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right and remedies in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation with an account number of 37768–0001 to FIRST NATIONAL BANK OF CRESTVIEW described as: FIRST REAL ESTATE MORTGAGE OF EVEN DATES HEREIN. The existing obligation has a current principal balance of approximately $477,026.14 and is in the original principal amount of $507,824.07. The obligation has the following payment terms:  $50,838.33 per Year.  Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1)  Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2)  the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor.  Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of

BK:   2537    PG:   40

## MORTGAGE
### (Continued)

Loan No: 38750-0001                                                                 Page 4

Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such Indebtedness, or a default occurs under the instrument securing such Indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

BK:   2537   PG:   41

## MORGAGE
(Continued)

Page 5

Loan No: 38750-0001

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Mortgage has been accepted by Lender in the State of Florida.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Grantor's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means ROBERT G EVERS and TAMI F EVERS and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response,

BK:  2537  PG:  42

### MORTGAGE
(Continued)

Compensation, and Liablity Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the Indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means ROBERT G EVERS and TAMI F EVERS.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means FIRST NATIONAL BANK OF CRESTVIEW, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated June 2, 2004, **in the original principal amount of $85,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Note is June 2, 2019. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE.** Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement. As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s). Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements. This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b).

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

GRANTOR:

x _Robert G. Evers_____
ROBERT G EVERS

x _Tami F. Evers_____
TAMI F EVERS

WITNESSES:

x _C A H_____

x _Kim Sweeney_____

BK: 2537  PG: 43

**MORTGAGE**
**(Continued)**

Loan No: 38750-0001                                                                                  Page 7

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___FLORIDA___                          )
                                                                 ) SS
COUNTY OF ___OKALOOSA___                   )

The foregoing instrument was acknowledged before me this __2nd__ day of __JUNE__, 20__04__
by ROBERT G EVERS and TAMI F EVERS, HUSBAND AND WIFE, who are personally known to me or who have produced _____
_fl drivers license_ as identification and did / did not take an oath.

_Kimberly A. Sweeney_
(Signature of Person Taking Acknowledgment)

KIMBERLY A. SWEENEY
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)            Kimberly A. Sweeney
                                                MY COMMISSION # DD305591 EXPIRES
                                                May 4, 2008
                                                BONDED THRU TROY FAIN INSURANCE, INC

LASER PRO Lending, Ver. 5.24.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - FL G:\OAKLAND\CFI\LPL\G03.FC  TR-1941  PR-19

BK:  2537  PG:  44

App No. 04-7468
Date:

### EXHIBIT 'A'

PARCEL 1:
Commencing at the Southwest corner of Section 36, Township 4 North, Range 25 West,
same being the Northwest corner of Section 1, Township 3 North, Range 25 West,
Okaloosa County, Florida; thence along the common line of said Section 36 and
Section 1; run South 89 degrees 50' 42" East 1320 feet to Point of Beginning;
thence continue along said Section line South 89 degrees 50' 42" East, 203.59 feet
to Point of Intersection with the South right of way line of Brooks Road (80 foot
wide right of way); thence departing said Section line, run along said South line
of Brooks Road, North 86 degrees 30' 42" East 1118.52 feet; thence departing said
South line, run South 00 degrees 01' 42" West 663.63 feet; thence North 89 degrees
54' 31" West 1321.09 feet to point on the East maintenance line of Griffith Mill
Road; thence North 00 degrees 07' 56" East 594.01 feet to the Point of Beginning.
Less and Except a parcel of land situated in the right of way of Brooks Road and
being more particularly described as: Commencing at the above mentioned Northwest
corner of Section 1, Township 3 North, Range 25 West, Okaloosa County, Florida;
thence along said Section line South 89 degrees 50' 42" East, 1320 feet to the
Point of Beginning; thence continue along said Section line 203.59 feet; thence
departing said Section line, run South 86 degrees 30' 42" West 204.00 feet to the
Point on the East maintenance line of Griffith Mill Road; thence North 00 degrees
07' 56" East 12.96 feet to Point of Beginning.

## <u>Composite Exhibit "C"</u>

**The 0002 Note**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $507,824.97 | 12-11-2001 | 12-11-2019 | 977000002 | 120 | 87700000.0 | JHD | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ROBERT GREGORY EVERS A/K/A ROBERT G.
EVERS
TAMI F EVERS A/K/A TAMI SUE EVERS
1054 MELTON RD
BAKER, FL 32531

**Lender:** FIRST NATIONAL BANK OF CRESTVIEW
902 North Wilson Street
P.O. Box 1110
Crestview, FL 32536

---

**Principal Amount:** $507,824.97       **Initial Rate:** 7.000%       **Date of Note:** December 11, 2001

**PROMISE TO PAY.** ROBERT GREGORY EVERS A/K/A ROBERT G. EVERS and TAMI F EVERS A/K/A TAMI SUE EVERS ("Borrower") jointly and severally promise to pay to FIRST NATIONAL BANK OF CRESTVIEW ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Seven Thousand Eight Hundred Twenty-four & 97/100 Dollars ($507,824.97), together with interest on the unpaid principal balance from December 11, 2001, until paid in full. The interest rate will not increase above 14.000%.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 12 payments of $50,835.03 each payment. Borrower's first payment is due December 11, 2002, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on December 11, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the New York Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each 12 MONTHS. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 7.000% per annum. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be no less than 7.000% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $15.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NATIONAL BANK OF CRESTVIEW, 902 North Wilson Street, P.O. Box 1110, Crestview, FL 32536.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 16.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the dispute, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.'

## PROMISSORY NOTE
### (Continued)

Loan No: 377680002          Page 2

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Borrower acknowledges this Note is secured by 1ST REAL ESTATE MTG BK 2211 PG 384 6/27/99 AND UCC 1 BK 2209 PG 2498 6/14/99.

**PRIVACY DISCLOSURE POLICY.** First National Bank of Crestview respects the privacy of its customer's personal financial information. Please be assured that:
-- We will not disclose your non-public personal information other than to non-affiliated third parties as permitted by law (for example, to reputable credit reporting bureaus).
-- We only ask for information we truly need to complete a transaction or maintain a business relationship with you.
-- We use this information to protect and administer your records, accounts, and funds.

**TYPES OF INFORMATION THAT WE COLLECT**
First National Bank of Crestview collects non-public personal information about you from the following sources:
-- Information we receive from you on applications or other forms, such as your name, address, social security number, assets and income.
-- Information about your transaction with us or others, such as your account balance, payment history, parties to transactions and credit card usage.
-- Information we receive from a Customer Reporting Agency, such as your credit-worthiness and credit history.

**CONFIDENTIALITY AND SECURITY**
We restrict access to non-public personal information about you to those employees who need to know that information to provide products and services to you. We maintain physical, electronic, and procedural safeguards to guard your non-public personal information from improper disclosure.

**PRIOR NOTE.** RENEWAL OF NOTE DATED 4/19/00, WHICH DOCUMENTARY STAMP TAX HAS BEEN PAID.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: FIRST NATIONAL BANK OF CRESTVIEW, 302 North Wilson Street, P.O. Box 1119, Crestview, FL 32536

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms any Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any other or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other Indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x _____       x _____
ROBERT GREGORY EVERS  A/K/A ROBERT G.      TAMI F EVERS A/K/A TAMI SUE EVERS, Individually
EVERS , Individually

LENDER:

FIRST NATIONAL BANK OF CRESTVIEW

x _____
Authorized Signer

## CHANGE IN TERMS AGREEMENT

| Principal $235,009.22 | Loan Date 12-11-2001 | Maturity 02-11-2020 | Loan No 377680002 | Call / Coll 4b / 120 | Account E000479 0 | Officer DRICE | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " **** " has been omitted due to text length limitations.

**Borrower:** ROBERT GREGORY EVERS
PO BOX 9
BAKER, FL 32531

**Lender:** FIRST NATIONAL BANK OF CRESTVIEW
Main Office
1301 Industrial Drive / P.O. Box 1119
Crestview, FL 32539

**Principal Amount: $235,009.22**                    **Date of Agreement: March 7, 2014**

DESCRIPTION OF EXISTING INDEBTEDNESS. Promissory Note dated 12/11/2001 In the amount of $507,624.97 from Robert Gregory Evers A/K/A Robert G. Evers and Tami F Evers A/K/A Tami Sue Evers to First National Bank of Crestview.

DESCRIPTION OF COLLATERAL. First Real Estate Mortgage Dated 5/27/1999 recorded in OR Book 2211, Page 384 Okaloosa County, FL and OR Book 1829, Page 463 Santa Rosa County, FL to include all modifications and renewals.

DESCRIPTION OF CHANGE IN TERMS. Change annual payment due date from the 11th day of December to the 11th day of February.

PROMISE TO PAY. ROBERT GREGORY EVERS ("Borrower") promises to pay to FIRST NATIONAL BANK OF CRESTVIEW ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thirty-five Thousand Nine & 22/100 Dollars ($235,009.22), together with interest on the unpaid principal balance from February 25, 2014, until paid in full.

PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 5 annual consecutive principal and interest payments in the initial amount of $51,562.06 each, beginning February 11, 2016, with interest calculated on the unpaid principal balances using an interest rate based on the New York Prime Rate as published in the Wall Street Journal (currently 3.250%), plus a margin of 1.000 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.000% per annum based on a year of 360 days; and one principal and interest payment of $35,568.67 on February 11, 2020, with interest calculated on the unpaid principal balances using an interest rate based on the New York Prime Rate as published in the Wall Street Journal (currently 3.250%), plus a margin of 1.000 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.000% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the New York Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each YEAR. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this loan will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the effective rate of interest on this loan be less than 7.000% per annum or more than (except for any higher default rate shown below) the lesser of 14.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

PREPAYMENT; MINIMUM INTEREST CHARGE. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $15.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NATIONAL BANK OF CRESTVIEW, Main Office, 1301 Industrial Drive / P.O. Box 1119, Crestview, FL 32539.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 377080002                                                                                     Page 2

Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by First Real Estate Mortgage Dated 5/27/1999 recorded in OR Book 2211, Page 384 Okaloosa County, FL and OR Book 1929, Page 453 Santa Rosa County, FL to include all modifications and renewals.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the original obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**CROSS-COLLATERALIZED AND CROSS-DEFAULTED.** An exhibit, titled "CROSS-COLLATERALIZED AND CROSS-DEFAULTED," is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: FIRST NATIONAL BANK OF CRESTVIEW 1301 Industrial Drive Crestview, FL 32539.

**CHANGE IN TERMS AGREEMENT**
(Continued)

Loan No: 377680002                                                                                          Page 3

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

CHANGE IN TERMS SIGNERS:

X _Robert Gregory Evers_____
   ROBERT GREGORY EVERS

LENDER:

FIRST NATIONAL BANK OF CRESTVIEW

X _____
   Dale E Rice, Jr, President

LASER PRO Lending, Ver. 13.4.0.024  Copr. Harland Financial Solutions, Inc. 1997, 2014.  All Rights Reserved.  - FL  F:\CFI\LANDECFI\PL\PLFD00.FC  TR-4383  PR-10

*Seq # 1145747z*

*orig*

‖‖‖‖‖‖‖ "*00000037760002^EAB3176%0980%0331Z017%281197847*"

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $165,435.90 | 03-31-2017 | 02-11-2020 | 37760002 | 18 / 001 | EAB3176 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

Borrower:  ROBERT GREGORY EVERS
5047 HIGHWAY 189 N
BAKER, FL 32531

Lender:  FIRST NBC BANK
CENTRAL OFFICE
1301 Industrial Drive
Crestview, FL 32539

Principal Amount: $165,435.90                      Date of Agreement: March 31, 2017

DESCRIPTION OF EXISTING INDEBTEDNESS.  ORIGINAL PROMISSORY NOTE DATED DECEMBER 11, 2001, IN THE ORIGINAL MAXIMUM PRINCIPAL AMOUNT OF $507,024.07, EVIDENCING A LOAN WITH AN EXISTING PRINCIPAL BALANCE OF $165,435.90, ON WHICH ALL DOCUMENTARY STAMP TAXES HAVE BEEN PAID.

DESCRIPTION OF COLLATERAL.  REAL ESTATE.

DESCRIPTION OF CHANGE IN TERMS.  LOAN STRUCTURE CHANGED FROM A FIVE YEAR AMORTIZED TERM NOTE WITH ANNUAL PAYMENTS TO A BALLOON NOTE WITH 15 YEAR AMORTIZATION, CHANGE PAYMENT TERMS TO MONTHLY PAYMENTS (SEE PAYMENT PARAGRAPH LISTED BELOW) ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

PROMISE TO PAY.  ROBERT GREGORY EVERS ("Borrower") promises to pay to FIRST NBC BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Sixty-five Thousand Four Hundred Thirty-five & 90/100 Dollars ($165,435.90), together with interest on the unpaid principal balance from March 31, 2017, until paid in full.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, subject to any payment changes resulting from changes in the index, Borrower will pay this loan in 33 regular payments of $1,499.60 each and one irregular last payment estimated at $147,666.60.  Borrower's first payment is due May 11, 2017, and all subsequent payments are due on the same day of each month after that.  Borrower's final payment will be due on February 11, 2020, and will be for all principal and all accrued interest not yet paid.  Payments include principal and interest.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; then to any unpaid collection costs; and then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this loan.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.  All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender.  If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Central Time, Lender will credit Borrower's payment on the next business day.

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each YEAR.  Borrower understands that Lender may make loans based on other rates as well.  The index currently is 4.000% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 7.000% per annum based on a year of 360 days.  NOTICE: Under no circumstances will the interest rate on this loan be less than 7.000% per annum or more than (except for any higher default rate shown below) the lesser of 14.000% per annum or the maximum rate allowed by applicable law.  Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following:  (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in this loan document.

PREPAYMENT.  Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBC BANK, CENTRAL OFFICE, 1301 Industrial Drive, Crestview, FL 32539.

LATE CHARGE.  If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT.  Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 18.000% per annum based on a year of 360 days.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT.  Each of the following shall constitute an Event of Default under this Agreement:

Payment Default.  Borrower fails to make any payment when due under the Indebtedness.

Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency.  The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity.  Lender in good faith believes itself insecure.

LENDER'S RIGHTS.  Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest

## CHANGE IN TERMS AGREEMENT
(Continued)

Loan No: 377660002                                                                    Page 2

immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instrument listed herein: a Mortgage or Deed of Trust to a trustee in favor of Lender on real property located in OKALOOSA County, State of Florida.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of this Agreement. Borrower does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

_(signature)_
ROBERT GREGORY EVENS

LENDER:

FIRST NBC BANK

X _(signature)_
Dale Rice, Loan Officer

LaserPro, Ver. 16.4.10.051  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - FL  C:\CFI\LPL\D20.FC  TR-25358  PR-18

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of
SBN V FNBC LLC
Without Recourse

that certain Promissory Note dated December 11, 2001 in the original principal amount of
$507,624.97, executed by Robert Gregory Evers A/K/A Robert G. Evers and Tami F. Evers
A/K/A Tami Sue Evers made to First National Bank of Crestview as the same may have
been renewed, assigned, amended, supplemented, restated or modified.

Effective as of October 18, 2017.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for FIRST NBC BANK, New Orleans, Louisiana

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

<u>**Composite Exhibit "D"**</u>

**The 0002 Mortgage**

** OFFICIAL RECORDS **
BK 2211  PG 384

* OFFICIAL RECORDS * 1of7
BK 1828  PG 453
FILE # 1702971   RCD: May 27 1999 @ 04:00PM
Newman C. Brackin, Clerk, Okaloosa Cnty Fl

FILE # 200020427
RCD: Jun 05 2000 @ 09:44AM
Mortgage Doc Stamps $1,804.25
Intangible Tax $1,030.90  D.C _____

Mary M Johnson, Clerk Of Courts,
SANTA ROSA COUNTY

WHEN RECORDED MAIL TO:
Covington County Bank
226 East Three Notch Street
Post Office Box 610
Andalusia, AL  00420

This Mortgage prepared by:

Name: KELLEY S. FORE
Company: Covington County Bank
Address: 226 East Three Notch Street, Post Office Box 610, Andalusia, AL, 36420

# MORTGAGE

## FUTURE ADVANCES

**NOTICE:** This Mortgage secures all future advances from Lender to Grantor; however, in no event will the principal amount secured at any one time exceed $675,000.00.

THIS MORTGAGE IS DATED APRIL 2, 1999, between ROBERT GREGORY EVERS and TAMI SUE EVERS, HUSBAND AND WIFE, whose address is POST OFFICE BOX 9, BAKER, FL.  32531 (referred to below as "Grantor"); and Covington County Bank, whose address is 226 East Three Notch Street, Post Office Box 518, Andalusia, AL  36420 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in OKALOOSA County, State of Florida (the "Real Property"):

SEE EXHIBIT "A"

The Real Property or its address is commonly known as 1064 MELTON ROAD, BAKER, FL  32531.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Grantor.** The word "Grantor" means ROBERT GREGORY EVERS and TAMI SUE EVERS. The Grantor is the mortgagor under this Mortgage.

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. This Mortgage secures, in addition to the amounts specified in the Note, future advances made within twenty (20) years of the date of this Mortgage, to an unlimited amount, together with all interest thereon, which future advances Lender is obligated to make so long as Grantor complies with the terms and conditions of the Note or other loan agreement. The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $675,000.00, plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.

**Lender.** The word "Lender" means Covington County Bank, its successors and assigns. The Lender is the mortgagee under this Mortgage.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

**Note.** The word "Note" means the promissory note or credit agreement dated April 2, 1999, in the original principal amount of $516,452.23 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Note is April 1, 2000.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE RELATED DOCUMENTS. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Grantor's interest in any or all of the Property is foreclosed, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance

```
                    ** OFFICIAL RECORDS **
                    BK 2211  PG 385

                              * OFFICIAL RECORDS * 2of7
                                 BK 1029  PG 454
```

| | | |
|---|---|---|
| 04-02-1999 | MORTGAGE | Page 2 |
| Loan No 72017651 | (Continued) | |

necessary to preserve its value.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (a) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the properties. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due, and except as otherwise provided in the following paragraph.

**Right To Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

```
                                    ** OFFICIAL RECORDS **
                                    BK 2211  PG 386

                                      * OFFICIAL RECORDS * 3of7
                                         BK 1629  PG 455
```

04-02-1999           **MORTGAGE**
Loan No 72017661        **(Continued)**

---

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $500.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**CONDEMNATION.** The following provisions relating to condemnation of the Property are a part of this Mortgage.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (b) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (c) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor under the Note, this Mortgage, and the Related Documents, and (b) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters

** OFFICIAL RECORDS **
BK 2211  PG 387

* OFFICIAL RECORDS * 4of7
BK 1829  PG 466

04-02-1999                        MORTGAGE                         Page 4
Loan No 72017651                  (Continued)

---

referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage:

**Default on Indebtedness.** Failure of Grantor to make any payment when due on the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Compliance Default.** Failure of Grantor to comply with any other term, obligation, covenant or condition contained in this Mortgage, the Note or in any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor under this Mortgage, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor or the dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forefeiture proceeding, provided that Grantor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure the Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith deems itself insecure.

**Right to Cure.** If such a failure is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Grantor, after Lender sends written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Mortgage after failure of Grantor to perform shall not affect Lender's right to declare a default and exercise its remedies under this Mortgage.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as reasonable attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for in the Note. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES TO GRANTOR AND OTHER PARTIES.** Any notice under this Mortgage, including without limitation any notice of default and any notice of sale, may be given by mail or by mail or courier service. Notice given by registered or certified mail is deemed given when deposited in the United States mail, properly directed to the intended recipient's address shown near the beginning of this Mortgage and with postage fully prepaid. Notice otherwise given is deemed given when actually received by the recipient or when delivered to the address to which properly sent. Any party may

```
                                                    ** OFFICIAL RECORDS **
                                                      BK 2211  PG 388

                                                   * OFFICIAL RECORDS *  5of7
                                                        BK 1829  PG 467
```

04-02-1999                          MORTGAGE                                    Page 5
Loan No 72017651                    (Continued)

change its address for notices under this Mortgage by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. If more than one person constitutes Grantor, notice given to either or any of them is deemed given to both or all of them.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Applicable Law.** This Mortgage has been delivered to Lender and accepted by Lender in the State of Alabama. Except as set forth hereinafter, this Mortgage shall be governed by, construed and enforced in accordance with the laws of the State of Alabama, except and only to the extent of procedural matters related to the perfection and enforcement by Lender of its rights and remedies against the Property, which matters shall be governed by the laws of the State of Florida. However, in the event that the enforceability or validity of any provision of this Mortgage is challenged or questioned, such provision shall be governed by whichever applicable state or federal law would uphold or would enforce such challenged or questioned provision. The loan transaction which is evidenced by the Note and this Mortgage (which secures the Note) has been applied for, considered, approved and made in the State of Alabama.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Multiple Parties.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Mortgage.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Mortgage (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions. Whenever consent by Lender is required in this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

WITNESSES:                                          GRANTOR:

x _Melena a Smith_                                  x _____(SEAL)
                                                        ROBERT GREGORY EVERS
x _Christy Carter_
                                                    x _____(SEAL)
                                                        TAMI SUE EVERS


                              INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Alabama_____ )
                                   ) SS
COUNTY OF _Covington_____ )

The foregoing instrument was acknowledged before me this _2nd_ day of _April_
19 _99_ by ROBERT GREGORY EVERS and TAMI SUE EVERS, who is personally known to me or who has produced
_____ as identification and who did / did not take an oath.

                                        _Kelley Moore_____
                                        (Signature of Person Taking Acknowledgment)

                                        _Kelley S Moore_____
                                        (Name of Acknowledger Typed, Printed or Stamped)

                                        _Loan Assistant_____
                                        (Title or Rank)

                                        _____
                                        (Serial Number, if any)

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.26b (c) 1999 CFI ProServices, Inc. All rights reserved. [AL-G03 72017651.LN G33.OVL]

```
                                          ** OFFICIAL RECORDS **
                                          BK 2211 PG 389
```

App No. 99-8353                              ♦ OFFICIAL RECORDS ♦ 6of7
                                               BK 1829  PG 488

EXHIBIT 'A'

PARCEL 1:
Commencing at the Southwest corner of Section 36, Township 4 North, Range 25 West,
same being the Northwest corner of Section 1, Township 3 North, Range 25 West,
Okaloosa County, Florida; thence along the common line of said Section 36 and
Section 1; run South 89 degrees 50' 42" East 1320 feet to Point of Beginning;
thence continue along said Section line South 89 degrees 50' 42" East, 203.59 feet
to Point of Intersection with the South right of way line of Brooks Road (80 foot
wide right of way); thence departing said Section line, run along said South line
of Brooks Road, North 86 degrees 30' 42" East 1118.52 feet; thence departing said
South line, run South 00 degrees 01' 42" West 663.63 feet; thence North 89 degrees
54' 31" West 1371.09 feet to point on the East maintenance line of Griffith Mill
Road; thence North 00 degrees 07' 56" East 594.01 feet to the Point of Beginning,
Less and Except 0.03 acre (1327 square feet) of land situated in the right of way
of Brooks Road and being more particularly described as:  Commencing at the above
mentioned Northwest corner of Section 1, Township 3 North, Range 25 West, Okaloosa
County, Florida; thence along said Section line South 89 degrees 50' 42" East, 1320
feet to the Point of Beginning; thence continue along said Section line 203.59
feet; thence departing said Section line, run South 86 degrees 30' 42" West 204.00
feet to the Point on the East maintenance line of Griffith Mill Road; thence North
00 degrees 07' 56" East 12.96 feet to Point of Beginning.

PARCEL #2:

PARCEL A:  The Northwest Quarter of the Northwest Quarter of Section 6, Township 4
North, Range 25 West, Okaloosa County, Florida, and an easement over the East 30
feet of the Southwest Quarter of the Northwest Quarter of Section 6, Township 4
North, Range 25 West, Okaloosa County, Florida.

PARCEL B:  The Southwest Quarter of the Southwest Quarter of Section 25, Township 5
North, Range 26 West, Santa Rosa County, Florida.

PARCEL #3:

PARCEL A:  Commencing at the Southwest corner of Lot 7, Block 1, Town of Baker,
according to the plat on file in the Office of the Clerk of Court, Okaloosa County,
Florida, for the Point of Beginning; thence Northeasterly along the West boundary
line of said Block 1 to the Northwest corner of Lot 1 of said Block, thence West
along the South boundary of 19th Street, 117.12 feet, more or less, to the East
boundary of State Road 189, thence Southerly along the East boundary line of road
189 a distance of 350.67 feet to the North boundary of 18th Street, thence East
81.8 feet, more or less to the Point of Beginning.

PARCEL B:  50 feet East and West and 350 feet North and South lying between Block 1
and Block 25 of plat of Town of Baker, said area being formerly designated as
Madison Street and the Street having been closed by appropriate action of the Board
of County Commissioners of Okaloosa County, Florida, and title thereto having
reverted to the grantors.
***CONTINUED***

## OFFICIAL RECORDS ##
BK 2211 PG 390

App No. 99-8353          Exhibit "A" → CONTINUED          * OFFICIAL RECORDS * 7of7
BK 1828 PG 458

AND

10 feet East and West and 350 feet North and South lying immediately Easterly adjacent to Lots 8 through 14, inclusive, in Block 25, of the said Town of Baker, said area being formerly designated as the West 1/2 of an alley, which was likewise duly closed by appropriate action by the Board of County Commissioners of Okaloosa County, Florida, and title having reverted back to the grantors.

Lots 1 through 7, Block 1 and Lots 8 through 14, Block 25, Town of Baker, according to the plat on file in the Office of the Clerk of Circuit Court, Okaloosa County, Florida.

PARCEL #4:
The South 1/2 of Southwest 1/4 of Section 32, Township 5 North, Range 25 West, Okaloosa County, Florida.

LESS AND EXCEPT:  Commence at the Southeast corner of Southwest 1/4 of Section 32, Township 5 North, Range 25 West, Okaloosa County, Florida, thence North 330 feet, thence West 660 feet, thence South 330 feet, thence East 660 feet to the Point of Beginning.

O.T.

10⁵⁵ ꭓ 2.⁰⁰

99-8353  STATE OF FLORIDA)

** OFFICIAL RECORDS **
BK 2330 PG 970

* OFFICIAL RECORDS * 1of2
BK 1953  PG 1805

FILE # 200145774
RCD: Nov 05 2001 @ 04:01PM

SANTA ROSA COUNTY, FL
Mary M Johnson, Clerk

OKALOOSA and )
SANTA ROSA COUNTIES)

## ASSIGNMENT OF MORTGAGE
### (NON-RECOURSE)

KNOW ALL MEN BY THESE PRESENTS, That for value received, the undersigned, COVINGTON COUNTY BANK, an Alabama banking corporation, does hereby grant, bargain, sell, convey, assign and transfer unto FIRST NATIONAL BANK OF CRESTVIEW, a Florida banking corporation, the following

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1970-1976 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $150,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1955-1961 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage dated March 30, 1994 from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00 recorded in Book 1408 Pages 380-386 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers to Covington County Bank to secure $151,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1700-1706 in the Office of Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert Gregory Evers and Tami Sue Evers to Covington County Bank to secure $675,000.00, dated April 2, 1999 recorded in Book 2211 Pages 384-390 in the office of the clerk of Circuit Court Okaloosa County, Florida; and recorded in Book 1829 Pages 453-459 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami Sue Evers to Covington County Bank to secure $50,000.00, dated August 19, 1991 recorded in Book 1621 Pages 1916-1917 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain cross-collateralization agreement from Robert G. Evers and Tami Sue Evers to Covington County Bank with reference to mortgages listed at 1, 2, 4 and 6 above, dated March 30, 1994; recorded in Book 1834 Pages 1097-1098 in the Office of the Clerk of Circuit Court Okaloosa County, Florida

together with the original promissory note(s) or obligation(s) therein described, the renewals and extensions thereof and the money due thereon, with the interest, and together with the real property described in and conveyed by said mortgages.

TO HAVE AND TO HOLD the same unto said FIRST NATIONAL BANK OF CRESTVIEW, its successors and assigns.

THIS ASSIGNMENT is made without recourse against the maker.

IN WITNESS WHEREOF, COVINGTON COUNTY BANK has caused this instrument to be executed Alan L. Mims its Executive Vice President and its seal affixed this the 31st day of October, 2001.

Witnesses:

COVINGTON COUNTY BANK,
an Alabama Banking Corporation

By: _____
Alan L. Mims, its Executive Vice President

_____
ANGELA GRINLAW

_____
TERESA O'HARA

Okaloosa Title

Page 1 of 2

FILE # 1084818  RCD: Dec 05 2001 @ 01:08PM  Newman C. Brackin, Clerk, Okaloosa Cnty Fl

* OFFICIAL RECORDS * 2of2
BK 1953   PG 1806

** OFFICIAL RECORDS **
BK 2330  PG 971

STATE OF FLORIDA

COUNTY OF OKALOOSA

On this the 31st day of October, 2001, before me, ___TERESA O'HARA___ a Notary Public in and for said county, appeared Alan L. Mims, personally known to me who first by me being sworn did say that he is the Executive Vice President of Covington County Bank, and that the seal affixed to the instrument is corporate seal of the corporation, and that the instrument was signed and sealed in behalf of the corporation by authority of its board of directors and Alan L. Mims acknowledged the instrument to be the free and voluntary act and deed of the corporation.

In testimony of, I have hereunto affixed my name and official seal at Crestview, Florida, this 31st day of October, 2001.

_Teresa O'Hara_
Notary Public, State of Florida

Teresa O'Hara
MY COMMISSION # CC752305 EXPIRES
October 19, 2002
BONDED THRU TROY FAIN INSURANCE INC.

My commission expires: _____

Prepared by:
J. Mark Murphy
MURPHY, MURPHY & MCCALMAN, P.C.
P.O. Drawer 1736
Andalusia, AL  36420

OFFICIAL RECORDS * 1of4
BK 1973  PG 1319

RECORDATION REQUESTED BY:
FIRST NATIONAL BANK OF CRESTVIEW
302 North Wilson Street
P.O. Box 1119
Crestview, FL 02536

** OFFICIAL RECORDS **
BK 2333  PG 2840

WHEN RECORDED MAIL TO:
FIRST NATIONAL BANK OF CRESTVIEW
302 North Wilson Street
P.O. Box 1119
Crestview, FL 02536

FILE # 1888747   RCD: Dec 24 2001 @ 08:45AM
Newman C. Brackin, Clerk, Okaloosa Coun/Fla

FILE # 200200894
RCD: Jan 08 2002 @ 10:31AM

SANTA ROSA COUNTY, FL
Mary M Johnson, Clerk

This Modification of Mortgage prepared by:

Name: ROBERTA CANNON, LOAN ADMINISTRATOR
Company: FIRST NATIONAL BANK OF CRESTVIEW
Address: 302 North Wilson Street, Crestview, FL 02536

## MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated December 11, 2001, is made and executed between ROBERT G. EVERS AND WIFE, TAMI F EVERS AS TO PARCELS #1, #2A AND 2B, ROBERT G. EVERS AS TO PARCEL #3 AND ROBERT G. EVERS AND WIFE, TAMI SUE EVERS TO PARCEL #4, WHOSE ADDRESS IS 1054 MELTON ROAD BAKER, FL 32531 (referred to below as "Grantor") and FIRST NATIONAL BANK OF CRESTVIEW, whose address is 302 North Wilson Street, P.O. Box 1119, Crestview, FL 32536 (referred to below as "Lender").

MORTGAGE. Lender and Grantor have entered into a Mortgage dated April 2, 1999 (the "Mortgage") which has been recorded in OKALOOSA/SANTA ROSA County, State of Florida, as follows:

RECORDED IN O.R. BOOK 2211, PAGE 954, DATED 5/27/99 OKALOOSA COUNTY, FL/O.R. BOOK 1829 PG 453, DTED 5/27/99 SANTA ROSA

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property located in OKALOOSA County, State of Florida:

See ATTACHED EXHIBIT "A" HERETO AND MADE A PART HEREOF., which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as 5847 HWY 189 AND 1054 MELTON RD AND 155 ACRES WEST OF BAKER, FL, BAKER, FL 32531. The Real Property tax identification number is `019N28000000040000, 064N2800000070010, 328N2800000020000, 083N2427600010010, 069N2427600025060`

MODIFICATION. Lender and Grantor hereby modify the Mortgage as follows:

RENEWAL OF BALANCE TO AMORTIZE.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED DECEMBER 11, 2001.

GRANTOR:

X _____
ROBERT GREGORY EVERS AKA ROBERT G. EVERS, Individually

X _____
TAMI F EVERS AKA TAMI SUE EVERS, Individually

WITNESSES:

X _____
TERESA O'HARA

X _____
ROBERTA CANNON

LENDER:

X _____
Authorized Signer J. HAYWARD DAVIS/SENIOR VICE PRES.

Okaloosa Title

```
                              ** OFFICIAL RECORDS **
                              BK 2833  PG 2841
```

```
                                    * OFFICIAL RECORDS * 2of4
                                      BK 1973  PG 1320
```

| | | |
|---|---|---|
| Loan No: 377680002 | MODIFICATION OF MORTGAGE (Continued) | Page 2 |

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_ _____ )
                                ) SS
COUNTY OF _Okaloosa_ _____ )

The foregoing instrument was acknowledged before me this __11th__ day of _December_, 20 _01_ by ROBERT GREGORY EVENS A/K/A ROBERT G. EVENS and TAMI F EVENS A/K/A TAMI SUE EVENS, who are personally known to me or who have produced _____ as identification and did / did not take an oath.

_Teresa O'Hara_
(Signature of Person Taking Acknowledgment)

Teresa O'Hara
MY COMMISSION # CC763555 EXPIRES
October 19, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

_____
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

## LENDER ACKNOWLEDGMENT

STATE OF _Florida_ _____ )
                                ) SS
COUNTY OF _Okaloosa_ _____ )

The foregoing instrument was acknowledged before me this __11th__ day of _December_, 20 _01_ by _S. Hayward Davis_. He or she is personally known to me or has produced _____ as identification and did / did not take an oath.

_Teresa O'Hara_
(Signature of Person Taking Acknowledgment)

Teresa O'Hara
MY COMMISSION # CC763555 EXPIRES
October 19, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

_____
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

** OFFICIAL RECORDS **
BK 2333  PG 2842

App No. 99-8353

EXHIBIT 'A'

* OFFICIAL RECORDS * 3of4
BK 1973  PG 1321

PARCEL 1:
Commencing at the Southwest corner of Section 36, Township 4 North, Range 25 West, same being the Northwest corner of Section 1, Township 3 North, Range 25 West, Okaloosa County, Florida; thence along the common line of said Section 36 and Section 1; run South 89 degrees 50' 42" East 1320 feet to Point of Beginning; thence continue along said Section line South 89 degrees 50' 42" East, 203.59 feet to Point of Intersection with the South right of way line of Brooks Road (80 foot wide right of way); thence departing said Section line, run along said South line of Brooks Road, North 86 degrees 30' 42" East 1118.52 feet; thence departing said South line, run South 00 degrees 01' 42" West 663.63 feet; thence North 89 degrees 54' 31" West 1321.09 feet to point on the East maintenance line of Griffith Mill Road; thence North 00 degrees 07' 56" East 594.01 feet to the Point of Beginning. Less and Except 0.03 acre (1327 square feet) of land situated in the right of way of Brooks Road and being more particularly described as:  Commencing at the above mentioned Northwest corner of Section 1, Township 3 North, Range 25 West, Okaloosa County, Florida; thence along said Section line South 89 degrees 50' 42" East, 1320 feet to the Point of Beginning; thence continue along said Section line 203.59 feet; thence departing said Section line, run South 86 degrees 30' 42" West 204.00 feet to the Point on the East maintenance line of Griffith Mill Road; thence North 00 degrees 07' 56" East 12.96 feet to Point of Beginning.

PARCEL #2:
PARCEL A:  The Northwest Quarter of the Northwest Quarter of Section 6, Township 4 North, Range 25 West, Okaloosa County, Florida, and an easement over the East 30 feet of the Southwest Quarter of the Northwest Quarter of Section 6, Township 4 North, Range 25 West, Okaloosa County, Florida.

PARCEL B:  The Southwest Quarter of the Southwest Quarter of Section 25, Township 5 North, Range 26 West, Santa Rosa County, Florida.

PARCEL #3:
PARCEL A:  Commencing at the Southwest corner of Lot 7, Block 1, Town of Baker, according to the plat on file in the Office of the Clerk of Court, Okaloosa County, Florida, for the Point of Beginning; thence Northeasterly along the West boundary line of said Block 1 to the Northwest corner of Lot 1 of said Block, thence West along the South boundary of 19th Street, 117.12 feet, more or less, to the East boundary of State Road 189, thence Southerly along the East boundary line of road 189 a distance of 350.67 feet to the North boundary of 18th Street, thence East 81.8 feet, more or less to the Point of Beginning.

PARCEL B:  50 feet East and West and 350 feet North and South lying between Block 1 and Block 25 of plat of Town of Baker, said area being formerly designated as Madison Street and the Street having been closed by appropriate action of the Board of County Commissioners of Okaloosa County, Florida, and title thereto having reverted to the grantors.
***CONTINUED***

** OFFICIAL RECORDS **
BK 2333  PG 2843

App No. 99-8353                      Exhibit "A" - CONTINUED

* OFFICIAL RECORDS * 4of4
BK 1973  PG 1322

AND

10 feet East and West and 350 feet North and South lying immediately Easterly adjacent to Lots 8 through 14, inclusive, in Block 25, of the said Town of Baker, said area being formerly designated as the West 1/2 of an alley; which was likewise duly closed by appropriate action by the Board of County Commissioners of Okaloosa County, Florida, and title having reverted back to the grantors.

Lots 1 through 7, Block 1 and Lots 8 through 14, Block 25, Town of Baker, according to the plat on file in the Office of the Clerk of Circuit Court, Okaloosa County, Florida.

PARCEL #4:
The South 1/2 of Southwest 1/4 of Section 32, Township 5 North, Range 25 West, Okaloosa County, Florida.

LESS AND EXCEPT:  Commence at the Southeast corner of Southwest 1/4 of Section 32, Township 5 North, Range 25 West, Okaloosa County, Florida, thence North 330 feet, thence West 660 feet, thence South 330 feet, thence East 660 feet to the Point of Beginning.

Page 1 of 1

FILE # 2912470 RCD: 02/26/2014 @ 08:59 AM, BK: 3137 PG: 1667 RECORDING:
$6.00 RECORDING ARTICLE V: $4.00 DEPUTY CLERK TWILCOX DON W. HOWARD,
CLERK OF COURTS, OKALOOSA COUNTY FL

When Recorded Return To:
First National Bank of Crestview
1301 Industrial Drive
Crestview, Florida 32539

### PARTIAL RELEASE OF MORTGAGE

STATE OF FLORIDA
COUNTY OF OKALOOSA

For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the undersigned, owner of a Mortgage and the indebtedness secured thereby made by Robert G. Evers and wife, Tami F. Evers, whose address is 1054 Melton Road, Baker, FL 32531 to Covington County Bank, in the original principal sum of Eighty Thousand and No/100————————($80,000.00) dollars, on the 30th day of March, 1994, and recorded on the 31st day of March, 1994, in Official Records Book 1824 at Page 1970, Okaloosa County; Cross-Collateralization Agreement dated the 30th day of March 1994 recorded in Official Records Book 1834, Page 1097, Okaloosa County; Mortgage dated the 2nd day of April 1999 recorded in Official Records Book 2221, Page 384 Okaloosa County and Official Records Book 1829, Page 453 Santa Rosa County; Assignment of Mortgage dated the 31st day of October 2001 recorded in Official Records Book 2330, Page 970, Okaloosa County and Official Records Book 1953, Page 1805, Santa Rosa County; further modified on the 11th day of December 2001 in Official Records Book 2333, Page 2840, Okaloosa County and Official Records Book 1973, Page 1319, Santa Rosa County, Public Records of Okaloosa and Santa Rosa County, Florida; and does hereby release said mortgage only insofar as same pertains to the following described property:

The Northwest 1/4 of Northwest 1/4 of Section 6, Township 4 North, Range 25 West, together with an easement 30 feet in width over and across the East 30 feet of the Southwest 1/4 of Northwest 1/4 of Section 6, Township 4 North, Range 25 West, Okaloosa County, Florida.

It is expressly understood and agreed that this release shall in no way affect the lien of the above mortgage as to the remainder of the property described therein and not heretofore released from its lien.

WITNESSED BY:                              FIRST NATIONAL BANK OF CRESTVIEW

_Rusty Huggins_                            BY: _____
Rusty Huggins                                 Dale E. Rice, Jr.
                                              Its: President/CEO

_Bobbie J. Henderson_                      Attested By: _____
Bobbie J. Henderson                                     Marlyn D. Waggy, Jr.
                                                        Its: Vice President

STATE OF FLORIDA
COUNTY OF OKALOOSA

The foregoing instrument was acknowledged before me this 24th day of February 2014 by DALE E. RICE, JR., PRESIDENT/CEO and MARLYN D. WAGGY, JR., VICE PRESIDENT of First National Bank of Crestview, a Florida Banking Corporation, on behalf of said Bank, who is personally known to me.

_Russell C. Huggins_
Notary Public
My Commission Expires: 1/10/2015

This instrument prepared by:                  Russell C. Huggins
Rusty Huggins                                 Notary Public, State of Florida
First National Bank of Crestview              My Commission Expires
1301 Industrial Drive                         January 10, 2015
Crestview, FL 32539                           Commission No. EE 54199

<u>**Composite Exhibit "E"**</u>

**The 0006 Note**

# PROMISSORY NOTE

105418

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $251,634.98 | 03-07-2014 | 03-07-2015 | 82860-00DB | 210 / 212 | 8000047B_0 | DRE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ROBERT GREGORY EVERS
P.O. BOX 9
BAKER, FL 32531

**Lender:** FIRST NATIONAL BANK OF CRESTVIEW
Main Office
1301 Industrial Drive / P.O. Box 1119
Crestview, FL 32539

**Principal Amount: $251,634.98**                                                   **Date of Note: March 7, 2014**

**PROMISE TO PAY.** ROBERT GREGORY EVERS ("Borrower") promises to pay to FIRST NATIONAL BANK OF CRESTVIEW ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Fifty-one Thousand Six Hundred Thirty-four & 98/100 Dollars ($251,634.98), together with interest on the unpaid principal balance from March 7, 2014, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.280% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $251,634.98 plus interest on March 7, 2015. This payment due on March 7, 2015, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $15.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NATIONAL BANK OF CRESTVIEW, Main Office, 1301 Industrial Drive / P.O. Box 1119, Crestview, FL 32539.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings,

# PROMISSORY NOTE
## (Continued)

| Loan No: 37859-0006 | Page 2 |
|---|---|

In accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Borrower acknowledges this Note is secured by AGRICULTURAL SECURITY AGREEMENT SECURED BY UCC-1 200500061834 AND UCC-3 #201003268992 FILED WITH THE SECRETARY OF STATE; ASSIGNMENT OF CROP INSURANCE ISSUED BY RURAL COMMUNITY INSURANCE; ASSIGNMENT OF PAYMENT FROM U.S. DEPARTMENT OF AGRICULTURE THROUGH YEAR 2016.

**PRIVACY DISCLOSURE POLICY.** First National Bank of Crestview respects the privacy of its customer's personal financial information. Please be assured that:
- We will not disclose your non-public personal information other than to non-affiliate third parties as permitted by law (for example, to reputable credit reporting bureaus).
- We only ask for information we truly need to complete a transaction or maintain a business relationship with you.

- We use this information to protect and administer your records, accounts and funds.

**Types of Information That We Collect**

First National Bank of Crestview collects non public personal information about you from the following sources:
- Information we receive from you on applications or other forms, such as: your name, address, social security number, assets and income.
- Information about your transactions with us or others, such as: your account balances, payment history, parties to transactions and credit card usage.
- Information we receive from a Consumer Reporting Agency, such as: your credit worthiness and credit history.

**Confidentiality and Security**

We restrict access to non public personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic and procedural safe-guards to guard your nonpublic personal information from improper disclosure.

**CROSS-COLLATERALIZED AND CROSS-DEFAULTED.** An exhibit, titled "CROSS-COLLATERALIZED AND CROSS-DEFAULTED," is attached to this Note and by this reference is made a part of this Note just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Note.

**PRIOR NOTE.** PROMISSORY NOTE DATED 1/20/2013 IN THE AMOUNT OF $289,880.93 IN THE NAME OF ROBERT GREGORY EVERS AND TAMI SUE FOREHAND TO FIRST NATIONAL BANK OF CRESTVIEW ON WHICH DOCUMENTARY STAMP TAXES HAVE BEEN PAID.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST NATIONAL BANK OF CRESTVIEW 1301 Industrial Drive Crestview, FL 32539.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

X _____
ROBERT GREGORY EVERS

**LENDER:**

FIRST NATIONAL BANK OF CRESTVIEW

X _____
David Epps, Jr., President

# CROSS-COLLATERALIZED AND CROSS-DEFAULTED

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| 6261,634.96 | 03·07·2014 | 03·07·2015 | 37889·0006 | 210 / 312 | E000479·0 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** ROBERT GREGORY EVERS
P.O. BOX 9
BAKER, FL 32531

**Lender:** FIRST NATIONAL BANK OF CRESTVIEW
Main Office
1301 Industrial Drive / P.O. Box 1119
Crestview, FL 32539

This CROSS-COLLATERALIZED AND CROSS-DEFAULTED is attached to and by this reference is made a part of the Promissory Note, dated March 7, 2014, and executed in connection with a loan or other financial accommodations between FIRST NATIONAL BANK OF CRESTVIEW and ROBERT GREGORY EVERS.

This loan is Cross-Collateralized and Cross-Defaulted with loan(s) CROSS COLLATERALIZED·, CROSS DEFAULTED WITH LOAN 377670005 (COMMERCIAL SECURITY AGREEMENT SECURING All farm products, including without limitation, all (1) crops grown, growing, or to be grown, including crops produced on trees, vines and bushes, and agricultural goods produced in agricultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in un-manufactured states. All equipment, accessories, fixtures, and general intangibles (including payment intangibles and software); instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods, any insurance refunds on any of the foregoing property and goods; together with all products and proceeds of any of the property or goods.  All records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media.  To include but not limited to Exhibit "A", "B", "C" and "D" attached; EVIDENCED BY UCC-1 RECORDED WITH THE SECRETARY OF STATE OF FLORIDA IN FILE #20090063912X; All equipment; together with the following specifically described property; ONE WIL-LOADER WRANGLER DIESEL LOADER SERIAL #706418; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds); EVIDENCED BY UCC-1 RECORDED IN OR BOOK 1960, PAGE 123, CONTINUED IN OR BOOK 2267, PAGE 1302, ASSIGNED IN OR BOOK 2324, PAGE 3788, RECORDS OF OKALOOSA COUNTY, FL; All equipment and crops; together with the following specifically described property:  ALL CROPS NOW GROWING OR TO BE GROWN IN THE OPERATION OF THE DEBTOR'S BUSINESS FOR THE 1999 CROP YEAR AND SUBSEQUENT YEARS (SEE EXHIBIT "A"); ALL EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED INCLUDING BUT NOT LIMITED TO EXHIBIT "B", "C" AND "D"; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is no existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever for received, including but not limited to, payments under any governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds); EVIDENCED BY UCC-1 RECORDED IN OR BOOK 2209, PAGE 2498, ASSIGNED IN OR BOOK 2324, PAGE 3787, RECORDS OF OKALOOSA COUNTY, FL; 1992 CHEVROLET TANK TRUCK VIN #1GBL7H1P7NJ101318, 1977 CHEVROLET TANK TRUCK VIN #CCE667V160488, 1990 CHEVROLET PICKUP VIN #1GCGK24K9KE272844, 1984 NISSAN PICKUP VIN #1N6ND05H9EC356681, COMMERICAL PLEGE AGREEMENT PLEDGING 37 SHARES OF COVINGTON GIN COMPANY, INC).

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN # 37789-0002 (MORTGAGE RECORDED IN OR BOOK 2211, PAGE 384, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1829, PAGE 463, RECORDS OF SANTA ROSA COUNTY, FL. MODIFICATION OF MORTGAGE RECORDED IN OR BOOK 2333, PAGE 2840, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1973, PAGE 1319, RECORDS OF SANTA ROSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1970, RECORDS OF OKALOOSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1824, PAGE 1866, RECORDS OF OKALOOSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1408, PAGE 380, RECORDS OF SANTA ROSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1824, PAGE 1700, RECORDS OF OKALOOSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1621, PAGE 1916, RECORDS OF OKALOOSA COUNTY, FL. ASSIGNMENT OF MORTGAGE RECORDED IN OR BOOK 2330, PAGE 970, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1953, PAGE 1805, RECORDS OF SANTA ROSA COUNTY, FL.  CROSS COLLATERALIZATION AGREEMENT RECORDED IN OR BOOK 1834, PAGE 1097, RECORDS OF OKALOOSA COUNTY, FL); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS.

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #38750-0001 (MORTGAGE RECORDED IN OR BOOK 2637, PAGE 37, RECORDS OF OKALOOSA COUNTY, FL); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS.

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #37844-0001 (MORTGAGE RECORDED IN OR BOOK 2343, PAGE 1927, RECORDS OF OKALOOSA COUNTY, FL); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS

UCC # 1
All farm products, including without limitation, all (1) crops grown, growing, or to be grown, including crops produced on trees, vines and bushes, and agricultural goods produced in agricultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in un-manufactured states.  All equipment, accessories, fixtures, and general intangibles (including payment intangibles and software); instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods, any insurance refunds on any of the foregoing property and goods; together with all products and proceeds of any of the property or goods.  All records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media.  To include but not limited to Exhibit "A", "B", "C" and "D" attached,

UCC #2
All equipment; together with the following specifically described property: ONE WIL-LOADER WRANGLER DIESEL LOADER SERIAL #706418; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

UCC #3
All equipment and crops; together with the following specifically described property:  ALL CROPS NOW GROWING OR TO BE GROWN IN THE OPERATION OF THE DEBTOR'S BUSINESS FOR THE 1999 CROP YEAR AND SUBSEQUENT YEARS (SEE EXHIBIT "A"); ALL EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED INCLUDING BUT NOT LIMITED TO EXHIBIT "B", "C" AND "D"; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is no existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all rights to payment, and payments, in whatever for received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

to include any future renewals or extensions

THIS CROSS-COLLATERALIZED AND CROSS-DEFAULTED IS EXECUTED ON MARCH 7, 2014.

BORROWER:

X _Robert Gregory Evers_
ROBERT GREGORY EVERS

**CROSS-COLLATERALIZED AND CROSS-DEFAULTED**

Loan No: 37859-0006

**(Continued)**

Page 2

LENDER:

FIRST NATIONAL BANK OF CRESTVIEW

Dale Gibson, Vice President

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $251,634.96 | 04-29-2015 | 12-29-2015 | 37859 0006 | 210 / 312 | E000479 0 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower: ROBERT GREGORY EVERS
P.O. BOX 9
BAKER, FL 32531

Lender: FIRST NBC BANK
Crestview Central
1301 Industrial Drive / P.O. Box 1119
Crestview, FL 32539

Principal Amount: $251,634.96

Date of Agreement: April 29, 2015

DESCRIPTION OF EXISTING INDEBTEDNESS. Original promissory note dated March 7, 2014 in the original maximum amount of $251,634.96 evidencing a single pay loan with an existing principal balance of $251,634.96.

DESCRIPTION OF COLLATERAL. UCC financing statement, Assignment of crop insurance, Possessory, Real Estate.

DESCRIPTION OF CHANGE IN TERMS. Extension of maturity date. Change interest rate from fixed at 5.25% to Variable rate of Prime plus 2% with a floor of 5.25%.

PROMISE TO PAY. ROBERT GREGORY EVERS ("Borrower") promises to pay to FIRST NBC BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Fifty-one Thousand Six Hundred Thirty-four & 96/100 Dollars ($251,634.96), together with interest on the unpaid principal balance from April 29, 2015, until paid in full.

PAYMENT. Borrower will pay this loan in one principal payment of $251,634.96 plus interest on December 29, 2015. This payment due on December 29, 2015, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the New York Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the effective rate of interest on this loan be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

PREPAYMENT; MINIMUM INTEREST CHARGE. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $15.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBC BANK, Crestview Central, 1301 Industrial Drive / P.O. Box 1119, Crestview, FL 32539.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of

# CHANGE IN TERMS AGREEMENT
## (Continued)

Page 2

Loan No: 37859-0006

the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by AGRICULTURAL SECURITY AGREEMENT SECURED BY UCC-1 200500861534 AND UCC-3 #201003288992 FILED WITH THE SECRETARY OF STATE; ASSIGNMENT OF CROP INSURANCE ISSUED BY RURAL COMMUNITY INSURANCE; ASSIGNMENT OF PAYMENT FROM U.S. DEPARTMENT OF AGRICULTURE THROUGH YEAR 2016; REAL ESTATE; POSSESSORY.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**CROSS-COLLATERALIZED AND CROSS-DEFAULTED.** An exhibit, titled "CROSS-COLLATERALIZED AND CROSS-DEFAULTED," is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**PRIOR NOTE.** PROMISSORY NOTE DATED 3/7/2014 IN THE AMOUNT OF $251,634.96 IN THE NAME OF ROBERT GREGORY EVERS AND TAMI SUE FOREHAND TO FIRST NATIONAL BANK OF CRESTVIEW ON WHICH DOCUMENTARY STAMP TAXES HAVE BEEN PAID.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: FIRST NBC BANK 1301 Industrial Drive Crestview, FL 32539.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment,

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 37869-0006                                                                                      Page 3

demand for payment, and notice of dishonor.  Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

CHANGE IN TERMS SIGNERS:

X _____
   ROBERT GREGORY EVERS

LENDER:

FIRST NBC BANK

X _____
   Dale E Reid Jr

Lasetfte, Ver. 18.1.0.013  Copr. D H Il USA Corporation 1997, 2016.  All Rights Reserved.  - FL  F:\HAN\LAI\06\CFI&P\LD L50.FC  TR-4316  PR-2

## CROSS-COLLATERALIZED AND CROSS-DEFAULTED

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $251,634.96 | 04-29-2015 | 12-29-2015 | 37859-0006 | 210 / 312 | E000479-0 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ROBERT GREGORY EVERS
P.O. BOX 9
BAKER, FL 32531

**Lender:** FIRST NBC BANK
Crestview Central
1301 Industrial Drive / P.O. Box 1119
Crestview, FL 32539

---

This CROSS-COLLATERALIZED AND CROSS-DEFAULTED is attached to and by this reference is made a part of the Change In Terms Agreement, dated April 29, 2015, and executed in connection with a loan or other financial accommodations between FIRST NBC BANK and ROBERT GREGORY EVERS.

This loan is Cross-Collateralized and Cross-Defaulted with loan(s) CROSS COLLATERALIZED-, CROSS DEFAULTED WITH LOAN 377670005 (COMMERCIAL SECURITY AGREEMENT SECURING All farm products, including without limitation, all (1) crops grown, growing, or to be grown, including crops produced on trees, vines and bushes, and agricultural goods produced in agricultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in un-manufactured states. All equipment, accessions, fixtures, and general intangibles (including payment intangibles and software); instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods, any insurance refunds on any of the foregoing property and goods; together with all products and proceeds of any of the property or goods. All records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media. To include but not limited to Exhibit "A", "B", "C" and "D" attached; EVIDENCED BY UCC-1 RECORDED WITH THE SECRETARY OF STATE OF FLORIDA IN FILE #2009006391 2X; All equipment; together with the following specifically described property: ONE WIL-LOADER WRANGLER DIESEL LOADER SERIAL #706418; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds); EVIDENCED BY UCC-1 RECORDED IN OR BOOK 1980, PAGE 123, CONTINUED IN OR BOOK 2267, PAGE 1382, ASSIGNED IN OR BOOK 2324, PAGE 3788, RECORDS OF OKALOOSA COUNTY, FL; All equipment and crops; together with the following specifically described property: ALL CROPS NOW GROWING OR TO BE GROWN IN THE OPERATION OF THE DEBTOR'S BUSINESS FOR THE 1999 CROP YEAR AND SUBSEQUENT YEARS (SEE EXHIBIT "A"); ALL EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED INCLUDING BUT NOT LIMITED TO EXHIBIT "B", "C" AND "D"; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is no existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including but not limited to; payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds); EVIDENCED BY UCC-1 RECORDED IN OR BOOK 2209, PAGE 2496, ASSIGNED IN OR BOOK 2324, PAGE 3787, RECORDS OF OKALOOSA COUNTY, FL; 1992 CHEVROLET TANK TRUCK VIN #1GBL7H1P7NJ101318, 1977 CHEVROLET TANK TRUCK VIN #CCE667V150489, 1990 CHEVROLET PICKUP VIN #1GCGK24K9KE272844, 1984 NISSAN PICKUP VIN #1N6ND05H9EC355681.

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN # 37768-0002 (MORTGAGE RECORDED IN OR BOOK 2211, PAGE 384, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1829, PAGE 453, RECORDS OF SANTA ROSA COUNTY, FL. MODIFICATION OF MORTGAGE RECORDED IN OR BOOK 2333, PAGE 2840, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1973, PAGE 1319, RECORDS OF SANTA ROSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1824, PAGE 1970, RECORDS OF OKALOOSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1824, PAGE 1955, RECORDS OF OKALOOSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1824, PAGE RECORDED IN OR BOOK 1408, PAGE 380, RECORDS OF SANTA ROSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1621, PAGE 1918, RECORDS OF OKALOOSA COUNTY, 1700, RECORDS OF OKALOOSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1621, PAGE 1918, RECORDS OF OKALOOSA COUNTY, FL. ASSIGNMENT OF MORTGAGE RECORDED IN OR BOOK 2330, PAGE 970, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1953, PAGE 1805, RECORDS OF SANTA ROSA COUNTY, FL. CROSS COLLATERALIZATION AGREEMENT RECORDED IN OR BOOK 1834, PAGE 1097, RECORDS OF OKALOOSA COUNTY, FL.); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS.

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #38750-0001 (MORTGAGE RECORDED IN OR BOOK 2537, PAGE 37, RECORDS OF OKALOOSA COUNTY, FL); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS.

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #37844-0001 (MORTGAGE RECORDED IN OR BOOK 2343, PAGE 1927, RECORDS OF OKALOOSA COUNTY, FL); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS

**UCC # 1**
All farm products, including without limitation, all (1) crops frown, growing, or to be grown, including crops produced on trees, vines and bushes, and agricultural goods produced in agricultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in un-manufactured states. All equipment, accessions, fixtures, and general intangibles (including payment intangibles and software); instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods, any insurance refunds on any of the foregoing property and goods; together with all products and proceeds of any of the property or goods. All records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media. To include but not limited to Exhibit "A", "B", "C" and "D" attached.

**UCC #2**
All equipment; together with the following specifically described property: ONE WIL-LOADER WRANGLER DIESEL LOADER SERIAL #706418; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

**UCC #3**
All equipment and crops; together with the following specifically described property: ALL CROPS NOW GROWING OR TO BE GROWN IN THE OPERATION OF THE DEBTOR'S BUSINESS FOR THE 1999 CROP YEAR AND SUBSEQUENT YEARS (SEE EXHIBIT "A"); ALL EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED INCLUDING BUT NOT LIMITED TO EXHIBIT "B", "C" AND "D"; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is no existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever for received, including but

## CROSS-COLLATERALIZED AND CROSS-DEFAULTED
### (Continued)

Loan No: 37859-0006                                                                    Page 2

not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #401080001
845.71 Shares of Covington Gin Company, Inc. Stock, Cusip No. 1700

to include any future renewals or extensions

THIS CROSS-COLLATERALIZED AND CROSS-DEFAULTED IS EXECUTED ON APRIL 29, 2015.

CHANGE IN TERMS SIGNERS:

X _Robert Gregory Evers_____
     ROBERT GREGORY EVERS

LENDER:

FIRST NBC BANK

X _____
     Dale E. Rice, Jr

LaserPro, Ver. 15.1.0.003  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - FL  F:\HANLA\G0\CFI\LPL\D20C.FC  TR-4535  PR-2

*52169378*

*00000037850000B%EAB3176%0960%01092017%261197847*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $236,244.00 | 01-09-2017 | 03-27-2017 | 378590008 | 4A7 / 008 | EAB3176 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

**Borrower:** ROBERT G EVERS
6847 HIGHWAY 189 N
BAKER, FL 32531

**Lender:** FIRST NBC BANK
CENTRAL OFFICE
1301 Industrial Drive
Crestview, FL 32639

**Principal Amount: $236,244.00**                    **Date of Agreement: January 9, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** ORIGINAL PROMISSORY NOTE DATED MARCH 7, 2014, IN THE ORIGINAL MAXIMUM PRINCIPAL AMOUNT OF $251,634.96, EVIDENCING A SINGLE PAY LOAN WITH AN EXISTING PRINCIPAL BALANCE OF $236,244.00, ON WHICH ALL DOCUMENTARY STAMP TAXES HAVE BEEN PAID.

**DESCRIPTION OF COLLATERAL.** UCC, AND ASSIGNMENT OF CROP INSURANCE.

**DESCRIPTION OF CHANGE IN TERMS.** EXTENSION OF MATURITY DATE. ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of $236,244.00 plus interest on March 27, 2017. This payment due on March 27, 2017, will be for all principal and all accrued interest not yet paid.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.750% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.760% per annum based on a year of 360 days. NOTICE: Under no circumstances will the effective rate of interest on this loan be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

CHANGE IN TERMS SIGNERS:

x _Robert G. Evers_
ROBERT G EVERS

LENDER:

FIRST NBC BANK

x _____
Dale Rice, Loan Officer

LaserPro, Ver. 15.4.10.004  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - FL  C:\CFI\LOAN\CFI\LPL\D30C.FC  TR-51305  PR-15

*Branch 55*

*0000003765000006%EAB3176%0060%042820177%281197847*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $236,244.00 | 04-26-2017 | 04-26-2019 | 3765000006 | 4A / 008 | EAB3176 | BRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** ROBERT GREGORY EVERS
6847 HIGHWAY 199 N
BAKER, FL 32631

**Lender:** FIRST NBG BANK
CENTRAL OFFICE
1301 Industrial Drive
Crestview, FL 32539

**Principal Amount: $236,244.00**                                    **Date of Agreement: April 26, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** ORIGINAL PROMISSORY NOTE DATED MARCH 7, 2014, IN THE ORIGINAL MAXIMUM PRINCIPAL AMOUNT OF $251,054.06 EVIDENCING A SINGLE PAY OUT LOAN WITH AN EXISTING PRINCIPAL BALANCE OF $236,244.00, ON WHICH ALL DOCUMENTARY STAMP TAXES HAVE BEEN PAID.

**DESCRIPTION OF COLLATERAL.** UCC AND ASSIGNMENT OF CROP INSURANCE.

**DESCRIPTION OF CHANGE IN TERMS.** (1) LOAN STRUCTURE CHANGED FROM SINGLE PAY TO TWO YEAR BALLOON WITH 15 YEAR AMORTIZATION, MONTHLY PRINCIPAL AND INTEREST PAYMENTS AS DESCRIBED IN BELOW "PAYMENT" PARAGRAPH (2) INTEREST RATE CHANGED FROM WSJ PRIME PLUS 2.00% VARIABLE WITH A FLOOR OF 6.25% TO 6.00% FIXED (3) EXTENSION OF MATURITY DATE. ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME .

**PROMISE TO PAY.** ROBERT GREGORY EVERS ("Borrower") promises to pay to FIRST NBG BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thirty-six Thousand Two Hundred Forty-four & 00/100 Dollars ($236,244.00), together with interest on the unpaid principal balance from April 26, 2017, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 23 regular payments of $2,004.62 each and one irregular last payment estimated at $217,707.42. Borrower's first payment is due May 26, 2017, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 26, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; then to any unpaid collection costs; and then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Central Time, Lender will credit Borrower's payment on the next business day.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBG BANK, CENTRAL OFFICE, 1301 Industrial Drive, Crestview, FL 32539.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 378590006                                                                                      Page 2

Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Collateral securing other loans with Lender may also secure this loan. To the extent collateral previously has been given to Lender by any person which may secure this indebtedness, whether directly or indirectly, it is specifically agreed that, to the extent prohibited by law, all such collateral consisting of household goods will not secure this indebtedness. In addition, if any collateral requires the giving of a right of rescission under Truth in Lending for this indebtedness, such collateral also will not secure this indebtedness unless and until all required notices of that right have been given.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**COVENANTS.** Borrower to provide quarterly updates on total operations including quarterly profit and loss .

**FINANCIAL REPORTING.** Annual financial statements and tax returns on borrower.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of this Agreement. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to here as 'charge or collect'), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____
ROBERT GREGORY EVERS

LENDER:

FIRST NBC BANK

X _____
Dale Rice, Loan Officer

### ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of
SBN V FNBC LLC
Without Recourse

that certain Promissory Note dated March 7, 2014 in the original principal amount of
$251,634.96, executed by Robert Gregory Evers made to First National Bank of Crestview
as the same may have been renewed, assigned, amended, supplemented, restated or
modified.

Effective as of October 18, 2017.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for FIRST NBC BANK, New Orleans, Louisiana

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

## Composite Exhibit "F"

**The Financing Statements**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

FIRST NATIONAL BANK OF CRESTVIEW
Attn: Loan Administration
302 North Wilson Street
Crestview, FL 32536

FLORIDA SECURED TRANSACTION REGISTRY

# FILED
2004 Jun 17 AM 12:00
****** 200407193780 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| EVERS | ROBERT | G | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 9 | BAKER | FL | 32531 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Individual | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |  ☒ NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| EVERS | TAMI | F | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 9 | BAKER | FL | 32531 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION Individual | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |  ☒ NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FIRST NATIONAL BANK OF CRESTVIEW | | | | |
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 1119 | Crestview | FL | 32536 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All farm products, including without limitation, all (1) crops grown, growing, or to be grown, including crops produced on trees, vines and bushes, and aquacultural goods produced in aquacultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in unmanufactured states. All equipment, accessions, fixtures, and general intangibles (including payment intangibles and software); instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods, any insurance refunds on any of the foregoing property and goods; together with all products and proceeds of any of the property or goods. All records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media. EXHIBIT "A", "B", "C" AND "D" ATTACHED.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
ALL DOCUMENTARY STAMPS DUE AND PAYABLE OR TO BECOME DUE AND PAYABLE HAVE BEEN PAID

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME **EVERS** | FIRST NAME **ROBERT** | MIDDLE NAME, SUFFIX **G** |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any  □ NONE |

12. □ ADDITIONAL SECURED PARTY'S or □ ASSIGNOR S/P'S NAME - Insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a ☒ fixture filing.

14. Description of real estate:
**EXHIBIT "A" ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF**

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a □ Trust or □ Trustee acting with respect to property held in trust   or □ Decedent's Estate

18. Check only if applicable and check only one box.
□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction - effective 30 years
□ Filed in connection with a Public-Finance Transaction - effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

# ROBERT G. EVERS
## UCC-1
## EXHIBIT "A"

**OKALOOSA COUNTY, FLORIDA**

All crops growing or to be grown in 2008 crop year as follows:

Dorothy Ensor, ASCS #1113, Section 8, T4N, R25W, 44 Acres Cotton, 25 Acres Peanuts

Jim Courtney, ASCS #778, Section 21, T4N,R25W, 26 Acres Cotton, 22 Acres Peanuts

Ruby Carr, ASCS #227, Section 20&29,T4N,R25W, 143 Acres Cotton, 28 Acres Peanuts

Ft. Daniels, ASCS #1654 Section S7,T4N,R25W, 21.5 Acres Peanuts

Hot House ASCS #1654, Section 6,T4N,R25W, 34 Acres Cotton

Edward Davis, ASCS #147 Section 20, T4N,R25W, 19.5 Acres Cotton

Dewitt Steele, ASCS #1035, Section 10&11,T3N,R25W, 265 Acres Cotton, 32 Acres Peanuts, 20 Acres Corn

James Adams, ASCS #1531, Section 23,T3N,R25W, 33 Acres Peanuts

Woodrow Wilkerson, ASCS #725, Section 10,T3N,R25W, 8 Acres Cotton

Stephen Bass, ASCS #97, Section 13,T3N,R25W, 38 Acres Corn

Carolyn Boyett, ASCS#1654, Section 25,T5N,R24W, 35 Acres Cotton, 35 Acres Peanuts

Coy Sasser, ASCS #474, Section 13,T3N,R25W, 26 Acres Cotton

Clinton Sasser, ASCS #474, Section 14,T3N,R25W, 25 Acres Cotton

Joyce Blalock, ASCS#49, Section 13,T3N,R25W, 29 Acres Cotton

James Adams Johnson, ASCS#1531, Section21,T3N,R25W, 45 Acres Cotton, 45 Acres Peanuts

David William, ASCS#697, Section 27,T3N,R25W, 14.5 Acres Cotton

Leon Johns, ASCS#368, Section 33,T3N,R25W, 9 Acres Cotton

Bill Bradshaw, ASCS#381, Section 381,T2N,R25W, 23 Acres Cotton

Bryan Adams, ASCS#618, Section 21, T3N,R25W, 12.5 Acres Cotton

## BAKER FARM CENTER
## UCC-1
## EXHIBIT "B"

1982 Chevy C70 Spreader Truck with stainless steel body VIN #1GBLDIE7CB109156

1977 Chevy c65 Spreader Truck with new leader body VIN #CCE667V150489

300 Gal. 16 Row Canaan Sprayer – No Serial #

1987 Case 450C Dozier Serial #3078729

1990 Chevy 2500 Series Pick-up VIN #1GCGK24K9KE272844

1992 Pull Type Spreader (big) Serial #92DFI00471-DS

1993 Pull Type Spreader (little) Serial #93DFI00817-PDS

1995 Willmar Wrangler Loader Serial #706418

Case 1845C Loader Serial #JAF0068670

Datson Fork Lift 3000 Model #F01 Type G

Killebrew Model #KSDT-O Serial #76383

Killebrew Model #NKSDT-R Serial #77913

3 Motor Roller Radio System & 1 Walkie Talkie

Snapper Series 11 Riding Lawn Mower- no serial #

1992 Kodiak Spreader Truck Vin #1GBL7H1P7NJ101318

1994 Adams Blender

# GREG EVERS' FARM
## UCC-1
## EXHIBIT "C"

1984 Nissan Pick-up VIN #1N6NDO5H9EC355681

1992 3255 John Deere Tractor Serial #768907

1992 825 Row Cultivator with under row spray Serial #013471

KMC Rotary Tiller Serial #76-231

200 Gal Canaan Sprayer 12 row NO Serial #

Gleamer F# Combine with corn header & 13 ft. flex header Serial #F-K50058V-83

Corn Header MD 436A Serial #7206

Forest City Do All Serial #8710

Rhino Blade Swing & Title Hyd. Serial #2652

8204 Harrel Switch Plow Serial #BP-12922403

84-003-28 Harrel Rake for Switch Plow NO Serial #

16-Row Van Sprayer

13'3 pt Field Cultivator Serial #0002597

KBH (Mule Boy) Cotton Cart

Case Front End Loader No Serial #

King 11 Shank Chisel Plow Serial #A1281

Trufline 10 foot disc Serial #W13

JD 4240 Tractor with radio, air, cab & dual Serial #6466DR-0103-7764RC

1986 Model Hustler 2000 Express Peanut Picker Serial #0JR042-1

Pittsburgh 4 row cultivator NO Serial #

Ferguson 4 Bottom Plow Serial #349028772

## PAGE 2... GREG EVERS' FARM

Allis Chalmer Disc Harrow NO Serial #

38 Foot Grain Trailer tandem with grain bodies NO Serial #

1997 K2500 GMC ¾ Ton Pick-up VIN #1GTGK24R0V2518609

KBH 1992 Automatic Module Builder Serial #CH00373

Allis Chalmer 4 Row Cultivator NO Serial #

Bush Hog Lift Type disc barrow Serial #11030

Lillison Rolling Cultivator Serial #2098772

140-5 Ford Bottom Plow New Wings

Paulk Ripper Spider-471 JD Planter- NO Serial #

Unverferth 3 pt. 8 shank ripper stripper #RS8005G, Serial #A40830110

2-40 ton bin, 1-125 ton bins & transport auger 32 ft.

MG Dickey under row spray rig Serial #36-2537

Brown easy haul trailer Serial #1219

KMC Ripper Spider with planter & insecticide hopper Serial #26209

Wert blade front end Model #273, Serial #622

Amadis 4-Row Peanut Picker

1000 gal. Canaan water wagon with pump, NO Serial #

JD 825 Cultivator Serial #X014193

JD 630 Harrow Disc Serial #X010098

Rhino Rotary Cutter

4-Row KMC Inverter

Ferguson 510 Combine 15 ft ridge grain head Serial #24579

## Page 3….Greg Evers' Farm

Model 44 Ferguson corn head NO Serial #

JD 4-Row crop header NO Serial #

7 ft. Cutter with dual tail wheels Model #WARRIOR 7L, Serial #0125

JD 845 Cultivator Serial #X005649

2-JD 4 Row Cotton Picker Serial #X005184 & X005199

Module Builder

JD 7200 4-row planter Serial #A105690

KMC Ripper 8-row hyd folw with hyd row marker Serial #051691

JD 7300 8-row planter Serial #B660231

KMC 8-row bed leveler inc. Serial #52544

JD 4760 tractor Serial #P006175

JD 7800 tractor with 4 remote & quick coupler Serial #HO12927

JD 845 Cultivator Serial #X005596

RS8005G 3pt. 8 shank ripper stripper subsoiler ser. #A40830110

# AKERS OF STRAWBERRIES
## UCC-1
## EXHIBIT "D"

Kennco Bed press plastic mulch machine with gas attachments Serial #92377

Kennco hole puncher Serial #92-379

Two Head yogurt maching Model #2131-380, Serial #3335-02MI

Single head yogurt machine Model #2111-38A, Serial #2429-03J-C

Durand Waylon 100 gal. blower/sprayer model #AF100-32, Serial #13241

Weight scale Model #SL22H, Serial #SL-200-30-CO-US

Shielded row sprayer NO Serial #

PTO Irrigation Pump

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM

FLORIDA SECURED TRANSACTION REGISTRY

# FILED

2009 Jun 04 08:00 AM

****** 20090063912X ******

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Bobbie Henderson  850-682-5111

B. SEND ACKNOWLEDGEMENT TO:
Name   First National Bank of Crestview
Address   P O Box 1119
Address   Crestview, FL
City/State/Zip   32536

1a. INITIAL FINANCING STATEMENT FILE #   200407193780

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

## 2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Evers | Robert | G | |

## 3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| First National Bank of Crestview | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

4. ☐ **TERMINATION**: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☑ **CONTINUATION**: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

7. ☐ **AMENDMENT (PARTY INFORMATION)**: This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

## 8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

| 8a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

## 9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 9c. MAILING ADDRESS Line One | | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

| 9d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID# ☐ NONE |
|---|---|---|---|---|

## 10. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

## 11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| First National Bank of Crestview | | | |
| 11b. INDIVIDUALS' LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

12. OPTIONAL FILER REFERENCE DATA   37767-0002

STANDARD FORM - FORM UCC-3  (REV.01/2009)          Filing Office Copy          Approved by the Secretary of State, State of Florida

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Bobbie Henderson 850-682-5111

Email Address bhenderson@fnbcrestview.com

**B. SEND ACKNOWLEDGEMENT TO:**
Name   First National Bank of Crestview

Address  PO Box 1119

Address

City/State/Zip Crestview, FL 32536

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

2014 Jun 05 08:00 AM

****** 201401551864 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 200407193780 | 1b. ☐ | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|

**2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| EVERS | ROBERT | G | |

**3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME
FIRST NATIONAL BANK OF CRESTVIEW

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**4. ☐ TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5. ■ CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6. ☐ ASSIGNMENT** ☐ Full or ☐ Partial: Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7. ☐ AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.
☐ **ADD** name: Complete item 9a or 9b, and 9c.

**8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names**

8a. ORGANIZATION'S NAME

| 8b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names**

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

9c. MAILING ADDRESS Line One                                  This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ DELETE or ☐ ADD, or give entire ☐ RESTATE collateral description, or describe collateral     ☐ ASSIGN collateral

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME
FIRST NATIONAL BANK OF CRESTVIEW

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

██████████████
████████████████████   ▪  ▪ ▪
█████████████████

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO:**  (Name and Address)

⌐ 1400 94345
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
                    Filed in: Florida
                         (S.O.S.)  ⌐

FLORIDA SECURED TRANSACTION REGISTRY

# FILED
2017 Dec 15 10:46 AM
****** 201703538410 ******

H

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 200407193780 06/17/2004 | (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

**2. ☐ TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3. ☑ ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4. ☐ CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. ☐ PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND    Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | First National Bank of Crestview | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | SBN V FNBC LLC | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1700 Lincoln Street, Suite 2150 | Denver | CO | 80203 | USA |

**8. ☐ COLLATERAL CHANGE:**  Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | First National Bank of Crestview | | |
|---|---|---|---|
| OR | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:Robert G Evers

1400 94345

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE
FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE OF CONTACT PERSON
ANNIE HARRISON 850-682-5111

B. SEND ACKNOWLEDGMENT TO:

Name      FIRST NATIONAL BANK OF CRESTVIEW

Address   Loan Admin

Address   302 North Wilson Street

City/State/Zip  Crestview, FL  32636

FLORIDA SECURED TRANSACTION REGISTRY

# FILED

2005 Oct 06 AM 12:00

\*\*\*\*\*\* 200500861534 \*\*\*\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| EVERS | ROBERT | GREGORY | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 9 | BAKER | FL | 32531 | USA |
| REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Individual | 1f. JURISDICTION OF ORGANIZATION | | 1g. ORGANIZATIONAL ID #, ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| EVERS | TAMI | F | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 9 | BAKER | FL | 32531 | USA |
| REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION Individual | 2f. JURISDICTION OF ORGANIZATION | | 2g. ORGANIZATIONAL ID #, ☒ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME FIRST NATIONAL BANK OF CRESTVIEW | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS P.O. Box 1119, 302 N. Wilson St | CITY Crestview | STATE FL | POSTAL CODE 32536 | COUNTRY |

**4. This FINANCING STATEMENT** covers the following collateral:
All Crops and Farm Equipment; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever form received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds). The above–described crops are growing or are to be grown on the real estate described below in this UCC Financing Statement.

**5. ALTERNATE DESIGNATION (if applicable)**    ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR
                                              ☐ AG. LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX
☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**   37859-0004

STANDARD FORM – FORM UCC-1 (REV.12/2001)                    Filing Office Copy

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE**
**FINANCING STATEMENT FORM – ADDENDUM**

**8. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

8a. ORGANIZATION'S NAME

| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| EVERS | ROBERT | GREGORY | |

9. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (10a OR 10b) – Do Not Abbreviate or Combine Names**

10a. ORGANIZATION'S NAME

| 10b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 10d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 10e. TYPE OF ORGANIZATION | 10f. JURISDICTION OF ORGANIZATION | 10g. ORGANIZATIONAL ID#, □ NONE |
|---|---|---|---|---|
| | | | | |

**11. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY NAME (11a OR 11b)**

11a. ORGANIZATION'S NAME
FIRST NATIONAL BANK OF CRESTVIEW

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 1119, 302 N. Wilson St | Crestview | FL | 32536 | |

12. This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a □ fixture filing.

13. Description of real estate:
EXHIBIT "A" & "B"

14. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

15. Additional collateral description:

16. Check only if applicable and check only one box.
Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

17. Check only if applicable and check only one box.
□ Debtor is TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction – effective 30 years
□ Filed in connection with a Public-Finance Transaction – effective 30 years

STANDARD FORM – FORM UCC-1 ADDENDUM (REV.12/2001)        Filing Office Copy

## EXHIBIT A TO SECURITY AGREEMENT AND UCC-1 FINANCING STATEMENT

ALL OF THE ASSETS OF ROBERT G. (GREG) EVERS and TAMI F. EVERS (the individual Makers), INCLUDING (but not limited to):

(A)  Tangible collateral:  All of the Makers' business (but not consumer) goods presently owned or hereafter acquired (**excluding motor vehicles**), whether or not constituting fixtures, and all replacements, substitutions, additions, and accessions thereto, including, without limitation, all inventory, equipment, machinery, hand tools, leasehold improvements, all records, office equipment and furniture and furnishings; all development rights, air rights, water and water rights, and all estates, rights, titles, interest, privileges, tenements, hereditaments and appurtenances belonging or relating to any lands within the State of Florida, and all reversions, remainders, rents, issues, profits, and all rights, whether arising in law or equity (including any all recoveries in condemnation or inverse condemnation); all present and future structures, building, and improvements, including (but not limited to) all apparatus, equipment and appliances used in connection with the lands and improvements, including heating and AC, sewage disposal, refrigeration, utility, and other systems and facilities on the lands; all machinery, furniture, fittings, apparatus, equipment and other personal property located upon or under the lands and used in connection with the past, present, or future operation of any business on the lands; all materials and supplies delivered to the Makers or used or to be used on construction of any improvements on any lands owned by any Maker; all trade (non-domestic) fixtures, appurtenances, or personal property (whether intended to be affixed to the real property or not), including all other tangible personal property of every kind and description appertaining to the Makers' business; and all crops raised (including, but not limited to, cotton, peanuts, and corn) on any lands within Okaloosa County, Florida, now or in the future, and in particular all crops on Farm or farm numbers shown on the attached exhibit;

(B)  Intangible collateral:  All of the Makers' accounts, contract rights and general intangibles, now owned or existing or hereafter contracted for or accruing, arising or acquired, and including any interest of any individual Maker in any monies, accounts, obligations or debts owed to any individual Maker by any corporate Maker, and including any interest of the corporate Maker in any monies, accounts, obligations or debts owed to corporate Maker by any individual Maker; all interest of any individual Maker in any ownership of any corporate stock in any corporate Maker; all license rights relating or appurtenant to, or used with respect to, any lands owned by the Makers; all rents, profits, proceeds and income from any lands or crops owned by Makers, including (but not limited to) all rights under past, present or future leases or rental agreements (including deposits); all proceeds and claims from any of the collateral acting as security; all general intangibles relating to the development, farming, sale, or use of any lands owned by Makers, including, but not limited to, all contract rights and all governmental permits (or legal or equitable rights to permits) for activities on or use of the lands; all rights to carry on business under the names currently in use or in use in the future; all crop allotments and entitlements of any kind; and all rights to or proceeds of any lease or contract for sale or use of lands or for construction of improvements thereon (including retainages); all cash or bank deposits now existing or hereafter accruing; all crop insurance; all crop sales proceeds and products; all governmental crop assistance, allotments, or other payments of any kind (including, but not limited to, all direct payments, counter-cyclical payments, loan deficiency payments, or disaster payments or loans);

(C)  Proceeds: Replacements, substitutions, accumulations, products, proceeds and profits (including those arising from any insurance or tort or contract claims with respect to the above) of the property described in (A) or (B).

As used above, "accounts" shall include, but not be limited to, all accounts and accounts receivable, whether or not earned by performance, all sums of money or other proceeds due or becoming due, all instruments pertaining thereto, all guarantees and security therefor, and all tax refunds or overpayments of any kind. As used above, "contract rights" shall include, but not be limited to, contracts and other rights of Makers, all rights of the Makers to damages or to the payment of money, all leases, and all franchises, permits, licenses and other governmental or private authorizations or rights of the Makers with respect to their business activities wheresoever located. As used above, "general intangibles" shall include, but not be limited to, all bills of sale and instruments of conveyance, bills of lading, dock warrants, dock receipts, warehouse receipts and other documents of title, chattel paper, instruments, notes, policies and certificates of insurance, unearned insurance premiums, securities, deposits, cash, trade names, copyrights, service marks, trade marks, and all other general intangibles of every kind and description. As used herein, "inventory" shall include, but not be limited to, all inventory and other goods of the Makers held or intended for sale or lease or to be furnished under contracts for services, and all raw materials, work in progress, finished goods, goods returned by customers, and materials and supplies of every kind and returned by customers, and materials and supplies of every kind and description. As used herein, "records" shall include, but not be limited to, all blueprints, plans, customer lists and files, computer programs and files, software and all other records and writings pertaining to the business, properties or affairs of the Makers, of every kind and description.

1

EXHIBIT "B"

## ATTACHEMENT FOR
## ROBERT G. EVERS
## UCC 1

## OKALOOSA COUNTY, FLORIDA

**All crops growing or to be grown on the following properties:**

Dorothy Ensor ASCS # 1113, Section 8, T4N, R25W, 19.4 Acres Cotton, 49 Acres Peanuts

Jim Courntey, ASCS # 778, Section 21, T4N, R25W, 21 Acres Cotton, 24.2 Acres Peanuts

Ruby Carr, ASCS # 227, Section 20& 29, T4N, R25W, 114.4 Acres Cotton, 58.4 Acres Peanuts

Ft. Daniels, ASCS # 1654, Section S7, T4N, R25W, 21 Acres Cotton

Hot House ASCS # 1654, Section 6, T4N, R25W, 34 Acres Cotton

Edward Davis, ASCS # 147, Section 20, T4N, R25W, 10 Acres Cotton

Dwitt Steele, ASCS # 1035, Section 10 & 11, T3N, R25W, 223.7 Acres Cotton, 40 Acres Peanuts, 25 Acres Corn

James Adam Lighthouse, ASCS # 1531, Section 23, T3N, R25W, 30.2 Acres Cotton

Woodrow Wilkerson, ASCS # 725, Section 10, T3N, R25W, O Acres Corn

Stephen Bass, ASCS # 97, Section 12, T3N, R25W, 40.5 Acres Peanuts

Carolyn Boyette,  ASCS # 1654, Section 25, T5N, R24W, 68 Acres Cotton

Coy Sasser, ASCS # 474, Section 13, T3N, R25W, 26 Acres Peanuts

Clinton Sasser, ASCS # 474, Section 14, T3N, R25W, 18.5 Acres Peanuts

Joyce Blalock, ASCS # 49, Section 13, T3N, R25W, 24.8 Acres Peanuts

David William, ASCS # 697, Section 27, T3N, R25W, 12.7 Acres Peanuts, 7 Acres Corn

Leon Johns, ASCS # 368, Section 33, T3N, R25W, 9.7 Acres Peanuts

Bill Bradshaw, ASCS # 381, Section 381, T2N, R25W, 14.3 Acres Peanuts

Bryan Adams, ASCS #618, Section 21, T3N, R25W, 9.4 Acres Peanuts

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE
# FINANCING STATEMENT AMENDMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Bobbie Henderson      850-682-5111

**B. SEND ACKNOWLEDGEMENT TO:**
Name  First National Bank of Crestview

Address  PO Box 1119

Address

City/State/Zip  Crestview, Florida 32536

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED
2010 Sep 27 08:00 AM
****** 201003268992 ******

**1a. INITIAL FINANCING STATEMENT FILE #**
200500861534     1b.     (for record (or recorded) in the REAL ESTATE RECORDS.)

**2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME  Evers | FIRST NAME  Robert | MIDDLE NAME  Gregory | SUFFIX |

**3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME  First National Bank of Crestview | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor **or** ☐ Secured Party of record. Check only **one** of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.
☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names**

| 8a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names**

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| 9c. MAILING ADDRESS Line One | | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| 9d. TAX ID# | 9e. REQUIRED ADD'L INFO RE; ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID#  NONE |

**10. AMENDMENT (COLLATERAL CHANGE):** check only **one** box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME  First National Bank of Crestview | | | |
|---|---|---|---|
| 11b. INDIVIDUALS' LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.01/2009)          Filing Office Copy          Approved by the Secretary of State, State of Florida

FINANCING STATEMENT AMENDMENT FORM

**FILED**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
INEZ THIBODEAUX, 5046713424
Email ITHIBODEAUX@FIRSTNBCBANK.COM

B. SEND ACKNOWLEDGEMENT TO:

2015 Sep 25 02:06 PM

\*\*\*\*\*\* 201505123834 \*\*\*\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 200500861534 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| EVERS | TAMI | F | |

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIRST NATIONAL BANK OF CRESTVIEW | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

4. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

7. ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.
☐ **ADD** name: Complete item 9a or 9b, and item 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

| 8a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 9c. MAILING ADDRESS Line One | | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**
(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIRST NATIONAL BANK OF CRESTVIEW | | | |
| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**12. OPTIONAL FILER REFERENCE DATA   Key 43590**

STANDARD FORM - FORM UCC-3 (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

1400 94149
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
Filed in: Florida
(S.O.S.)

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

**2017 Dec 15 10:46 AM**

****** 201703538402 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
200500861534 10/06/2005

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c

☐ ADD name: Complete item 7a or 7b, and item 7c

☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** First National Bank of Crestview

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME** SBN V FNBC LLC

OR

**7b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)**                SUFFIX

| 7c. MAILING ADDRESS 1700 Lincoln Street, Suite 2150 | CITY Denver | STATE CO | POSTAL CODE 80203 | COUNTRY USA |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** First National Bank of Crestview

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:Robert Gregory Evers          1400 94149

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd., Ste. 400
Wilmington, DE 19808

<u>**Composite Exhibit "G"**</u>

**The 80001 Note**

## PROMISSORY NOTE

105598

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $320,000.00 | | | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

| Borrower: | ROBERT GREGORY EVERS<br>P.O. BOX 9<br>BAKER, FL 32631 | Lender: | FIRST NBC BANK<br>Crestview Central<br>1301 Industrial Drive / P.O. Box 1119<br>Crestview, FL 32539 |
|---|---|---|---|

*Revised 2nd page*

**Principal Amount: $320,000.00**                                          **Date of Note: April 29, 2016**

**PROMISE TO PAY.** ROBERT GREGORY EVERS ("Borrower") promises to pay to FIRST NBC BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Twenty Thousand & 00/100 Dollars ($320,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 20, 2016. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the New York Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the effective rate of interest on this Note be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $15.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBC BANK, Crestview Central, 1301 Industrial Drive / P.O. Box 1119, Crestview, FL 32539.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or

Loan No: 40108-0001 PROMISSORY NOTE (Continued) Page 2

preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

GARNISHMENT. Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

COLLATERAL. Borrower acknowledges this Note is secured by 846.71 Shares of Covington Gin Company, Inc. Stock NUMBER 1700, issued to Robert Evers dated May 1, 2014, UCC, & REAL ESTATE.

LINE OF CREDIT. This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

PRIVACY DISCLOSURE POLICY. First NBC Bank respects the privacy of its customer's personal financial information. Please be assured that:

- We will not disclose your non-public personal information other than to non-affiliate third parties as permitted by law(for example, to reputable credit reporting bureaus).
- We only ask for information we truly need to complete a transaction or maintain a business relationship with you.
- We use this information to protect and administer your records, accounts and funds.

Types of Information That We Collect

First NBC Bank collects non public personal information about you from the following sources:

- Information we receive from you on applications or other forms, such as: your name, address, social security number, assets and income.
- Information about your transactions with us or others, such as: your account balances, payment history, parties to transactions and credit card usage.
- Information we receive from a Consumer Reporting Agency, such as: your credit worthiness and credit history.

Confidentiality and Security

We restrict access to non public personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic and procedural safe-guards to guard your nonpublic personal information from improper disclosure.

ADDITIONAL LOAN COVENANT. Borrower to give written notification for each draw request covering the amount of the request and what the funds will be used for the the Operations. Bank to approve each draw prior to releasing funds in the line.

CROSS-COLLATERALIZED AND CROSS-DEFAULTED. An exhibit, titled "CROSS-COLLATERALIZED AND CROSS-DEFAULTED," is attached to this Note and by this reference is made a part of this Note just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Note.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST NBC BANK 1301 Industrial Drive Crestview, FL 32539.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x [signature] ____________________
ROBERT GREGORY EVERS

LENDER:

FIRST NBC BANK

x [signature] ____________________
Dale D. Nola, Jr

[illegible]

FL DOC Stamp Tax Paid $1,120.00

## CROSS-COLLATERALIZED AND CROSS-DEFAULTED

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $320,000.00 | 04-29-2015 | 12-29-2015 | 40108-0001 | 220 / 22 | E000479 0 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | ROBERT GREGORY EVERS | Lender: | FIRST NBC BANK |
| | P.O. BOX 9 | | Crestview Central |
| | BAKER, FL 32531 | | 1301 Industrial Drive / P.O. Box 1119 |
| | | | Crestview, FL 32539 |

This CROSS-COLLATERALIZED AND CROSS-DEFAULTED is attached to and by this reference is made a part of the Promissory Note, dated April 29, 2015, and executed in connection with a loan or other financial accommodations between FIRST NBC BANK and ROBERT GREGORY EVERS.

This loan is Cross-Collateralized and Cross-Defaulted with loan(s) CROSS COLLATERALIZED-, CROSS DEFAULTED WITH LOAN 377670005 (COMMERCIAL SECURITY AGREEMENT SECURING All farm products, including without limitation, all (1) crops grown, growing, or to be grown, including crops produced on trees, vines and bushes, and agricultural goods produced in agricultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in un-manufactured states. All equipment, accessions, fixtures, and general intangibles (including payment intangibles and software); Instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods; together with all products and proceeds of any of the property and goods. All records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media. To include but not limited to Exhibit "A", "B", "C" and "D" attached; EVIDENCED BY UCC-1 RECORDED WITH THE SECRETARY OF STATE OF FLORIDA IN FILE #200900063913 12X; All equipment; together with the following specifically described property: ONE WIL-LOADER WRANGLER DIESEL LOADER SERIAL #706418; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds; EVIDENCED BY UCC-1 RECORDED IN OR BOOK 1960, PAGE 123, CONTINUED IN OR BOOK 2257, PAGE 1382, ASSIGNED IN OR BOOK 2324, PAGE 3788, RECORDS OF OKALOOSA COUNTY, FL; All equipment and crops; together with the following specifically described property:  ALL CROPS NOW GROWING OR TO BE GROWN IN THE OPERATION OF THE DEBTOR'S BUSINESS FOR THE 1999 CROP YEAR AND SUBSEQUENT YEARS (SEE EXHIBIT "A"); ALL EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED INCLUDING BUT NOT LIMITED TO EXHIBIT "B", "C" and "D"; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is no existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever for received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds); EVIDENCED BY UCC-1 RECORDED IN OR BOOK 2200, PAGE 2496, ASSIGNED IN OR BOOK 2324, PAGE 3787, RECORDS OF OKALOOSA COUNTY, FL; 1992 CHEVROLET TANK TRUCK VIN #1GBL7H1P7NJ101318, 1977 CHEVROLET TANK TRUCK VIN #CCE657V160489, 1990 CHEVROLET PICKUP VIN #1GCGK24K9KE272844, 1984 NISSAN PICKUP VIN #1N6ND06H9EC255681

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN # 37768-0002 (MORTGAGE RECORDED IN OR BOOK 2211, PAGE 384, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1939, PAGE 463, RECORDS OF SANTA ROSA COUNTY, FL. MODIFICATION OF MORTGAGE RECORDED IN OR BOOK 2333, PAGE 2840, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1973, PAGE 1319, RECORDS OF SANTA ROSA COUNTY, FL. MORTGAGE RECORDED IN OR BOOK 1824, PAGE 1970, RECORDS OF OKALOOSA COUNTY, FL.  MORTGAGE RECORDED IN OR BOOK 1824, PAGE 1955, RECORDS OF OKALOOSA COUNTY, FL.  MORTGAGE RECORDED IN OR BOOK 1408, PAGE 380, RECORDS OF SANTA ROSA COUNTY, FL.  MORTGAGE RECORDED IN OR BOOK 1821, PAGE 1916, RECORDS OF OKALOOSA COUNTY, 1700, RECORDS OF OKALOOSA COUNTY, FL.  MORTGAGE RECORDED IN OR BOOK 2330, PAGE 970, RECORDS OF OKALOOSA COUNTY, FL. ASSIGNMENT OF MORTGAGE RECORDED IN OR BOOK 2330, PAGE 970, RECORDS OF OKALOOSA COUNTY, FL AND RECORDED IN OR BOOK 1953, PAGE 1806, RECORDS OF SANTA ROSA COUNTY, FL.  CROSS COLLATERALIZATION AGREEMENT RECORDED IN OR BOOK 1834, PAGE 1097, RECORDS OF OKALOOSA COUNTY, FL.); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS.

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #38750-0001 (MORTGAGE RECORDED IN OR BOOK 2637, PAGE 37, RECORDS OF OKALOOSA COUNTY, FL); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS.

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #37844-0001 (MORTGAGE RECORDED IN OR BOOK 2343, PAGE 1927, RECORDS OF OKALOOSA COUNTY, FL); TO INCLUDE ALL FUTURE EXTENSIONS OR RENEWALS

**UCC # 1**
All farm products, including without limitation, all (1) crops frown, growing, or to be grown, including crops produced on trees, vines and bushes, and agricultural goods produced in agricultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in un-manufactured states.  All equipment, accessions, fixtures, and general intangibles (including payment intangibles and software); Instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods; All insurance refunds on any of the foregoing property and goods; together with all products and proceeds of any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media.  To include but not limited to Exhibit "A", "B", "C" and "D" attached.

**UCC #2**
All equipment; together with the following specifically described property: ONE WIL-LOADER WRANGLER DIESEL LOADER SERIAL #706418; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

**UCC #3**
All equipment and crops; together with the following specifically described property:  ALL CROPS NOW GROWING OR TO BE GROWN IN THE OPERATION OF THE DEBTOR'S BUSINESS FOR THE 1999 CROP YEAR AND SUBSEQUENT YEARS (SEE EXHIBIT "A"); ALL EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED INCLUDING BUT NOT LIMITED TO EXHIBIT "B", "C" AND "D"; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is no existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever for received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

CROSS COLLATERALIZED AND CROSS DEFAULTED WITH LOAN #378550008 AGRICULTURAL SECURITY AGREEMENT SECURED BY UCC-1 200500861634 AND UCC-3 #201003268992 FILED WITH THE SECRETARY OF STATE; ASSIGNMENT OF CROP INSURANCE ISSUED BY RURAL COMMUNITY INSURANCE; ASSIGNMENT OF PAYMENT FROM U.S. DEPARTMENT OF AGRICULTURE THROUGH YEAR 2016

to include any future renewals or extensions

THIS CROSS-COLLATERALIZED AND CROSS-DEFAULTED IS EXECUTED ON APRIL 29, 2015.

**BORROWER:**

x ~~Robert Gregory Evers~~
ROBERT GREGORY EVERS

CROSS-COLLATERALIZED AND CROSS-DEFAULTED
(Continued)

Loan No: 40108-0001                                                    Page 2

LENDER:

FIRST NBC BANK

X_____
   Dale E Riley Jr

LaserPro, Ver. 15.3.0.003  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.   - FL  P:\CAPE\XXX\CFALPL\D50.FC  TR-4558  PR-52

114557

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $320,000.00 | 01-09-2017 | 03-27-2017 | 401080001 | 261 / 026 | EAB3176 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower:  ROBERT G EVERS
5847 HIGHWAY 189 N
BAKER, FL 32531

Lender:  FIRST NBC BANK
CENTRAL OFFICE
1301 Industrial Drive
Crestview, FL 32539

**Principal Amount: $320,000.00**                                  **Date of Agreement: January 9, 2017**

DESCRIPTION OF EXISTING INDEBTEDNESS.  ORIGINAL PROMISSORY NOTE DATED APRIL 29, 2015, IN THE ORIGINAL MAXIMUM PRINCIPAL AMOUNT OF $320,000.00, EVIDENCING A MULTIPLE ADVANCE LOAN WITH AN EXISTING PRINCIPAL BALANCE OF $294,667.24, ON WHICH ALL DOCUMENTARY STAMP TAXES HAVE BEEN PAID .

DESCRIPTION OF COLLATERAL.  POSSESSORY COLLATERAL, REAL ESTATE.

DESCRIPTION OF CHANGE IN TERMS.  EXTENSION OF MATURITY DATE. ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 27, 2017.

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each DAY.  Borrower understands that Lender may make loans based on other rates as well.  The index currently is 3.750% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.750% per annum based on a year of 360 days.  NOTICE:  Under no circumstances will the effective rate of interest on this loan be less than 6.250% per annum or more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in this loan documents.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced by the original obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

CHANGE IN TERMS SIGNERS:

X _____
ROBERT G EVERS

LENDER:

FIRST NBC BANK

X _____
Dale Rice, Loan Officer

*0000000401080001%EAB3176%0960%04262017%261197647*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $299,700.00 | 04-26-2017 | 04-26-2019 | 401080001 | 4A / 026 | EAB3176 | DRICE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ROBERT G EVERS
5647 HIGHWAY 189 N
BAKER, FL 32531

**Lender:** FIRST NBC BANK
CENTRAL OFFICE
1301 Industrial Drive
Crestview, FL 32539

**Principal Amount: $299,700.00** **Date of Agreement: April 26, 2017**

DESCRIPTION OF EXISTING INDEBTEDNESS. ORIGINAL PROMISSORY NOTE DATED APRIL 29, 2015, IN THE ORIGINAL MAXIMUM PRINCIPAL AMOUNT OF $320,000.00, EVIDENCING A MULTIPLE ADVANCE LOAN WITH AN EXISTING PRINCIPAL BALANCE OF $299,700.00, ON WHICH ALL DOCUMENTARY STAMPS HAVE BEEN PAID.

DESCRIPTION OF COLLATERAL. POSSESSORY COLLATERAL AND REAL ESTATE.

DESCRIPTION OF CHANGE IN TERMS. (1) LOAN STRUCTURE CHANGED FROM SINGLE PAY LINE OF CREDIT TO TWO YEAR BALLOON TERM NOTE WITH 15 YEAR AMORTIZATION, MONTHLY PRINCIPAL AND INTEREST PAYMENTS AS DESCRIBED IN BELOW "PAYMENT" PARAGRAPH (2) INTEREST RATE CHANGED FROM WSJ PRIME PLUS 2.00% VARIABLE WITH A FLOOR OF 5.25% TO 6.00% FIXED (3) EXTENSION OF MATURITY DATE. ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

PROMISE TO PAY. ROBERT G EVERS ("Borrower") promises to pay to FIRST NBC BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-nine Thousand Seven Hundred & 00/100 Dollars ($299,700.00), together with interest on the unpaid principal balance from April 26, 2017, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 23 regular payments of $2,643.32 each and one irregular last payment estimated at $276,184.49. Borrower's first payment is due May 26, 2017, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 26, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; then to any unpaid collection costs; and then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Central Time, Lender will credit Borrower's payment on the next business day.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBC BANK, CENTRAL OFFICE, 1301 Industrial Drive, Crestview, FL 32539.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 6.000% of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the

## CHANGE IN TERMS AGREEMENT
(Continued)

Loan No: 401000001                                                  Page 2

laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Okaloosa County, State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GARNISHMENT.** Borrower consents to the issuance of a continuing writ of garnishment or attachment against Borrower's disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** Collateral securing other loans with Lender may also secure this loan. To the extent collateral previously has been given to Lender by any person which may secure this indebtedness, whether directly or indirectly, it is specifically agreed that, to the extent prohibited by law, all such collateral consisting of household goods will not secure this indebtedness. In addition, if any collateral requires the giving of a right of rescission under Truth in Lending for this indebtedness, such collateral also will not secure this indebtedness unless and until all required notices of that right have been given.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**COVENANT .** Borrower to provide quarterly updates on total operations including quarterly profit and loss.

**FINANCIAL REPORTING.** Annual financial statements and tax returns on borrower.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____
ROBERT G EVERS

LENDER:

FIRST NBC BANK

X _____
Dale Elco, Loan Officer

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of
SBN V FNBC LLC
Without Recourse

that certain Promissory Note dated April 29, 2015 in the original principal amount of
$320,000.00, executed by Robert Gregory Evers made to First NBC Bank as the same may
have been renewed, assigned, amended, supplemented, restated or modified.

Effective as of October 18, 2017.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for FIRST NBC BANK, New Orleans, Louisiana

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

<u>Exhibit "H"</u>

**The Cross Collateral Agreement**

94-474 O.T.

STATE OF ALABAMA)

COVINGTON COUNTY)

** OFFICIAL RECORDS **
BK 1834 PG 1097

COVINGTON COUNTY BANK
POST OFFICE BOX 400
ANDALUSIA, ALABAMA

## CROSS-COLLATERALIZATION AGREEMENT

Comes now Robert Gregory Evers and Tami Sue Evers, individually, and Robert

G. Evers  dba Baker Farm Center, hereinafter collectively called "Debtor", and

COVINGTON COUNTY BANK hereinafter call "Bank", and do hereby agree as follows:

Whereas Debtor is indebted to Bank under and according to those certain

promissory notes secured by the following described mortgages to Bank, to-wit:

(A)  Note in the original amount of $125,000.00 dated March 30, 1994: Mortgage
dated March 30, 1994 in the amount of $ 150,000.00  and recorded in Real
Property Book 1824  , pages 1955   in the Office of the Clerk of
Circuit Court of Okaloosa County, Florida.

(B)  Note in the original amount of $65,000.00 dated March 30, 1994: Mortgage
dated March 30, 1994 in the amount of $ 80,000.00   and recorded in Real
Property Book 1824  , pages 1970   in the Office of the Clerk of
Circuit Court of Okaloosa County, Florida.

(C)  Note in the original amount of $95,000.00, $28,000.00, and $28,000.00
dated March 30, 1994: Mortgage dated March 30, 1994 in the amount of
$ 151,000.00  and recorded in Real Property Book 1824  , pages 1700
in the Office of the Clerk of Circuit Court, Okaloosa County, Florida.

(D)  Note in the original amount of $200,000.00  dated March 30, 1994: UCC-1
on Crops and equipment recorded in the Office of Clerk of Circuit Court,
Okaloosa County, Florida and UCC-I on crops and equipment recorded in
the Office of Secretary of State of Florida.  Crops for the year of 1994
and subsequent years.

(E)  Mortgage dated August 19, 1991 in the amount of $ 50,000.00  and recorded
in Real Property Book 1621  , pages 1916-1917 in the Office of the Clerk
of Circuit Court, Okaloosa County, Florida.

Whereas, on the date of execution of this agreement Bank has made said loans to

Debtor, evidenced by said promissory notes and mortgages executed by Debtor to Bank; and

Whereas in additional consideration and to further secure the loans made on this date,

and future loans, and any future indebtedness, and as an inducement to Bank to advance said

funds, Debtor has agreed to execute a cross-collateralization agreement.

Therefore, Debtor and Bank agree that any default by the Debtor of any of the terms

of the mortgages or any of the notes executed on this date, because of the failure to

make a payment or otherwise to comply with the terms of each mortgage and note, shall

constitute a default of all the mortgages and notes set-out hereinabove.

In the case of any default under the mortgages and notes executed on this date, the

Bank shall have the right, at its election, to declare immediately due and payable the

entire indebtedness secured by all of the mortgages and notes set-out hereinabove, with

interest and other appropriate charges applicable to each and every mortgage and note, and

to pursue the remedies as provided in each respective mortgage and note.

This the 30th  day of March , 1994.

** OFFICIAL RECORDS **
BK 1834 PG 1098

_____
Robert Gregory Evers, Individually

_____
Tami Sue Evers, individually

BAKER FARM CENTER

_____          BY: _____
Robert Gregory Evers                          Its: Owner

STATE OF FLORIDA)
OKALOOSA COUNTY)

I, Donna L. Richards , Notary Public in and for said County, in said State hereby certify that Robert Gregory Evers, and Tami Sue Evers, whose names are signed to the foregoing cross-collateralization agreement, and who is known to me, acknowledged before me on this day, that, being informed of the contents of the cross collateralization they executed the same voluntarily on the day the same bears date.
* who have produced FL Drivers licenses as identification.
Given under my hand and official seal the 30th of March, 1994.

DONNA L. RICHARDS
MY COMMISSION # CC05666 EXPIRES
July 31, 1997
BONDED THRU TROY FAIN INSURANCE, INC.                    NOTARY PUBLIC Donna L. Richards

STATE OF FLORIDA)
OKALOOSA COUNTY)

I, Donna L. Richards , a Notary Public in and for said County, in said State hereby certify that Robert Gregory Evers, whose name as Owner of the Baker Farm Center, is signed to the foregoing cross-collateralization agreement, and who is known to me, acknowledged before me this day, that being informed of the contents of the cross collateralization he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation, on the day the same bears date.
* who has produced FL Driver license as identification.
Given under my hand and official seal this 30th day of March, 1994.

DONNA L. RICHARDS
MY COMMISSION # CC05666 EXPIRES
July 31, 1997
BONDED THRU TROY FAIN INSURANCE, INC.                    NOTARY PUBLIC Donna L. Richards

NOTE TO RECORDING CLERK: Please cross index this agreement with each of the mortgages reflected herein.

FILE# 1334860
OKALOOSA COUNTY, FLORIDA

RCD: MAY 9 1994 @ 12:43 PM
NEWMAN C BRACKIN, CLERK

O.T.
10⁵⁰ + 2⁰⁰
99-8353

```
** OFFICIAL RECORDS **
BK 2330   PG 970
```

```
* OFFICIAL RECORDS * 1of2
BK 1953   PG 1805

FILE # 200145774
RCD: Nov 05 2001 @ 04:01PM
```

STATE OF FLORIDA)

OKALOOSA and )
SANTA ROSA COUNTIES)

SANTA ROSA COUNTY, FL
Mary M Johnson, Clerk

## ASSIGNMENT OF MORTGAGE
### (NON-RECOURSE)

KNOW ALL MEN BY THESE PRESENTS, That for value received, the undersigned, COVINGTON COUNTY BANK, an Alabama banking corporation, does hereby grant, bargain, sell, convey, assign and transfer unto FIRST NATIONAL BANK OF CRESTVIEW, a Florida banking corporation, the following

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1970-1976 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $150,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1955-1961 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage dated March 30, 1994 from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00 recorded in Book 1408 Pages 380-386 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers to Covington County Bank to secure $151,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1700-1706 in the Office of Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert Gregory Evers and Tami Sue Evers to Covington County Bank to secure $675,000.00, dated April 2,1999 recorded in Book 2211 Pages 384-390 in the office of the clerk of Circuit Court Okaloosa County, Florida; and recorded in Book 1829 Pages 453-459 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami Sue Evers to Covington County Bank to secure $50,000.00, dated August 19, 1991 recorded in Book 1621 Pages 1916-1917 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain cross-collateralization agreement from Robert G. Evers and Tami Sue Evers to Covington County Bank with reference to mortgages listed at 1, 2, 4 and 6 above, dated March 30, 1994; recorded in Book 1834 Pages 1097-1098 in the Office of the Clerk of Circuit Court Okaloosa County, Florida

together with the original promissory note(s) or obligation(s) therein described, the renewals and extensions thereof and the money due thereon, with the interest, and together with the real property described in and conveyed by said mortgages.

TO HAVE AND TO HOLD the same unto said FIRST NATIONAL BANK OF CRESTVIEW, its successors and assigns.

THIS ASSIGNMENT is made without recourse against the maker.

IN WITNESS WHEREOF, COVINGTON COUNTY BANK has caused this instrument to be executed Alan L. Mims its Executive Vice President and its seal affixed this the 31ˢᵗ day of October, 2001.

Witnesses:

ANGELA CRINKLAW

TERESA O'HARA

COVINGTON COUNTY BANK,
an Alabama Banking Corporation

By: _____
Alan L. Mims, its Executive Vice President

Okaloosa Title

*(left margin, vertical)* FILE # 1884818  RCD: Dec 05 2001 @ 01:09PM  Newman C. Bracklin, Clerk, Okaloosa Cnty Fl

```
* OFFICIAL RECORDS * 2of2
        BK 1953  PG 1806
```

```
** OFFICIAL RECORDS **
BK 2330  PG 971
```

STATE OF FLORIDA

COUNTY OF OKALOOSA

    On this the 31st day of October, 2001, before me, _TERESA O'HARA_ a Notary Public in and for said county, appeared Alan L. Mims, personally known to me who first by me being sworn did say that he is the Executive Vice President of Covington County Bank, and that the seal affixed to the instrument is corporate seal of the corporation, and that the instrument was signed and sealed in behalf of the corporation by authority of its board of directors and Alan L. Mims acknowledged the instrument to be the free and voluntary act and deed of the corporation.

    In testimony of, I have hereunto affixed my name and official seal at Crestview, Florida, this 31st day of October, 2001.

                                  Teresa O'Hara
                                 Notary Public, State of Florida

                    Teresa O'Hara
                MY COMMISSION # CC793385 EXPIRES
                October 19, 2002
              BONDED THRU TROY FAIN INSURANCE, INC.

My commission expires: _____

Prepared by:
J. Mark Murphy
MURPHY, MURPHY & MCCALMAN, P.C.
P.O. Drawer 1736
Andalusia, AL  36420

## Composite Exhibit "I"

### The Collateral Mortgages

Rec $33.00     D/S $525.00     I/T $300.00     Total 858.00     94-475     dr   O.I.

THIS IS A BALLOON MORTGAGE AND THE FINAL PAYMENT OR THE BALANCE DUE UPON MATURITY
IS $98,455.56, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE
BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

** OFFICIAL RECORDS **
BK 1824 PG 1955

THIS INSTRUMENT WAS PREPARED BY
ALLEN R. COOK
P.O. BOX 2235
CRESTVIEW, FLA. 32536

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on      March 30, 1994
The mortgagor is      ROBERT G. EVERS and wife, TAMI F. EVERS
1054 MELTON ROAD, BAKER, FL  32531

("Borrower"). This Security Instrument is given to
COVINGTON COUNTY BANK
which is organized and existing under the laws of      ALABAMA      , and whose address is
P.O. BOX 400      ANDALUSIA, AL  36420

("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED FIFTY THOUSAND DOLLARS AND NO CENTS
Dollars (U.S. $  150,000.00      ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
April 5, 1999      . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other
sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in
OKALOOSA      County, Florida:

LEGAL DESCRIPTION ATTACHED HERETO MARKED EXHIBIT "A" AND BY REFERENCE MADE A PART
HEREOF.

FLORIDA DOCUMENTARY STAMP TAX PAID $ 525.00
CLASS "C" INTANGIBLE PERSONAL PROPERTY TAX PAID $ 300.00
NEWMAN C. BRACKIN, CLERK OF CIRCUIT COURT, OKALOOSA COUNTY
FLORIDA BY _____     D.C.

which has the address of      1054 MELTON ROAD,      BAKER
                                   [Street]                        [City]
Florida      32531      ("Property Address");
              [Zip Code]

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3010  9/90  (page 1 of 6 pages)
ITEM 1818 (9111)                                                              Great Lakes Business Forms, Inc. ■
                                                                             To Order Call: 1-800-530-9393 □ FAX 616-791-1131

** OFFICIAL RECORDS **
BK 1824 PG 1956

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the

Form 3010   9/90   (page 2 of 6 pages)

** OFFICIAL RECORDS **
BK 1824 PG 1957

periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants   9/90   (page 3 of 6 pages)

Great Lakes Business Forms, Inc.
To Order Call: 1-800-530-9393 [] FAX 616-791-1131

** OFFICIAL RECORDS **
BK 1624 PG 1958

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants   9/90   (page 4 of 6 pages)



** OFFICIAL RECORDS **
BK 1824 PG 1959

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

Form 3010   9/90   *(page 5 of 6 pages)*

** OFFICIAL RECORDS **
BK 1824 PG 1760

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider

☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider

☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider

☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Donna M. Hinsley_
DONNA M. HINSLEY

THIS IS A BALLOON MORTGAGE AND THE FINAL PAYMENT OR THE BALANCE DUE UPON MATURITY IS $98,455.56, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

_Donna L. Richards_
Donna L. Richards

_____ (Seal)
-Borrower
ROBERT G. EVERS

_Tami F. Evers_ (Seal)
-Borrower
TAMI F. EVERS

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

STATE OF FLORIDA,
COUNTY OF OKALOOSA

The foregoing instrument was acknowledged before me this   30   day of   MARCH  , 1994   by
ROBERT G. EVERS and wife, TAMI F. EVERS
~who is personally known to me~ or who has produced   FL Driver licenses
as identification and who did   NOT   take an oath.

_Donna L. Richards_
Donna L. Richards
Notary Public

My Commission expires:

_____ (Seal)

DONNA L. RICHARDS
MY COMMISSION # CC296565 EXPIRES
July 31, 1997
BONDED THRU TROY FAIN INSURANCE, INC.

Form 3010  9/90  (page 6 of 6 pages)

** OFFICIAL RECORDS **
BK 1824 PG 1961

App No. 94-475

EXHIBIT 'A'

Commencing at the Southwest corner of Section 36, Township 4 North, Range 25 West, same being the Northwest corner of Section 1, Township 3 North, Range 25 West, Okaloosa County, Florida; thence along the common line of said Section 36 and Section 1; run S 89 degrees 50'42" East, 1320 feet to Point of Beginning; thence continue along said Section line South 89 degrees 50'42" East, 203.59 feet to Point of Intersection with the South right of way line of Brooks Road (80 foot wide right of way); thence departing said Section line, run along said South line of Brooks Road, North 86 degrees 30'42" E, 1118.52 feet; thence departing said South line, run South 00 degrees 01'42" W 663.63 feet; thence North 89 degrees 54'31" W, 1321.09 feet to point on the East maintenance line of Griffith Hill Road; thence N 00 degrees 07'56" East 594.01 feet to the Point of Beginning.  Less and Except 0.03 acre (1327 square feet) of land situated in the right of way of Brooks Road and being more particularly described as:  Commencing at the above mentioned Northwest corner of Section 1, Township 3 North, Range 25 West, Okaloosa County, Florida; thence along said section line S 89 degrees 50'42" E, 1320 feet to the Point of Beginning; thence continue along said section line 203.59 feet; thence departing said section line, run S 86 degrees 30'42" W 204.00 feet to the Point on the East maintenance line of Griffith Hill Road; thence N 00 degrees 07'56" East 12.96 feet to the Point of Beginning.

THIS MORTGAGE IS ALSO SECURED BY THAT CERTAIN MORTGAGE EXECUTED BY ROBERT G. EVERS AND WIFE, TAMI F. EVERS TO COVINGTON COUNTY BANK, DATED 3/30/94 IN THE ORIGINAL PRINCIPAL AMOUNT OF $80,000.00, WHICH HEREBY CREATES A CROSS COLLATERALIZATION BETWEEN THIS MORTGAGE AND THE PRIOR MORTGAGE HERETOFORE MENTIONED AND A DEFAULT IN EITHER MORTGAGE WILL AUTOMATICALLY BE DEEMED A DEFAULT IN THE OTHER, WHICH COVERS THE FOLLOWING DESCRIBED PROPERTY, TO WIT:


PARCEL #1:
The Northwest Quarter of the Northwest Quarter of Section 6, Township 4 North, Range 25 West, Okaloosa County, Florida, and an easement over the East 30 feet of the Southwest Quarer of the Northwest Quarter of Seoton 6, Township 4 North, Range 25 West, Okaloosa County, Florida.

PARCEL #2:
The Southwest Quarter of the Southwest Quarter of Seoton 25, Township 5 North, Range 26 West, Santa Rosa County, Florida.



FILE# 1326017
OKALOOSA COUNTY, FLORIDA

RCD: MAR 31 1994 @ 1:15 PM
NEWMAN C BRACKIN, CLERK

```
** OFFICIAL RECORDS **          * OFFICIAL RECORDS * 1of2
BK 2330 PG 970                    BK 1953   PG 1805

                                 FILE # 200145774
                                 RCD: Nov 05 2001 @ 04:01PM
STATE OF FLORIDA)
                                 SANTA ROSA COUNTY, FL
OKALOOSA and )                   Mary M Johnson, Clerk
SANTA ROSA COUNTIES)
```

O.T.
10⁵⁰ × 2.⁰⁰
99-8353

## ASSIGNMENT OF MORTGAGE
### (NON-RECOURSE)

KNOW ALL MEN BY THESE PRESENTS, That for value received, the undersigned, COVINGTON COUNTY BANK, an Alabama banking corporation, does hereby grant, bargain, sell, convey, assign and transfer unto FIRST NATIONAL BANK OF CRESTVIEW, a Florida banking corporation, the following

That certain real estate mortgage from **Robert G. Evers** and **Tami F. Evers** to Covington County Bank to secure $80,000.00, dated March 30, 1994 recorded in Book **1824 Pages 1970-1976** in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from **Robert G. Evers** and **Tami F. Evers** to Covington County Bank to secure $150,000.00, dated March 30, 1994 recorded in Book **1824 Pages 1955-1961** in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage dated March 30, 1994 from **Robert G. Evers** and **Tami F. Evers** to Covington County Bank to secure $80,000.00 recorded in Book **1408 Pages 380-386** in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from **Robert G. Evers** to Covington County Bank to secure $151,000.00, dated March 30, 1994 recorded in Book **1824 Pages 1700-1706** in the Office of Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from **Robert Gregory Evers** and **Tami Sue Evers** to Covington County Bank to secure $675,000.00, dated April 2,1999 recorded in Book **2211 Pages 384-390** in the office of the clerk of Circuit Court Okaloosa County, Florida; and recorded in Book **1829 Pages 453-459** in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from **Robert G. Evers** and **Tami Sue Evers** to Covington County Bank to secure $50,000.00, dated August 19, 1991 recorded in Book **1621 Pages 1916-1917** in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain cross-collateralization agreement from **Robert G. Evers** and **Tami Sue Evers** to Covington County Bank with reference to mortgages listed at 1, 2, 4 and 6 above, dated March 30, 1994; recorded in Book **1834 Pages 1097-1098** in the Office of the Clerk of Circuit Court Okaloosa County, Florida

together with the original promissory note(s) or obligation(s) therein described, the renewals and extensions thereof and the money due thereon, with the interest, and together with the real property described in and conveyed by said mortgages.

TO HAVE AND TO HOLD the same unto said FIRST NATIONAL BANK OF CRESTVIEW, its successors and assigns.

THIS ASSIGNMENT is made without recourse against the maker.

IN WITNESS WHEREOF, COVINGTON COUNTY BANK has caused this instrument to be executed Alan L. Mims its Executive Vice President and its seal affixed this the 31ˢᵗ day of October, 2001.

Witnesses:

_Angela Crinklaw_
ANGELA CRINKLAW

_Teresa O'Hara_
TERESA O'HARA

COVINGTON COUNTY BANK,
an Alabama Banking Corporation

By: _Alan L. Mims_
Alan L. Mims, its Executive Vice President

Page 1 of 2

FILE # 1884818  RCD: Dec 05 2001 @ 01:09PM
Newman C. Brackin, Clerk, Okaloosa Cnty Fl

Okaloosa Title

```
* OFFICIAL RECORDS * 2of2
        BK 1953  PG 1806
```

```
** OFFICIAL RECORDS **
BK 2330 PG 971
```

STATE OF FLORIDA

COUNTY OF OKALOOSA

On this the 31st day of October, 2001, before me, ___TERESA O'HARA___ a Notary Public in and for said county, appeared Alan L. Mims, personally known to me who first by me being sworn did say that he is the Executive Vice President of Covington County Bank, and that the seal affixed to the instrument is corporate seal of the corporation, and that the instrument was signed and sealed in behalf of the corporation by authority of its board of directors and Alan L. Mims acknowledged the instrument to be the free and voluntary act and deed of the corporation.

In testimony of, I have hereunto affixed my name and official seal at Crestview, Florida, this 31st day of October, 2001.

Teresa O'Hara
Notary Public, State of Florida

Teresa O'Hara
MY COMMISSION # CC759385 EXPIRES
October 19, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

My commission expires: _____

Prepared by:
J. Mark Murphy
MURPHY, MURPHY & MCCALMAN, P.C.
P.O. Drawer 1736
Andalusia, AL 36420



** OFFICIAL RECORDS **
BK 1824 PG 1970

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on March 30, 1994
The mortgagor is    ROBERT G. EVERS and wife, TAMI F. EVERS
1054 MELTON ROAD, BAKER, FL  32531
                                          ("Borrower"). This Security Instrument is given to

COVINGTON COUNTY BANK
which is organized and existing under the laws of    ALABAMA                                and whose address is
P.O. BOX 400                        ANDALUSIA, AL  36420
                                          ("Lender"). Borrower owes Lender the principal sum of

EIGHTY THOUSAND DOLLARS AND NO CENTS
Dollars (U.S. $  80,000.00       ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
February 5, 2004              This Security Instrument secures to Lender:  (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other
sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in    OKALOOSA        County, Florida:
                                                                        Santa Rosa &
LEGAL DESCRIPTION ATTACHED HERETO MARKED EXHIBIT "A" AND BY REFERENCE MADE A PART
HEREOF.

FLORIDA DOCUMENTARY STAMP TAX PAID $ 280.00
CLASS "C" INTANGIBLE PERSONAL PROPERTY TAX PAID $ 160.00
NEWMAN C. BRACKIN, CLERK OF CIRCUIT COURT, OKALOOSA COUNTY
FLORIDA BY: _____ D.C.

THIS MORTGAGE HAS BEEN EXECUTED IN TWO (2) COUNTERPARTS AND EACH OF SUCH COUNTERPARTS SHALL, FOR ALL
PURPOSES BE DEEMED AN ORIGINAL AND BOTH SUCH COUNTERPARTS SHALL TOGETHER CONSTITUTE BUT ONE AND THE
SAME INSTRUMENT.

                        VACANT LAND
which has the address of _____            _____
                              [Street]                            [City]
Florida _____            ("Property Address");
        [Zip Code]

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           Form 3010  9/90  (page 1 of 6 pages)
ITEM 1818 (9111)                                                              Great Lakes Business Forms, Inc.
                                                                             To Order Call: 1-800-530-9393 □ FAX 616-791-1131



** OFFICIAL RECORDS **
BK 1824 PG 1971

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds and Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the

Form 3010  9/90  (page 2 of 6 pages)



** OFFICIAL RECORDS **
BK 1824 PG 1972

periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants   9/90   (page 3 of 6 pages)

Great Lakes Business Forms, Inc. ■
To Order Call: 1-800-530-9392 □ FAX 616-791-1131



** OFFICIAL RECORDS **
BK 1824 PG 1973

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – Uniform Covenants  9/90   (page 4 of 6 pages)



** OFFICIAL RECORDS **
BK 1824 PG 1974

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Attorneys' Fees. As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

Form 3010  9/90   (page 5 of 6 pages)

** OFFICIAL RECORDS **
BK 1824 PG 1975

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider
☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider
☐ Other(s) (specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Donna M. Hinsley_
DONNA M. HINSLEY

_Robert G. Evers_ (Seal)
ROBERT G. EVERS -Borrower

_Donna L. Richards_
Donna L. Richards

_Tami F. Evers_ (Seal)
TAMI F. EVERS -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

STATE OF FLORIDA,
COUNTY OF OKALOOSA

The foregoing instrument was acknowledged before me this 30 day of MARCH, 1994, by ROBERT G. EVERS and wife, TAMI F. EVERS who is personally known to me or who has produced FL Driver licenses as identification and who did NOT take an oath.

_Donna L. Richards_
Donna L. Richards                 Notary Public

My Commission expires:

_____
(Seal)

DONNA L. RICHARDS
MY COMMISSION # CC295655 EXPIRES
July 31, 1997
BONDED THRU TROY FAIN INSURANCE, INC.

Form 3010 9/90 (page 6 of 6 pages)

** OFFICIAL RECORDS **
BK 1824 PG 1976

App No. 94-474

EXHIBIT 'A'

PARCEL #1:
The Northwest Quarter of the Northwest Quarter of Section 6, Township 4 North,
Range 25 West, Okaloosa County, Florida, and an easement over the East 30 feet of
the Southwest Quarter of the Northwest Quarter of Section 6, Township 4 North, Range
25 West, Okaloosa County, Florida.

PARCEL #2:
The Southwest Quarter of the Southwest Quarter of Section 25, Township 5 North,
Range 26 West, Santa Rosa County, Florida.

THIS MORTGAGE IS ALSO SECURED BY THAT CERTAIN MORTGAGE EXECUTED BY ROBERT G. EVERS
AND WIFE, TANI F. EVERS TO COVINGTON COUNTY BANK, DATED 3/30/94 IN THE ORIGINAL
PRINCIPAL AMOUNT OF $150,000.00, WHICH HEREBY CREATES A CROSS COLLATERALIZATION
BETWEEN THIS MORTGAGE AND THE PRIOR MORTGAGE HERETOFORE MENTIONED AND A DEFAULT IN
EITHER MORTGAGE WILL AUTOMATICALLY BE DEEMED A DEFAULT IN THE OTHER, WHICH COVERS
THE FOLLOWING DESCRIBED PROPERTY, TO WIT:

Commencing at the Southwest corner of Section 36, Township 4 North, Range 25 West,
same being the Northwest corner of Section 1, Township 3 North, Range 25 West,
Okaloosa County, Florida; thence along the common line of said Section 36 and
Section 1; run S 89 degrees 50'42" East, 1320 feet to Point of Beginning; thence
continue along said Section line South 89 degrees 50'42" East, 203.59 feet to Point
of Intersection with the South right of way line of Brooks Road (80 foot wide right
of way); thence departing said Section line, run along said South line of Brooks
Road, North 86 degrees 30'42" E, 1110.52 feet; thence departing said South line,
run South 00 degrees 01'42" W 663.63 feet; thence North 89 degrees 54'31" W,
1321.09 feet to point on the East maintenance line of Griffith Mill Road; thence N
00 degrees 07'56" East 594.01 feet to the Point of Beginning.  Less and Except 0.03
acre (1327 square feet) of land situated in the right of way of Brooks Road and
being more particularly described as:  Commencing at the above mentioned Northwest
corner of Section 1, Township 3 North, Range 25 West, Okaloosa County, Florida;
thence along said section line S 89 degrees 50'42" E, 1320 feet to the Point of
Beginning; thence continue along said section line 203.59 feet; thence departing
said section line, run S 06 degrees 30'42" W 204.00 feet to the Point on the East
maintenance line of Griffith Mill Road; thence N 00 degrees 07'56" East 12.96 feet
to the Point of Beginning.



FILE# 1326021
OKALOOSA COUNTY, FLORIDA

RCD: MAR 31 1994 @ 1:17 PM
NEWMAN C BRACKIN, CLERK

O.T.

10⁵⁰ x 2⁰⁰

99 - 8353

** OFFICIAL RECORDS **
BK 2330 PG 970

* OFFICIAL RECORDS * 1of2
BK 1953  PG 1805

FILE # 200145774
RCD: Nov 05 2001 @ 04:01PM

STATE OF FLORIDA)

SANTA ROSA COUNTY, FL
Mary M Johnson, Clerk

OKALOOSA and )
SANTA ROSA COUNTIES)

FILE # 1084318  RCD: Dec 05, 2001 @ 01:09PM
Neman C. Bracklin, Clerk, Okaloosa Cnty FL

## ASSIGNMENT OF MORTGAGE
### (NON-RECOURSE)

KNOW ALL MEN BY THESE PRESENTS, That for value received, the undersigned, COVINGTON COUNTY BANK, an Alabama banking corporation, does hereby grant, bargain, sell, convey, assign and transfer unto FIRST NATIONAL BANK OF CRESTVIEW, a Florida banking corporation, the following

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1970-1976 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $150,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1955-1961 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage dated March 30, 1994 from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00 recorded in Book 1408 Pages 380-386 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers to Covington County Bank to secure $151,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1700-1706 in the Office of Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert Gregory Evers and Tami Sue Evers to Covington County Bank to secure $675,000.00, dated April 2,1999 recorded in Book 2211 Pages 384-390 in the office of the clerk of Circuit Court Okaloosa County, Florida; and recorded in Book 1829 Pages 453-459 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami Sue Evers to Covington County Bank to secure $50,000.00, dated August 19, 1991 recorded in Book 1621 Pages 1916-1917 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain cross-collateralization agreement from Robert G. Evers and Tami Sue Evers to Covington County Bank with reference to mortgages listed at 1, 2, 4 and 6 above, dated March 30, 1994; recorded in Book 1834 Pages 1097-1098 in the Office of the Clerk of Circuit Court Okaloosa County, Florida

together with the original promissory note(s) or obligation(s) therein described, the renewals and extensions thereof and the money due thereon, with the interest, and together with the real property described in and conveyed by said mortgages.

TO HAVE AND TO HOLD the same unto said FIRST NATIONAL BANK OF CRESTVIEW, its successors and assigns.

THIS ASSIGNMENT is made without recourse against the maker.

IN WITNESS WHEREOF, COVINGTON COUNTY BANK has caused this instrument to be excuted Alan L. Mims its Executive Vice President and its seal affixed this the 31ˢᵗ day of October, 2001.

Witnesses:

ANGELA CRINKLAW

TERESA O'HARA

Okaloosa Title

COVINGTON COUNTY BANK,
an Alabama Banking Corporation

By: _____
Alan L. Mims, its Executive Vice President

Page 1 of 2

* OFFICIAL RECORDS * 2of2
BK 1953  PG 1806

** OFFICIAL RECORDS **
BK 2330  PG 971

STATE OF FLORIDA

COUNTY OF OKALOOSA

On this the 31st day of October, 2001, before me,  TERESA O'HARA
a Notary Public in and for said county, appeared Alan L. Mims, personally known to me
who first by me being sworn did say that he is the Executive Vice President of Covington
County Bank, and that the seal affixed to the instrument is corporate seal of the
corporation, and that the instrument was signed and sealed in behalf of the corporation by
authority of its board of directors and Alan L. Mims acknowledged the instrument to be
the free and voluntary act and deed of the corporation.

In testimony of, I have hereunto affixed my name and official seal at Crestview,
Florida, this 31st day of October, 2001.

Teresa O'Hara
Notary Public, State of Florida

Teresa O'Hara
MY COMMISSION # CC752385 EXPIRES
October 19, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

My commission expires: _____

Prepared by:
J. Mark Murphy
MURPHY, MURPHY & MCCALMAN, P.C.
P.O. Drawer 1736
Andalusia, AL  36420

Page 2 of 2

** OFFICIAL RECORDS **
BK 1824 PG 1700

FLORIDA DOCUMENTARY STAMP TAX PAID $ 528.50
CLASS "C" INTANGIBLE PERSONAL PROPERTY TAX PAID $ 302.00
NEWMAN C. BRACKIN, CLERK OF CIRCUIT COURT, OKALOOSA COUNTY
FLORIDA BY:_____ D.C.

[Space Above This Line For Recording Data]

94-0532

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on ____March 30_____
19 94 . The mortgagor is _ROBERT G. EVERS, A MARRIED MAN_____
_____ ("Borrower"). This Security Instrument is given to _COVINGTON COUNTY_
BANK_____, which is organized and existing
under the laws of _the State of ALABAMA____, and whose address is _P.O. DRAWER 400,__
ANDALUSIA, AL  36420_____ ("Lender").
Borrower owes Lender the principal sum of _ONE HUNDRED FIFTY ONE THOUSAND AND NO/100_
_____ Dollars (U.S.$ 151,000.00 ). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on _APRIL 1, 2004____. This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security
of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described prop-
erty located in _____OKALOOSA_____ County, Florida:

Parcel #1:
Commencing at the Southwest corner of Lot 7, Block 1, Town of Baker, according
to the plat on file in the office of the Clerk of Circuit Court, Okaloosa
County, Florida, for the Point of Beginning; thence Northeasterly along the
West Boundary line of said Block 1 to the Northwest corner of Lot 1 of said
Block, thence West along the South boundary of 19th Street 117.12 feet, more
or less to the East boundary of State Road 189, thence Southerly along the
                                                                    continued

THE ABOVE DESCRIBED PROPERTY IS NOT THE HOMESTEAD OF THE MORTGAGOR HEREIN.

which has the address of _____HWY 189 NORTH_____, ____BAKER____,
                                    [Street]                        [City]
Florida ___32531___ ("Property Address");
          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

FLORIDA —Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010  9/90
                                                                           Amended 5/91
Tallisk(s)                    Page 1 of 6
DCFL511                  FIRST DATA SYSTEMS, INC.        LOAN #1.      (615) 361-8404

** OFFICIAL RECORDS **
BK 1824 PG 1701

THIS SECURITY INSTRUMENT combines uniform convenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and

Initial(s) _____          Page 2 of 6                    Form 3010  9/90

LOAN #:



** OFFICIAL RECORDS **
BK. 1824 PG 1702

for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, from an alternate mortgage insurer approved equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in

Initial(s) _____                          Page 3 of 6                          Form 3010 9/90

LOAN #:



** OFFICIAL RECORDS **
BK 1824 PG 1703

the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

Initials _____                     Page 4 of 6                              Form 3010 9/90

                                                    LOAN #1



** OFFICIAL RECORDS **
BK 1824 PG 1704

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

Initial(s) _____

Page 5 of 6                LOAN #1                Form 3010 9/90

**OFFICIAL RECORDS**
BK 1824 PG 1705

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ 1-4 Family Rider
☐ Graduated Payment Rider   ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ Balloon Rider   ☐ Rate Improvement Rider   ☐ Second Home Rider
☐ V.A. Rider   ☐ Other(s) (specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Pamela K. Pannasch_                    _Robert G. Evers_                    (Seal)
PAMELA K. PANNASCH              ROBERT G. EVERS                    -Borrower

_Tena Corbin_                    _____    (Seal)
TENA CORBIN                                                                    -Borrower

[Space Below This Line For Acknowledgement]

STATE OF FLORIDA
OKALOOSA COUNTY SS:

Before me personally appeared ROBERT G. EVERS, A MARRIED MAN, personally known to me or who produced Florida's Driver License(s) as identification and who did not take an oath, and to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged before me that they executed the same.

WITNESS my hand and official seal in the county and state aforesaid the 30th day of March, 1994.

_Pamela K. Pannasch_
(Notary Public in and for the County and State aforesaid)
PAMELA K. PANNASCH
My Commission Expires   April 24, 1996

OFFICIAL NOTARY SEAL
PAMELA K PANNASCH
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC198134
MY COMMISSION EXP. APR. 24,1996

Address of Buyer(s):   1054 MELTON ROAD
BAKER, FL 32531

THIS INSTRUMENT PREPARED BY:
WARREN W. COOK, PRESIDENT
FIRST NATIONAL LAND TITLE CO.,INC
397 N. FERDON BLVD.,
CRESTVIEW, FL 32536

Initial(s) _____

Page 6 of 6

LOAN #:

Form 3010 9/90



** OFFICIAL RECORDS **
BK 1824 PG 1706

Continuation of Legal Description

East boundary line of road 189 a distance of 350.67 feet to the North boundary
of 18th Street, thence East 81.8 feet more or less to the Point of Beginning.

Parcel #2:
50 feet East and West and 350 feet North and South lying between Block 1 and
Block 25 of Plat of Town of Baker, said area being formerly designated as
Madison Street and the said Street having been closed by appropriate action of
the Board of County Commissioners of Okaloosa County, Florida, and title
thereto having reverted to the grantors.

AND:
10 feet East and West and 350 feet North and South lying immediately easterly
adjacent to Lots 8 through 14, inclusive, in Block 25, of the Said Town of
Baker, said area being formerly designated as the West 1/2 of an alley, which
was likewise duly closed by appropriate action by the Board of County
Commissioners of Okaloosa County, Florida, and title having reverted back to
the grantors.

Lots 1 through 7, Block 1, and Lots 8 through 14, Block 25, Town of Baker,
according to the plat on file in the Office of the Clerk of Circuit Court,
Okaloosa County, Florida.

FILE# 1325907
OKALOOSA COUNTY,FLORIDA

RCD: MAR 31 1994 @ 8:51 AM
NEWMAN C BRACKIN, CLERK

O.T.

10⁵⁰ x 2⁵⁰

99 - 8353

```
** OFFICIAL RECORDS **        * OFFICIAL RECORDS * 1of2
   BK 2330 PG 970              BK 1953  PG 1805

                              FILE # 2OO145774
                              RCD: Nov 05 2001 @ 04:01PM
```

STATE OF FLORIDA)

OKALOOSA and )                     SANTA ROSA COUNTY, FL
SANTA ROSA COUNTIES)               Mary M Johnson, Clerk

# ASSIGNMENT OF MORTGAGE
## (NON-RECOURSE)

KNOW ALL MEN BY THESE PRESENTS, That for value received, the undersigned, COVINGTON COUNTY BANK, an Alabama banking corporation, does hereby grant, bargain, sell, convey, assign and transfer unto FIRST NATIONAL BANK OF CRESTVIEW, a Florida banking corporation, the following

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1970-1976 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $150,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1955-1961 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage dated March 30, 1994 from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00 recorded in Book 1408 Pages 380-386 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers to Covington County Bank to secure $151,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1700-1706 in the Office of Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert Gregory Evers and Tami Sue Evers to Covington County Bank to secure $675,000.00, dated April 2,1999 recorded in Book 2211 Pages 384-390 in the office of the clerk of Circuit Court Okaloosa County, Florida; and recorded in Book 1829 Pages 453-459 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami Sue Evers to Covington County Bank to secure $50,000.00, dated August 19, 1991 recorded in Book 1621 Pages 1916-1917 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain cross-collateralization agreement from Robert G. Evers and Tami Sue Evers to Covington County Bank with reference to mortgages listed at 1, 2, 4 and 6 above, dated March 30, 1994; recorded in Book 1834 Pages 1097-1098 in the Office of the Clerk of Circuit Court Okaloosa County, Florida

together with the original promissory note(s) or obligation(s) therein described, the renewals and extensions thereof and the money due thereon, with the interest, and together with the real property described in and conveyed by said mortgages.

TO HAVE AND TO HOLD the same unto said FIRST NATIONAL BANK OF CRESTVIEW, its successors and assigns.

THIS ASSIGNMENT is made without recourse against the maker.

IN WITNESS WHEREOF, COVINGTON COUNTY BANK has caused this instrument to be excuted Alan L. Mims its Executive Vice President and its seal affixed this the 31ˢᵗ day of October, 2001.

Witnesses:

                                   COVINGTON COUNTY BANK,
                                   an Alabama Banking Corporation

_____            By: _____
ANGELA CRINKLAW                     Alan L. Mims, its Executive Vice President

_____
TERESA O'HARA

                         Page 1 of 2

Okaloosa Title

FILE # 1084818  RCD: Dec 05 2001 @ 01:09PM
Newman C. Braskin, Clerk, Okaloosa Cnty Fl

```
* OFFICIAL RECORDS * 2of2
           BK 1953  PG 1806
```

```
** OFFICIAL RECORDS **
   BK 2330  PG 971
```

STATE OF FLORIDA

COUNTY OF OKALOOSA

On this the 31st day of October, 2001, before me,  TERESA O'HARA
a Notary Public in and for said county, appeared Alan L. Mims, personally known to me
who first by me being sworn did say that he is the Executive Vice President of Covington
County Bank, and that the seal affixed to the instrument is corporate seal of the
corporation, and that the instrument was signed and sealed in behalf of the corporation by
authority of its board of directors and Alan L. Mims acknowledged the instrument to be
the free and voluntary act and deed of the corporation.

In testimony of, I have hereunto affixed my name and official seal at Crestview,
Florida, this 31st day of October, 2001.

                                        _Teresa O'Hara_
                                        Notary Public, State of Florida
                                   Teresa O'Hara
                          MY COMMISSION # CC752385 EXPIRES
                                 October 19, 2002
                          BONDED THRU TROY FAIN INSURANCE, INC.

My commission expires: _____

Prepared by:
J. Mark Murphy
MURPHY, MURPHY & MCCALMAN, P.C.
P.O. Drawer 1736
Andalusia, AL  36420

Page 2 of 2

10.50
300.00 160.00
100.00

91-1055 DT. 5)

This instrument prepared by:

(Name) J. T. Kirkland

(Address) Covington County Bank – Andalusia, Al 36420

** OFFICIAL RECORDS **
BK 1621 PG 1916

# REAL ESTATE MORTGAGE

STATE OF ~~ALABAMA~~ Florida
Okaloosa                    COUNTY)

KNOW ALL MEN BY THESE PRESENTS: That Whereas,

Robert G. Evers and wife, Tami Sue Evers

(whether one or more, hereinafter called "Mortgagors"), are justly indebted to

Covington County Bank

(whether one or more, hereinafter called "Mortgagee"), in the sum of

* * * * * * * *Fifty thousand and 00/100 * * * * *
Dollars ($ 50,000.00                    ), evidenced by promissory note

of even date herewith with all interest, fees, and charges as provided in said note

And Whereas, Mortgagors may hereafter become indebted to Mortgagee in a further sum or sums, and this conveyance is made for the security and enforcement of the payment of both said present and any such future indebtedness and the interest on both;

And Whereas, Mortgagors agreed, in incurring said indebtedness, that this mortgage should be given to secure the prompt payment thereof with interest and any further sum or sums, including future advances, which Mortgagors may hereafter become indebted to Mortgagee;

Covington County Bank

NOW THEREFORE, in consideration of the premises, said Mortgagors,

Robert G. Evers and wife, Tami Sue Evers

and all others executing this mortgage, do hereby grant, bargain, sell and convey unto the Mortgagee the following described real estate,

situated in                    Okaloosa            County, State of ~~ALABAMA~~ Florida, to wit:

The South 1/2 of Southwest 1/4 of Section 32, Township 5 North, Range 25 West, Okaloosa County, Florida.

LESS AND EXCEPT: Commence at the Suotheast corner of Southwest 1/4 of Section 32, Township 5 NOrth, Range 25 West, Okaloosa County, Florida, thence North 330 feet, thence West 660 feet, thence South 330 feet, thence East 660 feet to the point of beginning.

FLORIDA DOCUMENTARY STAMP TAX PAID $ 160.00
CLASS "C" INTANGIBLE PERSONAL PROPERTY TAX PAID $ 100.00
PENALTY $ _____ INTEREST $ _____
NEWMAN C BRACKIN, CLERK OF CIRCUIT COURT, OKALOOSA COUNTY
FLORIDA BY _____ D.C.

together with all rents and other revenues thereof and all rights, privileges, interests, improvements, appurtenances, tenements, and easements thereto belonging or in anywise appertaining, including those now owned or hereafter acquired by Mortgagors, and all equipment and fixtures now or hereafter attached or affixed thereto(all of which shall be deemed realty and conveyed hereby).
Said property is warranted free from all encumbrances and against any adverse claims, except as stated above.

** OFFICIAL RECORDS **
BK 1621 PG 1917

TO HAVE AND TO HOLD the above granted property unto Mortgagee, Mortgagee's successors and assigns forever, and for the purpose of further securing the payment of all such indebtedness Mortgagors agree to pay all taxes or assessments when imposed legally upon said premises and should default be made in the payment of same, Mortgagee may at Mortgagee's option pay off the same; and to further secure all such indebtedness, Mortgagors agree to keep the improvements on said real estate insured against loss or damage by fire, wind, water, lightning and tornado for the fair and reasonable insurable value thereof, in companies satisfactory to Mortgagee, with provision that acts after cancellation of coverage of Mortgagors' interest and for mance to Mortgagee of said cancellation within 10 days thereof, with loss, if any, payable to Mortgagee, as Mortgagee's interest may appear, and promptly to deliver said policies, or any renewal of said policies, to Mortgagee; and if Mortgagors fail to keep said property insured as above specified, or fail to deliver said insurance policies to Mortgagee, then Mortgagee, or assigns, may at Mortgagee's option insure said property for said sum, for Mortgagee's own benefit, the policy, if collected, to be credited on said indebtedness, less costs of collecting same, and all amounts so expended by Mortgagee for taxes, assessments or insurance shall become a debt to Mortgagee or assigns, additional to the debts hereby specially secured, and shall be secured by this mortgage, and shall bear interest, from date of payment by Mortgagee, or assigns, and be at once due and payable Mortgagors agree to keep the said premises in good repair and not to waste or permit waste thereof.

Upon condition, however, that if Mortgagors pay all indebtedness secured hereby, including future advances, and reimburse Mortgagee or assigns for any amounts Mortgagee may have expended for taxes, assessments, and insurance, and interest thereon, then this conveyance to be null and void; but should default be made in the payment of any such sum expended by the Mortgagee or assigns, or should any indebtedness hereby secured, or any part thereof, or the interest thereon, remain unpaid at maturity, or should the interest of Mortgagee or assigns in said property become endangered by reason of the enforcement of any prior lien or encumbrance thereon, so as to endanger the debt hereby secured, or should Mortgagors breach any of the covenants herein made, then in any one of said events, the whole of the indebtedness hereby secured shall at once become due and payable, and this mortgage be subject to foreclosure as provided by law in case of past due mortgages, and Mortgagee, its agents or assigns, shall be authorized to take possession of the premises hereby conveyed, and with or without first taking possession, after giving twenty-one days' notice, by publishing once a week for three consecutive weeks the time, place and terms of sale in some newspaper published in said County and State, sell the same in lots or parcels or en masse as Mortgagee, its agents or assigns deem best, in front of the Court House door of the County (or the division thereof) where said property is located, at public outcry, to the highest bidder for cash, and apply the proceeds of the sale: First, to the expenses of advertising, selling and conveying, including a reasonable attorney's fee not to exceed 15% of the unpaid debt upon default, Second, to the payment of any amounts that may have been expended, or that it may then be necessary to expend, in paying insurance, taxes, or other incumbrances, with interest thereon, Third to the payment of all indebtedness hereby secured in full, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale; and Fourth, the balance, if any, to be turned over to Mortgagors, and the undersigned further agree that Mortgagee, its agents or assigns may bid at said sale and purchase said property, if the highest bidder therefor, and the undersigned further agree to pay to Mortgagee, or assigns, a reasonable attorney's fee not exceeding 15% of the unpaid debt upon default for the foreclosure of this mortgage in Chancery, should the same be so foreclosed, said fee to be a part of the debt hereby secured No delay by Mortgagee in enforcing any of its rights or Mortgagors' obligations hereunder shall constitute a waiver thereof.

IN WITNESS WHEREOF the undersigned **Robert G. Evers and wife, Tami Sue Evers**

have hereunto set **their** signature S and seal S this 19 day of __ August __ , 19 91

_Robert G Evers_ (SEAL)
Robert G. Evers

_Tami Sue Evers_ (SEAL)
Tami Sue Evers

_____ (SEAL)

_____ (SEAL)

THE STATE OF _Florida_
_OKALOOSA_ COUNTY

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that **Robert G. Evers and wife, Tami Sue Evers** whose name S **are** signed to the foregoing conveyance, and who **are** known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, **they** executed the same voluntarily on the day the same bears date

Given under my hand and official seal this 19 day of __ August __ , 19 91

_Tracy M Hollinhead_
Tracy M. Hollinhead          Notary Public

TRACY M. HOLLINHEAD
State of Florida
My Comm. Exp. __

THE STATE OF _____
_____ COUNTY

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _____ whose name as _____ of the _____ , a corporation, is signed to the foregoing conveyance, and who is known to me, acknowledged before me, on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal, this the ____ day of _____ , 19 __

_____ Notary Public

FILE# 1150662
OKALOOSA COUNTY, FLORIDA
RCD: AUG 19 1991 @ 11:20 AM
NEWMAN C BRACKIN, CLERK

REAL ESTATE MORTGAGE

Page 1 of 2

```
O.T.
10⁵⁰ x 2⁰⁰
99-8353 STATE OF FLORIDA)
```

** OFFICIAL RECORDS **
BK 2330 PG 970

* OFFICIAL RECORDS * 1of2
BK 1953   PG 1805

FILE # 200145774
RCD: Nov 05 2001 @ 04:01PM

OKALOOSA and )
SANTA ROSA COUNTIES)

SANTA ROSA COUNTY, FL
Mary M Johnson, Clerk

FILE # 1854818  RCD: Dec 05 2001 @ 01:39PM
Newman C. Brackin, Clerk, Okaloosa Cnty Fl

## ASSIGNMENT OF MORTGAGE
### (NON-RECOURSE)

KNOW ALL MEN BY THESE PRESENTS, That for value received, the undersigned, COVINGTON COUNTY BANK, an Alabama banking corporation, does hereby grant, bargain, sell, convey, assign and transfer unto FIRST NATIONAL BANK OF CRESTVIEW, a Florida banking corporation, the following

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1970-1976 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $150,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1955-1961 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage dated March 30, 1994 from Robert G. Evers and Tami F. Evers to Covington County Bank to secure $80,000.00 recorded in Book 1408 Pages 380-386 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers to Covington County Bank to secure $151,000.00, dated March 30, 1994 recorded in Book 1824 Pages 1700-1706 in the Office of Clerk of Circuit Court Okaloosa County, Florida;

That certain real estate mortgage from Robert Gregory Evers and Tami Sue Evers to Covington County Bank to secure $675,000.00, dated April 2,1999 recorded in Book 2211 Pages 384-390 in the office of the clerk of Circuit Court Okaloosa County, Florida; and recorded in Book 1829 Pages 453-459 in the Office of the Clerk of Circuit Court Santa Rosa County, Florida;

That certain real estate mortgage from Robert G. Evers and Tami Sue Evers to Covington County Bank to secure $50,000.00, dated August 19, 1991 recorded in Book 1621 Pages 1916-1917 in the Office of the Clerk of Circuit Court Okaloosa County, Florida;

That certain cross-collateralization agreement from Robert G. Evers and Tami Sue Evers to Covington County Bank with reference to mortgages listed at 1, 2, 4 and 6 above, dated March 30, 1994; recorded in Book 1834 Pages 1097-1098 in the Office of the Clerk of Circuit Court Okaloosa County, Florida

together with the original promissory note(s) or obligation(s) therein described, the renewals and extensions thereof and the money due thereon, with the interest, and together with the real property described in and conveyed by said mortgages.

TO HAVE AND TO HOLD the same unto said FIRST NATIONAL BANK OF CRESTVIEW, its successors and assigns.

THIS ASSIGNMENT is made without recourse against the maker.

IN WITNESS WHEREOF, COVINGTON COUNTY BANK has caused this instrument to be excuted Alan L. Mims its Executive Vice President and its seal affixed this the 31ˢᵗ day of October, 2001.

Witnesses:

COVINGTON COUNTY BANK,
an Alabama Banking Corporation

By: _____
Alan L. Mims, its Executive Vice President

ANGELA CRINKLAW

TERESA O'HARA

Page 1 of 2

Okaloosa Title

\* OFFICIAL RECORDS \* 2of2
BK 1953  PG 1806

\*\* OFFICIAL RECORDS \*\*
BK 2330 PG 971

STATE OF FLORIDA

COUNTY OF OKALOOSA

On this the 31st day of October, 2001, before me, ___TERESA O'HARA___ a Notary Public in and for said county, appeared Alan L. Mims, personally known to me who first by me being sworn did say that he is the Executive Vice President of Covington County Bank, and that the seal affixed to the instrument is corporate seal of the corporation, and that the instrument was signed and sealed in behalf of the corporation by authority of its board of directors and Alan L. Mims acknowledged the instrument to be the free and voluntary act and deed of the corporation.

In testimony of, I have hereunto affixed my name and official seal at Crestview, Florida, this 31st day of October, 2001.

_Teresa O'Hara_
Notary Public, State of Florida

Teresa O'Hara
MY COMMISSION # CC751585 EXPIRES
October 19, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

My commission expires: _____

Prepared by:
J. Mark Murphy
MURPHY, MURPHY & MCCALMAN, P.C.
P.O. Drawer 1736
Andalusia, AL  36420

Page 2 of 2

<u>**Exhibit "J"**</u>

**The SBN Assignment**

FILE #3178029 RCD: 12/15/2017 2:27 PM, BK: 3330 PG: 73, RECORDING: $19.50 RECORDING ARTICLE V: $16.00
DEPUTY CLERK ASECRIST
JD PEACOCK II CLERK OF COURTS, OKALOOSA COUNTY, FLORIDA

When Recorded Return to:
Willa Minser
SBN V FNBC LLC
1700 Lincoln Street, Suite 2150
Denver CO 80203

———————————— For Recorder' s Use ————————————

State of Florida
Counties of Okaloosa
and Santa Rosa

## ASSIGNMENT OF MORTGAGES, DEEDS OF TRUST
## AND OTHER LOAN DOCUMENTS

THIS ASSIGNMENT (this "Assignment") is made effective this 18th day of October, 2017, by and between the **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF FIRST NBC BANK, NEW ORLEANS, LOUISIANA**, organized under the laws of the United States of America ("Assignor"), having an address of 1601 Bryan Street, Suite 1700, Dallas, Texas 75201, Attention: Settlement Manager, and **SBN V FNBC LLC**, a Delaware limited liability company ("Assignee") with an address of 1700 Lincoln Street, Suite 2150, Denver, Colorado 80203, Attention: Bryan Caylor, Esq.

WHEREAS, on April 28, 2017, in accordance with Louisiana law and the Federal Deposit Insurance Act, 12 U.S.C §1821 *et. seq.* (the "FDIC Act"), the Louisiana Office of Financial Institutions closed the operations of First NBC Bank and appointed the Assignor as the receiver of First NBC Bank.

WHEREAS, in accordance with the Act, the Assignor is empowered to liquidate the assets of First NBC Bank in order to wind down the affairs of First NBC Bank.

WHEREAS, on or about October 18, 2017, in accordance with that certain Loan Sale Agreement dated October 18, 2017 (the "Purchase Agreement"), by and among the Assignor,

Assignment of Mortgages
/Deeds of Trust and Loan Documents
30912523 v1

October 18, 2017
Page 1 of 4

BK: 3330 PG: 74

Assignee and the Federal Deposit Insurance Corporation (the "FDIC"), the Assignor sold certain assets of First NBC Bank to Assignee, including, but not limited to, the following documents and other rights:

Mortgage dated June 2, 2004 made by Robert G. Evers, and wife, Tami F. Evers in favor of First National Bank of Crestview and recorded 06/03/2004 in the official records of OKALOOSA COUNTY, STATE OF FL at Book 2537, page 37.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1824, page 1970, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated August 19, 1991 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1621, page 1916, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1824, page 1955, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of SANTA ROSA COUNTY, STATE OF FL at Book 1408, page 380, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded November 5, 2011 at Book 1953 Page 1805.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1824, page 1700, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated April 2, 1999 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of SANTA ROSA COUNTY, STATE OF FL at Book 1829, page 453, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded November 5, 2011 at Book 1953 Page 1805, and modified by Modification of Mortgage dated December 11, 2001 and recorded January 8, 2002 at Book 1973 page 1319.

Mortgage dated April 2, 1999 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 2211, page 384, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970, and modified by Modification of Mortgage dated December 11, 2001 and recorded December 21, 2001 at Book 2333 page 2840.

Assignment of Mortgages
/Deeds of Trust and Loan Documents
30912523 v1

October 18, 2017
Page 2 of 4

BK: 3330 PG: 75

Cross-collateralization agreement from Robert G. Evers and Tami Sue Evers to Covington County Bank, dated March 30, 1994, recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1834, page 1097, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

(hereinafter collectively referred to as the "Security Instruments".)

Assignor does further grant, bargain, sell, assign, transfer and set over unto Assignee all of Assignor's rights, title and interests in and to the promissory notes, credit agreements, loan documents and all other indebtedness secured by the Security Instruments, as evidenced by related promissory notes, any and all loan agreements, pledges, security agreements, guaranties, assignments and UCC financing statements (wherever recorded or filed) and all modifications, extensions, amendments and renewals to said documents and instruments together with any and all other loan documents, title policies and casualty insurance policies evidencing, securing or relating to any of the foregoing all of which have been delivered to the Assignee.

Assignor does further grant, bargain, sell, assign, transfer and set over unto Assignee all of Assignor's rights, title and interests in and to any and all claims, actions, causes of action, choses in action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of fees, costs and/or other expenses arising from the forgoing.

TO HAVE AND TO HOLD the same unto Assignee and its legal representatives, successors and assigns forever.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY OR AS RECEIVER.

BK: 3330 PG: 76

IN WITNESS WHEREOF, Assignor has executed this Assignment in favor of Assignee dated as of December _13_, 2017 and effective as of October 18, 2017.

Signed, sealed and delivered in our presence:

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for First NBC Bank, New Orleans, Louisiana

Print name: Meggin Bordewyk

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

Print name: Carly Shube

STATE OF COLORADO
COUNTY OF DENVER

On the _13_ day of December, 2017, before me, the undersigned, personally appeared Melissa J. Hunting, as an Attorney-in-Fact for Federal Deposit Insurance Corporation, as Receiver for First NBC Bank, New Orleans, Louisiana, who is personally known to me that he/she is the person who executed this instrument and who has acknowledged before me on this day that, being informed of the contents of this instrument, he/she in the foregoing capacity and with full authority, executed the same voluntarily for said corporation.

Given under my hand and official seal this _13_ day of December 2017.

> WILLA MINSER
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20154016751
> MY COMMISSION EXPIRES   APRIL 27, 2019

(SEAL)

_____
SIGNATURE OF NOTARY

NOTARY PUBLIC, STATE OF COLORADO
My Commission Expires: 4. 27. 2019

SIGNATURE PAGE TO ASSIGNMENT OF MORTGAGES/
DEEDS OF TRUST AND LOAN DOCUMENTS FOR
EVERS, ROBERT GREGORY AND RELATED OBLIGORS

This Instrument Prepared By:
SBN V FNBC LLC
Attn: Bryan Caylor, Esq.
1700 Lincoln Street, Suite 2150
Denver CO 80203

Assignment of Mortgages
/Deeds of Trust and Loan Documents
30912523 v1

October 18, 2017
Page 4 of 4

File # 201751741, OR BK 3687   Page 238, Recorded 12/15/2017 at 04:15 PM,
Donald C. Spencer, Clerk   Santa Rosa County, Florida   Deputy Clerk JI Trans #
732705

When Recorded Return to:
Willa Minser
SBN V FNBC LLC
1700 Lincoln Street, Suite 2150
Denver CO 80203

———————————————— For Recorder' s Use ————————————————

State of Florida
Counties of Okaloosa
     and Santa Rosa

## ASSIGNMENT OF MORTGAGES, DEEDS OF TRUST
## AND OTHER LOAN DOCUMENTS

THIS ASSIGNMENT (this "Assignment") is made effective this 18th day of October,
2017, by and between the **FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER OF FIRST NBC BANK, NEW ORLEANS, LOUISIANA**, organized under the
laws of the United States of America ("Assignor"), having an address of 1601 Bryan Street, Suite
1700, Dallas, Texas 75201, Attention: Settlement Manager, and **SBN V FNBC LLC**, a Delaware
limited liability company ("Assignee") with an address of 1700 Lincoln Street, Suite 2150, Denver,
Colorado 80203, Attention: Bryan Caylor, Esq.

WHEREAS, on April 28, 2017, in accordance with Louisiana law and the Federal Deposit
Insurance Act, 12 U.S.C §1821 *et. seq.* (the "FDIC Act"), the Louisiana Office of Financial
Institutions closed the operations of First NBC Bank and appointed the Assignor as the receiver of
First NBC Bank.

WHEREAS, in accordance with the Act, the Assignor is empowered to liquidate the assets
of First NBC Bank in order to wind down the affairs of First NBC Bank.

WHEREAS, on or about October 18, 2017, in accordance with that certain Loan Sale
Agreement dated October 18, 2017 (the "Purchase Agreement"), by and among the Assignor,

Assignment of Mortgages                                          October 18, 2017
/Deeds of Trust and Loan Documents                                    Page 1 of 4
30912523 v1

OR BK  3687  PG  239

Assignee and the Federal Deposit Insurance Corporation (the "FDIC"), the Assignor sold certain assets of First NBC Bank to Assignee, including, but not limited to, the following documents and other rights:

Mortgage dated June 2, 2004 made by Robert G. Evers, and wife, Tami F. Evers in favor of First National Bank of Crestview and recorded 06/03/2004 in the official records of OKALOOSA COUNTY, STATE OF FL at Book 2537, page 37.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1824, page 1970, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated August 19, 1991 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1621, page 1916, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1824, page 1955, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of SANTA ROSA COUNTY, STATE OF FL at Book 1408, page 380, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded November 5, 2011 at Book 1953 Page 1805.

Mortgage dated March 30, 1994 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1824, page 1700, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

Mortgage dated April 2, 1999 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of SANTA ROSA COUNTY, STATE OF FL at Book 1829, page 453, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded November 5, 2011 at Book 1953 Page 1805, and modified by Modification of Mortgage dated December 11, 2001 and recorded January 8, 2002 at Book 1973 page 1319.

Mortgage dated April 2, 1999 made by Robert G. Evers, and wife, Tami F. Evers in favor of Covington County Bank and recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 2211, page 384, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970, and modified by Modification of Mortgage dated December 11, 2001 and recorded December 21, 2001 at Book 2333 page 2840.

OR BK  3687  PG  240

Cross-collateralization agreement from Robert G. Evers and Tami Sue Evers to Covington County Bank, dated March 30, 1994, recorded in the official records of OKALOOSA COUNTY, STATE OF FL at Book 1834, page 1097, as assigned by Assignment of Mortgage (Non-Recourse) by Covington County Bank to First National Bank of Crestview and recorded December 5, 2011 at Book 2330 Page 970.

(hereinafter collectively referred to as the "Security Instruments".)

Assignor does further grant, bargain, sell, assign, transfer and set over unto Assignee all of Assignor's rights, title and interests in and to the promissory notes, credit agreements, loan documents and all other indebtedness secured by the Security Instruments, as evidenced by related promissory notes, any and all loan agreements, pledges, security agreements, guaranties, assignments and UCC financing statements (wherever recorded or filed) and all modifications, extensions, amendments and renewals to said documents and instruments together with any and all other loan documents, title policies and casualty insurance policies evidencing, securing or relating to any of the foregoing all of which have been delivered to the Assignee.

Assignor does further grant, bargain, sell, assign, transfer and set over unto Assignee all of Assignor's rights, title and interests in and to any and all claims, actions, causes of action, choses in action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of fees, costs and/or other expenses arising from the forgoing.

**TO HAVE AND TO HOLD** the same unto Assignee and its legal representatives, successors and assigns forever.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY OR AS RECEIVER.

OR BK  3687   PG   241

IN WITNESS WHEREOF, Assignor has executed this Assignment in favor of Assignee dated as of December _13_, 2017 and effective as of October 18, 2017.

Signed, sealed and delivered in our presence:

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for
First NBC Bank, New Orleans, Louisiana

Print name: Meggin Bordewyk

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

Print name: Carly Shube

STATE OF COLORADO
COUNTY OF DENVER

On the _13_ day of December, 2017, before me, the undersigned, personally appeared Melissa J. Hunting, as an Attorney-in-Fact for Federal Deposit Insurance Corporation, as Receiver for First NBC Bank, New Orleans, Louisiana, who is personally known to me that he/she is the person who executed this instrument and who has acknowledged before me on this day that, being informed of the contents of this instrument, he/she in the foregoing capacity and with full authority, executed the same voluntarily for said corporation.

Given under my hand and official seal this _13_ day of December 2017.

| WILLA MINSER |
| NOTARY PUBLIC |
| STATE OF COLORADO |
| NOTARY ID 20154016751 |
| MY COMMISSION EXPIRES  APRIL 27, 2019 |

(SEAL)

_____
SIGNATURE OF NOTARY

NOTARY PUBLIC, STATE OF COLORADO
My Commission Expires: _4-27-2019_

SIGNATURE PAGE TO ASSIGNMENT OF MORTGAGES/
DEEDS OF TRUST AND LOAN DOCUMENTS FOR
EVERS, ROBERT GREGORY AND RELATED OBLIGORS

This Instrument Prepared By:
SBN V FNBC LLC
Attn: Bryan Caylor, Esq.
1700 Lincoln Street, Suite 2150
Denver CO 80203

Assignment of Mortgages
/Deeds of Trust and Loan Documents
30912523 v1

October 18, 2017
Page 4 of 4

## Composite Exhibit "K"

**Notice of Default**

**BURR ••• FORMAN** LLP

*results matter*

J. Ellsworth Summers, Jr.
esummers@burr.com
Direct Dial: (904) 232-7203

50 North Laura Street, Suite 3000
Jacksonville, FL 32202

*Office* (904) 232-7200
*Fax* (904) 232-7201

BURR.COM

January 4, 2018

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,
AND VIA FIRST CLASS U.S. MAIL**

The Estate of Robert G. Evers
PO Box 9
Baker, Florida 32531

Tami F. Evers
PO Box 9
Bakers, Florida 32531

and

and

1054 Melton Road
Baker, Florida 32531

1054 Melton Road
Baker, Florida 32531

Robert L. Jones, III, Esq., as Personal
Representative
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, Florida 32502

Re:   **Notice of Default - SBN V FNBC LLC loan to Robert G. Evers and Tami F. Evers
Loan No. 38750-0001**

Dear Sir or Madam:

Please be advised that this law firm represents SBN V FNBC LLC (the "Lender"), in connection with a loan (the "Loan") made by First National Bank of Crestview to Robert G. Evers and Tami F. Evers (collectively, the "Borrowers"). The Loan is evidenced by that certain Promissory Note dated June 2, 2004, executed and delivered by Borrowers, in favor of First National Bank of Crestview, in the original principal amount of $85,000.00 (the "Note").

The amounts due under the Note are secured by, *inter alia,* that certain Mortgage dated June 2, 2004, executed by Borrowers, as mortgagors, in favor of First National Bank of Crestview, as mortgagee, recorded as Official Records Book 2537, pages 37 *et seq.,* of the public records of Okaloosa County, Florida (the "Mortgage"), by virtue of which Lender was granted a security interest in certain real and personal property more particularly described therein (collectively, the "Property"). The Note and Mortgage are collectively known as the "Loan Documents".

ALABAMA • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

30971140 v1

The Estate of Robert G. Evers
Tami F. Evers
January 6, 2018
Page 2

Lender is the owner and holder of the Loan Documents by virtue of that certain Assignment of Mortgages, Deeds of Trust and Other Security Instruments dated effective October 18, 2017 and recorded in Official Records Book 3330, pages 73 *et seq.*, of the public records of Okaloosa, County, Florida. Further, the Note has been assigned by virtue of that certain Allonge dated effective October 18, 2017.

Pursuant to the terms of the Note currently evidencing the Loan, our client informs us that the Loan is in default for failing to make the monthly payment due on June 2, 2017, or any subsequent payments due under the Note. Consequently, the Note is in default and Lender hereby declares that all amounts owed under the Note are immediately due and payable from Borrowers.

Demand is hereby made to Borrowers for full payment of all sums due and owing under the Loan. The total amount due through December 15, 2017 is $30,557.12, consisting of $25,725.55 in principal, $2,919.85 in default interest and $1,911.72 in fees. Interest and other charges will continue to accrue each day thereafter.

Please note that upon an event of default under the Note, the unpaid balance of the Note immediately began accruing interest at the highest available rate allowed by law, as more particularly described in the Note (the "Default Rate"). This letter will serve notice to you that the unpaid principal balance of the Note continues to accrue interest at the Default Rate.

Upon an event of default under the Note, the Borrowers are obligated to pay all costs, including late charges and reasonable attorney's fees incurred by the Lender in pursuing its remedies under the Loan Documents, which remedies include the right of the Lender to foreclose the Mortgage. Please be advised that neither continued discussions between the parties regarding the Loan, forbearance from the exercise of remedies under the Loan Documents, nor the acceptance of partial payments of the Loan shall be deemed a waiver or cure of the foregoing events of default, or constitute a modification or withdrawal of the demand for payment or a reinstatement of the Loan. This letter is not intended to include an exhaustive statement of all events of default under the Loan, nor a waiver by Lender of any event of default not specified above. Please be further advised that Lender fully reserves all of its rights and remedies under the Loan Documents.

Your prompt attention to this demand is requested.

Yours very truly,

J. Ellsworth Summers, Jr.

JES

30971140 v1



BURR •••• FORMAN LLP

*results matter*

J. Ellsworth Summers, Jr.
esummers@burr.com
Direct Dial: (904) 232-7203

50 North Laura Street, Suite 3000
Jacksonville, FL 32202

*Office* (904) 232-7200
*Fax* (904) 232-7201

BURR.COM

January 4, 2018

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,</u>
<u>AND VIA FIRST CLASS U.S. MAIL</u>

The Estate of Robert G. Evers
1054 Melton Road
Baker, Florida 32531

and

5847 Highway 189 N
Baker, Florida 32531

and

P.O. Box 9
Baker, Florida 32531

Tami F. Evers
1054 Melton Road
Baker, Florida 32531

and

5847 Highway 189 N
Baker, Florida 32531

and

P.O. Box 9
Baker, Florida 32531

Robert L. Jones, III, Esq., as Personal
Representative
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, Florida 32502

**Re:   Notice of Default - SBN V FNBC LLC loan to Robert G. Evers and Tami F. Evers**
**Loan No. 377680002**

Dear Sir or Madam:

      Please be advised that this law firm represents SBN V FNBC LLC (the "Lender"), in connection with a loan (the "Loan") made by First National Bank of Crestview to Robert Gregory Evers a/k/a Robert G. Evers and Tami F. Evers a/k/a Tami Sue Evers (collectively, the "Borrowers"). The Loan is evidenced by that certain Promissory Note dated December 11, 2001, executed and delivered by Borrowers, in favor of First National Bank of Crestview, in the original principal amount of $507,624.97, as modified by those certain Change in Terms Agreements dated March 7, 2014 and March 31, 2017 (collectively, the "Note").

ALABAMA • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

30971186 v1

The Estate of Robert G. Evers
Tami F. Evers
January 6, 2018
Page 2

The amounts due under the Note are secured by, *inter alia,* that certain Mortgage dated April 2, 1999, executed by Borrowers, as mortgagors, in favor of Covington County Bank, as mortgagee, recorded as Official Records Book 2211, pages 384 *et seq.,* of the public records of Okaloosa County, Florida and additionally recorded as Official Records Book 1829, pages 453 *et seq.* of the public records of Santa Rosa County, Florida, as assigned to First National Bank of Crestview by that certain Assignment of Mortgage dated October 31, 2001 recorded as Official Records Book 2330, pages 970 *et seq.* of the public records of Okaloosa County, Florida and additionally recorded in Official Records Book 1953, pages 1805 *et seq.* of the public records of Santa Rosa County, Florida, as modified by that certain Modification of Mortgage dated December 11, 2001, recorded in Official Records Book 2333, pages 2840 *et seq.* of the public records of Okaloosa County, Florida, and additionally recorded in Official Records Book 1973, pages 1319 *et seq.* of the public records of Santa Rosa County, Florida (collectively, the "Mortgage"), by virtue of which Lender was granted a security interest in certain real and personal property more particularly described therein (collectively, the "Property"). The Note and Mortgage are collectively known as the "Loan Documents".

Lender is the owner and holder of the Loan Documents by virtue of that certain Assignment of Mortgages, Deeds of Trust and Other Security Instruments dated effective October 18, 2017 and recorded in Official Records Book 3330, pages 73 *et seq.,* of the public records of Okaloosa, County, Florida and additionally recorded in Official Records Book 3687, pages 238 *et seq.* of the public records of Santa Rosa County, Florida. Further, the Note has been assigned by virtue of that certain Allonge dated effective October 18, 2017.

Pursuant to the terms of the Note currently evidencing the Loan, our client informs us that the Loan is in default for failing to make the monthly payment due on May 11, 2017, or any subsequent payments due under the Note. Consequently, the Note is in default and Lender hereby declares that all amounts owed under the Note are immediately due and payable from Borrowers.

Demand is hereby made to Borrowers for full payment of <u>all</u> sums due and owing under the Loan. The total amount due through December 15, 2017 is $<u>195,553.14</u>, consisting of $<u>167,451.86</u> in principal, $<u>20,764.03</u> in default interest and $<u>7,337.25</u> in fees. Interest and other charges will continue to accrue each day thereafter.

Please note that upon an event of default under the Note, the unpaid balance of the Note immediately began accruing interest at the highest available rate allowed by law, as more particularly described in the Note (the "Default Rate"). This letter will serve notice to you that the unpaid principal balance of the Note continues to accrue interest at the Default Rate.

Upon an event of default under the Note, the Borrowers are obligated to pay all costs, including late charges and reasonable attorney's fees incurred by the Lender in pursuing its remedies under the Loan Documents, which remedies include the right of the Lender to foreclose the Mortgage. Please be advised that neither continued discussions between the parties regarding the Loan, forbearance from the exercise of remedies under the Loan Documents, nor the acceptance of partial payments of the Loan shall be deemed a waiver or cure of the foregoing events of default, or constitute a modification or withdrawal of the demand for

30971186 v1

The Estate of Robert G. Evers
Tami F. Evers
January 6, 2018
Page 3

payment or a reinstatement of the Loan. This letter is not intended to include an exhaustive statement of all events of default under the Loan, nor a waiver by Lender of any event of default not specified above. Please be further advised that Lender fully reserves all of its rights and remedies under the Loan Documents.

Your prompt attention to this demand is requested.

Yours very truly,

J. Ellsworth Summers, Jr.

JES

BURR •••• FORMAN LLP

*results matter*

J. Ellsworth Summers, Jr.
esummers@burr.com
Direct Dial: (904) 232-7203

50 North Laura Street, Suite 3000
Jacksonville, FL 32202

*Office* (904) 232-7200
*Fax* (904) 232-7201

BURR.COM

January 4, 2018

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,**
**AND VIA FIRST CLASS U.S. MAIL**

The Estate of Robert Gregory Evers
1054 Melton Road
Baker, Florida 32531

and

P.O. Box 9
Baker, Florida 32531

and

5847 Highway 189 N
Baker, Florida 32531

Robert L. Jones, III, Esq., as Personal
Representative
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, Florida 32502

Re:    **Notice of Default - SBN V FNBC LLC loan to Robert G. Evers**
       **Loan No. 378590006**

Dear Sir or Madam:

Please be advised that this law firm represents SBN V FNBC LLC (the "Lender"), in connection with a loan (the "Loan") made by First National Bank of Crestview to Robert Gregory Evers (the "Borrower"). The Loan is evidenced by that certain Promissory Note dated March 7, 2014, executed and delivered by Borrower, in favor of First National Bank of Crestview, in the original principal amount of $251,634.96, as modified by those certain Change in Terms Agreements dated April 29, 2015, January 9, 2017 and April 26, 2017 (collectively, the "Note").

The amounts due under the Note are secured by, *inter alia,* that certain Agricultural Security Agreement secured by UCC-1 Uniform Commercial Code Financing Statement filed with the Florida Secured Transaction Registry on October 6, 2005 bearing File Number 200500861534, as continued by that certain UCC-3 Uniform Commercial Code Financing Statement filed with the Florida Secured Transaction Registry on September 27, 2010 bearing File Number 201003268992 and further continued by that certain UCC-3 Uniform Commercial Code Financing Statement filed with the Florida Secured Transaction Registry on September 25, 2015 bearing File Number

ALABAMA  •  FLORIDA  •  GEORGIA  •  MISSISSIPPI  •  TENNESSEE

30971475 v1

The Estate of Robert G. Evers
January 6, 2018
Page 2

201505123834 (collectively, the "Financing Statements"). The Note is additionally secured by that certain Assignment of Crop Insurance issued by Rural Community Insurance and that certain Assignment of Payment from U.S. Department of Agriculture through year 2016. The Note, Financing Statements, Assignment of Crop Insurance and Assignment of Payment are collectively known as the "Loan Documents".

Lender is the owner and holder of the Loan Documents by virtue of that certain Assignment of Mortgages, Deeds of Trust and Other Security Instruments dated effective October 18, 2017 and recorded in Official Records Book 3330, pages 73 *et seq.*, of the public records of Okaloosa, County, Florida. Further, the Note has been assigned by virtue of that certain Allonge dated effective October 18, 2017.

Pursuant to the terms of the Note currently evidencing the Loan, our client informs us that the Loan is in default for failing to make the monthly payment due on May 26, 2017, or any subsequent payments due under the Note. Consequently, the Note is in default and Lender hereby declares that all amounts owed under the Note are immediately due and payable from Borrower.

Demand is hereby made to Borrower for full payment of <u>all</u> sums due and owing under the Loan. The total amount due through December 15, 2017 is $<u>265,267.63</u>, consisting of $<u>236,244.00</u> in principal, $<u>27,522.43</u> in default interest and $<u>1,501.20</u> in fees. Interest and other charges will continue to accrue each day thereafter.

Please note that upon an event of default under the Note, the unpaid balance of the Note immediately began accruing interest at the highest available rate allowed by law, as more particularly described in the Note (the "Default Rate"). This letter will serve notice to you that the unpaid principal balance of the Note continues to accrue interest at the Default Rate.

Upon an event of default under the Note, the Borrower is obligated to pay all costs, including late charges and reasonable attorney's fees incurred by the Lender in pursuing its remedies under the Loan Documents, which remedies include the right of the Lender to foreclose the interest in the Financing Statements. Please be advised that neither continued discussions between the parties regarding the Loan, forbearance from the exercise of remedies under the Loan Documents, nor the acceptance of partial payments of the Loan shall be deemed a waiver or cure of the foregoing events of default, or constitute a modification or withdrawal of the demand for payment or a reinstatement of the Loan. This letter is not intended to include an exhaustive statement of all events of default under the Loan, nor a waiver by Lender of any event of default not specified above. Please be further advised that Lender fully reserves all of its rights and remedies under the Loan Documents.

Your prompt attention to this demand is requested.

Yours very truly,

J. Ellsworth Summers, Jr.

30971475 v1

BURR · · · FORMAN LLP

*results matter*

J. Ellsworth Summers, Jr.
esummers@burr.com
Direct Dial: (904) 232-7203

50 North Laura Street, Suite 3000
Jacksonville, FL 32202

*Office* (904) 232-7200
*Fax* (904) 232-7201

BURR.COM

January 4, 2018

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,**
**AND VIA FIRST CLASS U.S. MAIL**

The Estate of Robert G. Evers
1054 Melton Road
Baker, Florida 32531

Robert L. Jones, III, Esq., as Personal
Representative
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, Florida 32502

and

5847 Highway 189 N
Baker, Florida 32531

and

P.O. Box 9
Baker, Florida 32531

Re:   Notice of Default - SBN V FNBC LLC loan to Robert Gregory Evers
      Loan No. 401080001

Dear Sir or Madam:

Please be advised that this law firm represents SBN V FNBC LLC (the "Lender"), in connection with a loan (the "Loan") made by First NBC Bank to Robert Gregory Evers (the "Borrower"). The Loan is evidenced by that certain Promissory Note dated April 29, 2015, executed and delivered by Borrower, in favor of First NBC Bank, in the original principal amount of $320,000.00, as modified by those certain Change in Terms Agreements dated January 9, 2017 and April 26, 2017 (collectively, the "Note").

The amounts due under the Note are secured by 845.71 Shares of Covington Gin Company, Inc. Stock Number 1700, issued to Robert Evers dated May 1, 2014.

Lender is the owner and holder of the Note by virtue of that certain Allonge dated effective October 18, 2017.

ALABAMA · FLORIDA · GEORGIA · MISSISSIPPI · TENNESSEE

30971367 v1

The Estate of Robert G. Evers
January 6, 2018
Page 2

Pursuant to the terms of the Note currently evidencing the Loan, our client informs us that the Loan is in default for failing to make the monthly payment due on May 26, 2017, or any subsequent payments due under the Note. Consequently, the Note is in default and Lender hereby declares that all amounts owed under the Note are immediately due and payable from Borrower.

Demand is hereby made to Borrower for full payment of all sums due and owing under the Loan. The total amount due through December 15, 2017 is $335,250.90, consisting of $299,700.00 in principal, $34,915.05 in default interest and $635.85 in fees. Interest and other charges will continue to accrue each day thereafter.

Please note that upon an event of default under the Note, the unpaid balance of the Note immediately began accruing interest at the highest available rate allowed by law, as more particularly described in the Note (the "Default Rate"). This letter will serve notice to you that the unpaid principal balance of the Note continues to accrue interest at the Default Rate.

Upon an event of default under the Note, the Borrower is obligated to pay all costs, including late charges and reasonable attorney's fees incurred by the Lender in pursuing its remedies under the Note, which remedies include the right of the Lender to foreclose the stock. Please be advised that neither continued discussions between the parties regarding the Loan, forbearance from the exercise of remedies under the Note, nor the acceptance of partial payments of the Loan shall be deemed a waiver or cure of the foregoing events of default, or constitute a modification or withdrawal of the demand for payment or a reinstatement of the Loan. This letter is not intended to include an exhaustive statement of all events of default under the Loan, nor a waiver by Lender of any event of default not specified above. Please be further advised that Lender fully reserves all of its rights and remedies under the Note.

Your prompt attention to this demand is requested.

Yours very truly,

J. Ellsworth Summers, Jr.

JES

30971367 v1

## Exhibit "L"

**The Personal Property**

All farm products, including without limitation, all (1) crops grown, growing, or to be grown, including crops produced on trees, vines and bushes, and aquacultural goods produced in aquacultural operations, (2) livestock, born or unborn, (3) supplies used or produced in farming operations, and (4) products of crops or livestock in unmanufactured states. All equipment, accessories, fixtures, and general intangibles (including payment intangibles and software); instruments (including promissory notes), documents, deposit accounts, all attachments, accessories, tools, parts, supplies, increases, and all additions to, replacements of and substitutions for any of the property and goods, any insurance refunds on any of the foregoing property and goods; together with all products and proceeds of any of the property or goods. All records and data relating to any of the property and goods, in whatever form, and all equipment and software necessary to utilize, create, maintain, and process any such records and data on electronic media. EXHIBIT "A", "B", "C" AND "D" ATTACHED.

# ROBERT G. EVERS
## UCC-1
## EXHIBIT "A"

**OKALOOSA COUNTY, FLORIDA**

All crops growing or to be grown in 200? crop year as follows:

Dorothy Ensor, ASCS #1113, Section 8, T4N, R25W, 44 Acres Cotton, 25 Acres Peanuts

Jim Courtney, ASCS #778, Section 21, T4N, R25W, 26 Acres Cotton, 22 Acres Peanuts

Ruby Carr, ASCS #227, Section 20&29, T4N, R25W, 143 Acres Cotton, 28 Acres Peanuts

Ft. Daniels, ASCS #1654 Section S7, T4N, R25W, 21.5 Acres Peanuts

Hot House ASCS #1654, Section 6, T4N, R25W, 34 Acres Cotton

Edward Davis, ASCS #147 Section 20, T4N, R25W, 19.5 Acres Cotton

Dewitt Steele, ASCS #1035, Section 10&11, T3N, R25W, 265 Acres Cotton, 32 Acres Peanuts, 20 Acres Corn

James Adams, ASCS #1531, Section 23, T3N, R25W, 33 Acres Peanuts

Woodrow Wilkerson, ASCS #725, Section 10, T3N, R25W, 8 Acres Cotton

Stephen Bass, ASCS #97, Section 13, T3N, R25W, 38 Acres Corn

Carolyn Boyett, ASCS#1654, Section 25, T5N, R24W, 35 Acres Cotton, 35 Acres Peanuts

Coy Sasser, ASCS #474, Section 13, T3N, R25W, 26 Acres Cotton

Clinton Sasser, ASCS #474, Section 14, T3N, R25W, 25 Acres Cotton

Joyce Blalock, ASCS#49, Section 13, T3N, R25W, 29 Acres Cotton

James Adams Johnson, ASCS#1531, Section21, T3N, R25W, 45 Acres Cotton, 45 Acres Peanuts

David William, ASCS#697, Section 27, T3N, R25W, 14.5 Acres Cotton

Leon Johns, ASCS#368, Section 33, T3N, R25W, 9 Acres Cotton

Bill Bradshaw, ASCS#381, Section 381, T2N, R25W, 23 Acres Cotton

Bryan Adams, ASCS#618, Section 21, T3N, R25W, 12.5 Acres Cotton

## BAKER FARM CENTER
## UCC-1
## EXHIBIT "B"

1982 Chevy C70 Spreader Truck with stainless steel body VIN #1GBLDIE7CB109156

1977 Chevy c65 Spreader Truck with new leader body VIN #CCE667V150489

300 Gal. 16 Row Canaan Sprayer – No Serial #

1987 Case 450C Dozier Serial #3078729

1990 Chevy 2500 Series Pick-up VIN #1GCGK24K9KE272844

1992 Pull Type Spreader (big) Serial #92DFI00471-DS

1993 Pull Type Spreader (little) Serial #93DFI00817-PDS

1995 Willmar Wrangler Loader Serial #706418

Case 1845C Loader Serial #JAF0068670

Datson Fork Lift 3000 Model #F01 Type G

Killebrew Model #KSDT-O Serial #76383

Killebrew Model #NKSDT-R Serial #77913

3 Motor Roller Radio System & 1 Walkie Talkie

Snapper Series 11 Riding Lawn Mower- no serial #

1992 Kodiak Spreader Truck Vin #1GBL7H1P7NJ101318

1994 Adams Blender

# GREG EVERS' FARM
## UCC-1
## EXHIBIT "C"

1984 Nissan Pick-up VIN #1N6NDO5H9EC355681

1992 3255 John Deere Tractor Serial #768907

1992 825 Row Cultivator with under row spray Serial #013471

KMC Rotary Tiller Serial #76-231

200 Gal Canaan Sprayer 12 row NO Serial #

Gleamer F# Combine with corn header & 13 ft. flex header Serial #F-K50058V-83

Corn Header MD 436A Serial #7206

Forest City Do All Serial #8710

Rhino Blade Swing & Title Hyd. Serial #2652

8204 Harrel Switch Plow Serial #BP-12922403

84-003-28 Harrel Rake for Switch Plow NO Serial #

16-Row Van Sprayer

13'3 pt Field Cultivator Serial #0002597

KBH (Mule Boy) Cotton Cart

Case Front End Loader No Serial #

King 11 Shank Chisel Plow Serial #A1281

Trufline 10 foot disc Serial #W13

JD 4240 Tractor with radio, air, cab & dual Serial #6466DR-0103-7764RC

1986 Model Hustler 2000 Express Peanut Picker Serial #0JR042-1

Pittsburgh 4 row cultivator NO Serial #

Ferguson 4 Bottom Plow Serial #349028772

## PAGE 2... GREG EVERS' FARM

Allis Chalmer Disc Harrow NO Serial #

38 Foot Grain Trailer tandem with grain bodies NO Serial #

1997 K2500 GMC ¾ Ton Pick-up VIN #1GTGK24R0V2518609

KBH 1992 Automatic Module Builder Serial #CH00373

Allis Chalmer 4 Row Cultivator NO Serial #

Bush Hog Lift Type disc barrow Serial #11030

Lillison Rolling Cultivator Serial #2098772

140-5 Ford Bottom Plow New Wings

Paulk Ripper Spider-471 JD Planter- NO Serial #

Unverferth 3 pt. 8 shank ripper stripper #RS8005G, Serial #A40830110

2-40 ton bin, 1-125 ton bins & transport auger 32 ft.

MG Dickey under row spray rig Serial #36-2537

Brown easy haul trailer Serial #1219

KMC Ripper Spider with planter & insecticide hopper Serial #26209

Wert blade front end Model #273, Serial #622

Amadis 4-Row Peanut Picker

1000 gal. Canaan water wagon with pump, NO Serial #

JD 825 Cultivator Serial #X014193

JD 630 Harrow Disc Serial #X010098

Rhino Rotary Cutter

4-Row KMC Inverter

Ferguson 510 Combine 15 ft ridge grain head Serial #24579

## Page 3....Greg Evers' Farm

Model 44 Ferguson corn head NO Serial #

JD 4-Row crop header NO Serial #

7 ft. Cutter with dual tail wheels Model #WARRIOR 7L, Serial #0125

JD 845 Cultivator Serial #X005649

2-JD 4 Row Cotton Picker Serial #X005184 & X005199

Module Builder

JD 7200 4-row planter Serial #A105690

KMC Ripper 8-row hyd folw with hyd row marker Serial #051691

JD 7300 8-row planter Serial #B660231

KMC 8-row bed leveler inc. Serial #52544

JD 4760 tractor Serial #P006175

JD 7800 tractor with 4 remote & quick coupler Serial #HO12927

JD 845 Cultivator Serial #X005596

RS8005G 3pt. 8 shank ripper stripper subsoiler ser. #A40830110

# AKERS OF STRAWBERRIES
## UCC-1
## EXHIBIT "D"

Kennco Bed press plastic mulch machine with gas attachments Serial #92377

Kennco hole puncher Serial #92-379

Two Head yogurt maching Model #2131-380, Serial #3335-02MI

Single head yogurt machine Model #2111-38A, Serial #2429-03J-C

Durand Waylon 100 gal. blower/sprayer model #AF100-32, Serial #13241

Weight scale Model #SL22H, Serial #SL-200-30-CO-US

Shielded row sprayer NO Serial #

PTO Irrigation Pump

All Crops and Farm Equipment; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever form received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).  The above-described crops are growing or are to be grown on the real estate described below in this UCC Financing Statement.

ALL OF THE ASSETS OF ROBERT G. (GREG) EVERS and TAMI F. EVERS (the individual Makers), INCLUDING (but not limited to):

    (A)  Tangible collateral:  All of the Makers' business (but not consumer) goods presently owned or hereafter acquired (excluding motor vehicles), whether or not constituting fixtures, and all replacements, substitutions, additions, and accessions thereto, including, without limitation; all inventory, equipment, machinery, hand tools, leasehold improvements, all records, office equipment and furniture and furnishings; all development rights, air rights, water and water rights, and all estates, rights, titles, interest, privileges, tenements, hereditaments and appurtenances belonging or relating to any lands within the State of Florida, and all reversions, remainders, rents, issues, profits, and all rights, whether arising in law or equity (including any all recoveries in condemnation or inverse condemnation); all present and future structures, building, and improvements, including (but not limited to) all apparatus, equipment and appliances used in connection with the lands and improvements, such as heating and AC, sewage disposal, refrigeration, utility, and other systems and facilities on the lands; all machinery, furniture, fittings, apparatus, equipment and other personal property located upon or under the lands and used in connection with the past, present, or future operation of any business on the lands; all materials and supplies delivered to the Makers or used or to be used on construction of any improvements on any lands owned by any Maker; all trade (non-domestic) fixtures, appurtenances, or personal property (whether intended to be affixed to the real property or not), including all other tangible personal property of every kind and description appertaining to the Makers' business; and all crops raised (including, but not limited to, cotton, peanuts, and corn) on any lands within Okaloosa County, Florida, now or in the future, and in particular all crops on Farm or farm numbers shown on the attached exhibit;

    (B)  Intangible collateral:  All of the Makers' accounts, contract rights and general intangibles, now owned or existing or hereafter contracted for or accruing, arising or acquired, and including any interest of any individual Maker in any monies, accounts, obligations or debts owed to any individual Maker by any corporate Maker, and including any interest of the corporate Maker in any monies, accounts, obligations or debts owed to corporate Maker by any individual Maker; all interest of any individual Maker in any ownership of any corporate stock in any corporate Maker; all license rights relating or appurtenant to, or used with respect to, any lands owned by the Makers; all rents, profits, proceeds and income from any lands or crops owned by Makers, including (but not limited to) all rights under past, present or future leases or rental agreements (including deposits); all proceeds and claims from any of the collateral acting as security; all general intangibles relating to the development, farming, sale, or use of any lands owned by Makers, including, but not limited to, all contract rights and all governmental permits (or legal or equitable rights to permits) for activities on or use of the lands; all rights to carry on business under the names currently in use or in use in the future; all crop allotments and entitlements of any kind; and all rights to or proceeds of any lease or contract for sale or use of lands or for construction of improvements thereon (including retainages); all cash or bank deposits now existing or hereafter accruing; all crop insurance; all crop sales proceeds and products; all governmental crop assistance, allotments, or other payments of any kind (including, but not limited to, all direct payments, counter-cyclical payments, loan deficiency payments, or disaster payments or loans);

    (C)  Proceeds:  Replacements, substitutions, accumulations, products, proceeds and profits (including those arising from any insurance or tort or contract claims with respect to the above) of the property described in (A) or (B).

As used above, "accounts" shall include, but not be limited to, all accounts and accounts receivable, whether or not earned by performance, all sums of money or other proceeds due or becoming due, all instruments pertaining thereto, all guarantees and security therefor, and all tax refunds or overpayments of any kind. As used above, "contract rights" shall include, but not be limited to, contracts and other rights of Makers, all rights of the Makers to damages or to the payment of money, all leases, and all franchises, permits, licenses and other governmental or private authorizations or rights of the Makers with respect to their business activities wheresoever located.  As used above, "general intangibles" shall include, but not be limited to, all bills of sale and instruments of conveyance, bills of lading, dock warrants, dock receipts, warehouse receipts and other documents of title, chattel paper, instruments, notes, policies and certificates of insurance, unearned insurance premiums, securities, deposits, cash, trade names, copyrights, service marks, trade marks, and all other general intangibles of every kind and description.  As used herein, "inventory" shall include, but not be limited to, all inventory and other goods of the Makers held or intended for sale or lease or to be furnished under contracts for services, and all raw materials, work in progress, finished goods, goods returned by customers, and materials and supplies of every kind and returned by customers, and materials and supplies of every kind and description.  As used herein, "records" shall include, but not be limited to, all blueprints, plans, customer lists and files, computer programs and files, software and all other records and writings pertaining to the business, properties or affairs of the Makers, of every kind and description.

**ROBERT G. EVERS**
**UCC 1**

### OKALOOSA COUNTY, FLORIDA

All crops growing or to be grown on the following properties:

Dorothy Ensor ASCS # 1113, Section 8, T4N, R25W, 19.4 Acres Cotton, 49 Acres Peanuts

Jim Courntey, ASCS # 778, Section 21, T4N, R25W, 21 Acres Cotton, 24.2 Acres Peanuts

Ruby Carr, ASCS # 227, Section 20& 29, T4N, R25W, 114.4 Acres Cotton, 58.4 Acres Peanuts

Ft. Daniels, ASCS # 1654, Section S7, T4N, R25W, 21 Acres Cotton

Hot House ASCS # 1654, Section 6, T4N, R25W, 34 Acres Cotton

Edward Davis, ASCS # 147, Section 20, T4N, R25W, 10 Acres Cotton

Dwitt Steele, ASCS # 1035, Section 10 & 11, T3N, R25W, 223.7 Acres Cotton, 40 Acres
Peanuts, 25 Acres Corn

James Adam Lighthouse, ASCS # 1531, Section 23, T3N, R25W, 30.2 Acres Cotton

Woodrow Wilkerson, ASCS # 725, Section 10, T3N, R25W, O Acres Corn

Stephen Bass, ASCS # 97, Section 12, T3N, R25W, 40.5 Acres Peanuts

Carolyn Boyette,  ASCS # 1654, Section 25, T5N, R24W, 68 Acres Cotton

Coy Sasser, ASCS # 474, Section 13, T3N, R25W, 26 Acres Peanuts

Clinton Sasser, ASCS # 474, Section 14, T3N, R25W, 18.5 Acres Peanuts

Joyce Blalock, ASCS # 49, Section 13, T3N, R25W, 24.8 Acres Peanuts

David William, ASCS # 697, Section 27, T3N, R25W, 12.7 Acres Peanuts, 7Acres Corn

Leon Johns, ASCS # 368, Section 33, T3N, R25W, 9.7 Acres Peanuts

Bill Bradshaw, ASCS # 381, Section 381, T2N, R25W, 14.3 Acres Peanuts

Bryan Adams, ASCS #618, Section21, T3N, R25W, 9.4 Acres Peanuts

## Exhibit "M"

**Covington Stock Certificate**

